IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

PACIFIC RADIATION ONCOLOGY,      )      CIVIL NO. 12-00064 LEK-KSC
LLC, a Hawai`i Limited           )
Liability Corporation, et        )
al.,                             )
                                 )
          Plaintiffs,            )
                                 )
     vs.                         )
                                 )
THE QUEEN'S MEDICAL CENTER, a    )
Hawai`i Non-Profit               )
Corporation, et al.,             )
                                 )
          Defendants.            )
_____  )


**ORDER GRANTING IN PART AND DENYING IN PART**
**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

On January 27, 2012, Plaintiffs Pacific Radiation

Oncology, LLC, a Hawai`i Limited Liability Corporation, PRO

Associates, LLC, a Hawai`i Limited Liability Corporation, and

John Lederer, M.D., Individually and as a Manager of the LLCs

appearing for the Pacific Radiation Oncology Physicians

(collectively "Plaintiffs") filed the instant Motion for

Temporary Restraining Order ("Motion")[1] with their complaint in

state court.  Defendants The Queen's Medical Center, a Hawai`i

_____

[1] The complete title of the Motion is "Motion for Temporary
Restraining Order, or in the Alternative, for a Preliminary
Injunction".  The instant order only addresses the portion of the
Motion requesting a temporary restraining order.  The Court will
rule on the portion of Plaintiffs' Motion requesting a
preliminary injunction after the hearing scheduled for February
15, 2012.

Non-Profit Corporation, Queen's Development Corp, a Hawai`i for Profit Corporation, and the officers and/or trustees of Queen's Medical Center, in their individual and official capacities (collectively "Defendants"), removed this action on January 31, 2012, and filed their memorandum in opposition to the Motion on February 2, 2012.  John Doe filed a motion to intervene on February 1, 2012, and this Court has permitted his counsel to participate in the proceedings on the Motion pending this Court's decision on the motion to intervene.  The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules").[2] After careful consideration of the Motion, supporting and opposing memoranda, the relevant legal authority, and the representations of counsel at the status conferences, Plaintiffs' Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

## BACKGROUND

Plaintiff Pacific Radiation Oncology, LLC ("PRO LCC") has five equity members and one employee physician.  All six are physicians licensed to practice in the State of Hawai`i, and collectively they have over 140 years of experience in radiation

---

[2] Although the Court did not hold a hearing on the Motion, the Court held status conferences regarding the Motion on January 31, 2012, February 2, 2012, and February 3, 2012.

and oncology. Plaintiffs' Verified Complaint for Declaratory and Injunctive Relief and for Damages ("the Complaint") states that PRO LLC is the largest radiation oncologist group in Hawai`i, and it employs more than half of the radiation oncologist in Hawai`i. Until recently, PRO LLC provided services to its patients at The Queen's Medical Center ("Queen's"), the Cancer Centers of Hawai`i in Ewa Beach and Liliha, which are affiliated with, respectively, Hawai`i Medical Center - West ("HMC-West") and Hawai`i Medical Center - East ("HMC-East"), and Wilcox Health on Kauai. [Complaint at ¶ 3.] According to the Complaint, PRO LLC "is the only group practice in Hawai`i to offer head, neck, and GYN interstitial brachytherapy, which is a procedure that can only be performed in the operating room of a hospital that has received approval from the Nuclear Regulatory Commission" ("NRC"). [Id.] Queen's is the only NRC-licensed facility on Oahu with an operating room. When a necessary procedure does not require a hospital, a PRO LLC physician will seek to perform the procedure at the facility of the patient's choice. Facilities that compete with Queen's have available facilities for radiation oncology, but Queen's facilities are "the most recognized and frequently-used facilities on Oahu." [Id.]

The instant case has arisen because in 2011, after an approximately forty-year professional relationship with Plaintiffs, Defendants made the decision to transition the

3

Queen's radiation oncology department to a closed facility. In other words, only physicians who are employed by Queen's would be granted privileges for Queen's facilities. Defendants state that they decided to transition to the closed-facility model because it is more efficient and enhances the quality of and satisfaction with patient care.

As a result, the PRO LLC physicians[3] were informed by letter on September 15, 2011 that Queen's Board of Directors ("the Board") had approved a resolution, dated August 29, 2011, that only physicians employed by Queen's would be allowed exercise clinical privileges to provide radiation oncology services at Queen's. The policy change was to take effect on February 1, 2012. [Complaint at ¶ 19.] In the period since issuing that letter, Queen's opened the possibility of employment at Queen's to the PRO LLC physicians, but these six physicians did not accept. Their refusal was, due in part, to their objection to Queen's requirement that they would have to: 1) terminate their interest in facilities that compete with Queen's; and 2) stop providing services at competing facilities. [Id. at ¶ 21.] Plaintiffs' attempts to negotiate with Queen's regarding these demands or to extend the date that the policy change was to

---

[3] Insofar as Plaintiffs are litigating on behalf of and to protect the interests, its five equity members and one employee, the Court will also refer to the six PRO LLC physicians as "Plaintiffs".

4

take effect were unsuccessful.

On December 28, 2011, HMC-West closed, and, on January 5, 2012, HMC-East closed, eliminating the only non-Queen's medical group facilities where Plaintiffs could provide radiation oncology therapies that required a hospital setting. Plaintiffs have applied to other facilities for clinical privileges, but none of those facilities has a NRC license. [Id. at ¶¶ 22-24.]

The Complaint alleges that, in deciding to terminate Plaintiffs' hospital privileges, the Board "did not follow any of the constitutional, legal, or due process requirements provided for in both the [Queen's] Bylaws and applicable Hawai`i law to ensure that the Plaintiffs' substantive and procedural rights to due process were not violated." [Id. at ¶ 19.] Plaintiffs allege that Defendants' stated reason for adopting the closed-facility model - "'to standardize and to achieve improved clinical outcomes, enhance patient satisfaction, achieve better quality and continuity of care'" - is a pretext, and the real reason behind the policy change is to deny patients the opportunity to be treated at non-Queen's facilities and to prevent Plaintiffs from providing services which compete with Queen's. [Id. at ¶¶ 25-26.] Plaintiffs also argue that, in enacting the resolution, Defendants acted "arbitrarily, capriciously, dishonestly, and maliciously with the specific and

deliberate intent of harming Plaintiffs and destroying Plaintiffs' ability to treat patients at facilities competing with [Queen's]." [Id. at ¶ 27.] Further, Plaintiffs allege that Defendants acted "intentionally, knowingly, grossly negligently and in conscious and in wanton disregard to rights of the Plaintiffs warranting an award of exemplary and punitive damages." [Id. at ¶ 29.]

The Complaint alleges the following claims: denial of procedural and substantive due process, as guaranteed by Article I of the Hawai`i Constitution and the First and Fourteenth Amendments of the United States Constitution ("Count I"); violations of Queen's bylaws and governing regulations ("Count II"); intentional and tortious interference with Plaintiffs' contractual obligations to facilities which compete with Queen's ("Count III"); intentional and tortious interference with prospective business advantage ("Count IV"); intentional and tortious interference with Plaintiffs' professional and contractual relationship with their patients ("Count V"); unfair, deceptive, anti-competitive and illegal trade practices in violation of Haw. Rev. Stat. Chapter 480 based on the termination of Plaintiffs' privileges ("Count VI"); unfair, deceptive, anti-competitive and illegal trade practices in violation of Chapter 480 based on violations of the Federal Anti-Kickback statute, 42 U.S.C. § 1320a-7b ("Count VII"); unfair, deceptive, anti-

competitive and illegal trade practices in violation of Chapter 480 based on attempted economic credentialing ("Count VIII"); unfair, deceptive, anti-competitive and illegal trade practices in violation of Chapter 480 based on the breach of Queen's corporate integrity agreement with the Office of Inspector General of the Department of Health and Human Services ("Count IX"); and a claim for breach of fiduciary duty and bad faith ("Count X").

Plaintiffs seek the following relief: temporary, preliminary, and permanent injunctions enjoining Queen's from terminating Plaintiffs' hospital privileges; special, general, and punitive damages under Hawai`i law for the damages caused by Defendants' actions alleged in the Complaint; treble damages under Chapter 480, if greater than the amount of punitive damages Plaintiffs are entitled to; attorneys' fees, interest, and prejudgment interest; restitution, disgorgement of profits, or other equitable relief warranted because of Defendants' breach of their fiduciary duties; and any other appropriate relief.

In the instant Motion, Plaintiffs argue that this case meets all of the requirements for a temporary restraining order.[4] Plaintiffs argue that they did not receive notice of the reasons

---

[4] The Court notes that, insofar as Plaintiffs anticipated litigating the Motion in state court, Plaintiffs relied on the temporary restraining order requirements articulated in state court decisions. The Court has construed their arguments liberally to address the requirements under federal case law.

for terminating their privileges, nor any hearing and thus did not have any opportunity to challenge the decision. In addition, Defendants' actions violate both Queen's published bylaws and other anti-competitive statutes. Plaintiffs therefore contend that they are likely to succeed on the merits of their claims. Plaintiffs also argue that their patients will suffer irreparable harm unless the Court grants a temporary restraining order because Plaintiffs will not be able to provide them with necessary radiation oncology therapy at Queen's. Plaintiffs also argue that Defendants will not suffer any prejudice if the Court issues a temporary restraining order, and that the public interest clearly favors issuing a temporary restraining order.

In their memorandum in opposition, Defendants state that there is no basis for a temporary restraining order because Defendants have merely made a rational business decision which they believe will improve the quality and efficiency of medical care. Defendants contend that the instant case does not satisfy any of the requirements for a temporary restraining order. Defendants emphasize that their decision to restrict the exercise of clinical privileges is not based on concerns about Plaintiffs' qualifications; Defendants assert that what Plaintiffs are challenging is a merely a **policy** decision, of which Defendants gave Plaintiffs prompt notice. Defendants argue that, in deciding to move to a closed-facility model, they made a sound

decision in accord with their broad discretionary powers under
Hawai`i statutes and case law, and in compliance with Queen's
bylaws.  Defendants submit that Plaintiffs have not shown a
likelihood of success on the merits of their due process claim
because there was no decision to terminate or revoke Plaintiffs'
privileges based on issues of competency or qualifications.
Further, Defendants argue that Plaintiffs are not likely to
prevail on their Chapter 480 claims based on allegedly deceptive
practices because Plaintiffs are not consumers within the meaning
of Haw. Rev. Stat. §§ 480-1 and 480-2(d), and Plaintiffs are not
likely to prevail on their unfair competition claim because the
Complaint does not sufficiently allege an injury to competition.
As to the Chapter 480 claim based on alleged violations of the
federal anti-kickback statute, Defendants contend that Plaintiffs
are not likely to succeed on the merits because the statute does
not allow for a private right of action and the statue is
inapplicable to the facts of this case.  Defendants also point
out that, when Plaintiffs applied for appointment and
reappointment to Queen's medical staff, they agreed to extend
absolute immunity to Queen's and its Board for any actions
relating to hospital privileges.  Defendants contend that filing
the Complaint violated that agreement, and that the case should
be dismissed.  In other words, Plaintiffs are not likely to
succeed on the merits of any of their claims.

As to the other factors, Defendants assert that no irreparable harm would result if the Court denies the temporary restraining order. Plaintiffs have an adequate legal remedy for their damages from their inability to exercise privileges at Queen's. Defendants also argue that there would be no irreparable harm to Plaintiffs' patients because of the exceptions that Defendants have extended to the new closed-facility policy, including an exception for the proposed intervenor-plaintiff John Doe. Defendants emphasize that the Queen's radiation ontologists are qualified and privileged to conduct all necessary procedures, including seed implantation for prostate cancer. Defendants contend that a temporary restraining order would not be in the public interest because a closed facility will improve the quality of care and, if forced to extend Plaintiffs' privileges, Defendants' efforts to improve care will be thwarted. Finally, Defendants submit that the balancing of the equities weighs against a temporary restraining order because Defendants will be injured if they cannot implement their policy, and Plaintiffs have not proven that they will suffer any injury if the temporary restraining order is denied.

Defendants therefore urge the Court to deny Plaintiffs' request for a temporary restraining order.

## JURISDICTION

At the outset, this Court must address whether it has

jurisdiction over the instant case.  Defendants removed this
action pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, alleging
federal question jurisdiction.  Defendants argue that there is
federal question jurisdiction because: 1) Count I alleges that
Defendants violated Plaintiffs' right to due process, as
guaranteed by the First and Fourteenth Amendments to the United
States Constitution; and 2) Count VII raises a substantial
federal question that requires the Court to resolve issues under
federal Medicare statutes.

Section 1331 states: "The district courts shall have
original jurisdiction of all civil actions arising under the
Constitution, laws, or treaties of the United States."  Whether a
claim "arises under" federal law for purposes of removal is
determined by the well-pleaded complaint rule.  <u>Rivet v. Regions
Bank of Louisiana</u>, 522 U.S. 470, 475 (1998).  A case "arises
under" federal law when federal law creates the cause of action
or the plaintiff' right to relief depends on resolution of a
substantial question of federal law.  <u>Franchise Tax Bd. v.
Constr. Laborers Vacation Tr.</u>, 463 U.S. 1, 27–28 (1983).

At the status conference on February 2, 2012,
Plaintiffs' counsel represented that the Complaint does not rely
on any federal law to create the causes of action asserted.  The
Court notes that, although Count I expressly alleges a violation
of federal constitutional rights, it is not clear whether that

11

claim has merit.  The Hawai`i Supreme Court has recognized that a licensed doctor who is denied staff hospital privileges is entitled to judicial review on the issue "whether the doctor excluded was afforded procedural due process, and as to whether an abuse of discretion by the hospital board occurred, resulting in an arbitrary, capricious or unreasonable exclusion."  Silver v. Castle Mem'l Hosp., 53 Haw. 475, 479-80, 497 P.2d 564, 568 (1972).  Silver also discussed the distinction between public, private, and quasi-public hospitals.  Id. at 481-83, 497 P.2d at 569-70.  The Hawai`i Supreme Court limited Silver's holding to "to those situations where the hospitals involved have had more than nominal governmental involvement in the form of funding" and did not address "whether the decision of the board of a truly private hospital not to grant staff privileges is subject to judicial review."  Id. at 570, 497 at 483.  Moreover, Silver did not rely on federal law, and therefore Silver does not necessarily stand for the proposition that the denial of privileges at a private hospital, either without due process or based on arbitrary, capricious, or unreasonable grounds, violates the United States Constitution.  Even if Silver would support a due process claim for the denial of privileges at a quasi-public hospital, this Court cannot find on the present record that Queen's is a quasi-public hospital.  At this stage of the case, the Court cannot conclude that federal jurisdiction exists based

on Count I.

Defendants, however, also argue that Count VII raises a substantial question of federal law because it alleges that Defendants violated 42 U.S.C. § 1320a-7b[5] and that the violation constitutes an actionable claim under Haw. Rev. Stat. Chapter 480. Based on a preliminary review for purposes of the instant Motion, the Court agrees that Count VII raises a substantial question of federal law. This Court therefore CONCLUDES that it has federal question jurisdiction over Count VII and supplemental jurisdiction over the remaining claims in the Complaint pursuant to 28 U.S.C. § 1367. The Court, however, emphasizes that its findings and conclusions regarding jurisdiction are based on a preliminary review of the instant case for purposes of the instant Motion only and do not preclude Plaintiffs from filing a timely motion for remand.

The Court now turns to the merits of Plaintiffs' request for a temporary restraining order.

## DISCUSSION

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc., 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002). In Winter v.

---

[5] Section 1320a-7b sets forth criminal penalties for acts involving Federal health care programs.

13

<u>Natural Resources Defense Council, Inc.</u>, the United States
Supreme Court explained that "[a] plaintiff seeking a preliminary
injunction must establish that he is likely to succeed on the
merits, that he is likely to suffer irreparable harm in the
absence of preliminary relief, that the balance of equities tips
in his favor, and that an injunction is in the public interest."
555 U.S. 7, 20 (2008) (citations omitted).  The Ninth Circuit has
held that its serious questions test, under which a district
could issue a preliminary injunction "where the likelihood of
success is such that serious questions going to the merits were
raised and the balance of hardships tips sharply in [plaintiff's]
favor[,]" survives <u>Winter</u> as long as courts applying the test
incorporate it into the four-part <u>Winter</u> analysis.  <u>Alliance for
the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1131 (9th Cir. 2011)
(citation and quotation marks omitted) (some alterations in
original).  "In other words, 'serious questions going to the
merits' and a hardship balance that tips sharply toward the
plaintiff can support issuance of an injunction, assuming the
other two elements of the <u>Winter</u> test are also met."  <u>Id.</u> at
1132.

The Court will begin its analysis with the factors
that, in this Court's view, are not in serious dispute.

## I. <u>Irreparable Harm</u>

Plaintiffs' patients have cancer, and it is highly

likely they will suffer irreparable harm if denied, or even delayed receiving, necessary medical treatments.[6]  The parties do not dispute that there are certain radiation oncology procedures that, at the present time, can only be provided at Queen's. Further, there are other procedures that are possible to perform at other facilities, but arguably should be performed (for medical reasons determined by the patients' physicians) at Queen's.  Finally, and not the least consideration, the trust and confidence that a patient places in a particular physician while undergoing treatment for a serious condition is an intangible and critical component of that treatment, and it is neither fungible nor easily transferred.  That is to say, substituting one competent oncology radiologist for another is neither as simple nor as palatable as Defendants seem to suggest.  Defendants have represented that Queen's primary concern is for patient care and that it is committed to ensuring that such care will not be compromised during their operational transition to a closed facility.  The parties have diligently tried to reach an agreement to protect Plaintiffs' patients and their ability to

---

[6] The Court notes that the likely harm that Plaintiffs (in contrast to their patients) face from not being able to provide treatment at Queen's is monetary in nature.  Typically, monetary harm does not constitute irreparable harm.  <u>Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League</u>, 634 F.2d 1197, 1202 (9th Cir. 1980).  This is so because "economic damages are not traditionally considered irreparable because the injury can later be remedied by a damage award."  <u>Cal. Pharmacists Ass'n v. Maxwell-Jolly</u>, 563 F.3d 847, 852 (9th Cir. 2009).

receive necessary treatment in a timely manner during Queen's transition. Regrettably, the parties have not reached such an agreement.

Defendants argue that, because of the voluntary accommodations they have proposed for continuing treatment during the transition to a closed facility, patient care will not be compromised, and thus Plaintiffs have failed to prove a likely threat of irreparable harm. Without an agreed-upon plan for the treatment of Plaintiffs' patients, however, the Court is not persuaded. The Court therefore FINDS that, in the absence of a temporary restraining order, Plaintiffs' patients are likely to suffer irreparable harm. The Court further FINDS that, in the instant case where the threat of harm is potentially a matter of life and death, or at least the measurable worsening of serious medical conditions for at least some patients, the irreparable harm factor weighs strongly in favor of granting a temporary restraining order.

## II.  Balance of the Equities

In the context of a motion for preliminary injunction, a court weighing the balance of the equities "must identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it." Univ. of Hawai`i Prof'l Assembly v. Cayetano, 183 F.3d 1096, 1108 (9th Cir. 1999). As previously stated, the standard for a motion for

a temporary restraining order is the same as for a motion for a
preliminary injunction.

Defendants have stated that they adopted the closed-
facility policy to improve the quality and efficiency of patient
care. At this stage of the case, this Court will accept this
explanation. Defendants certainly have an interest in operating
Queen's in the manner they reasonably believe is best suited for
patients. Defendants, however, will suffer little harm if the
implementation of their closed-facility policy is delayed by a
temporary restraining order until the Court issues its decision
after the February 15, 2012 hearing. This Court therefore FINDS
that the balance of the equities factor weighs in favor of
granting the temporary restraining order.

## III. **Public Interest**

In the preliminary injunction context, this Court has
recognized the following principles relevant to the public
interest inquiry:

> The plaintiffs bear the initial burden
> of showing that the injunction is in the
> public interest. See Winter [v. Natural
> Resources Defense Council, Inc.], [555 U.S.
> 7,] 129 S. Ct. [365,] 378 [(2008)]. However,
> the district court need not consider public
> consequences that are "highly speculative."
> In other words, the court should weigh the
> public interest in light of the likely
> consequences of the injunction. Such
> consequences must not be too remote,
> insubstantial, or speculative and must be
> supported by evidence.
> Finally, the district court should give

> due weight to the serious consideration of
> the public interest in this case that has
> already been undertaken by the responsible
> state officials . . . who unanimously passed
> the rules that are the subject of this
> appeal.  See Golden Gate Rest. Ass'n [v. City
> and County of San Francisco], 512 F.3d [1112]
> at 1127 [(9th Cir. 2008)] ("The public
> interest may be declared in the form of a
> statute." (internal quotation marks
> omitted)); see also Burford v. Sun Oil Co.,
> 319 U.S. 315, 318, 63 S. Ct. 1098, 87 L. Ed.
> 1424 (1943) ("[I]t is in the public interest
> that federal courts of equity should exercise
> their discretionary power with proper regard
> for the rightful independence of state
> governments in carrying out their domestic
> policy." (internal quotation marks omitted)).
> Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139-40
> (9th Cir. 2009) (some citations and quotation
> marks omitted).  The public interest inquiry
> primarily addresses the impact on non-parties
> rather than parties.

Am. Promotional Events, Inc.--Nw. v. City & Cnty. of Honolulu,

796 F. Supp. 2d 1261, 1284-85 (D. Hawai`i 2011) (alterations in

Am. Promotional Events).  As previously stated, the standard for

a motion for a temporary restraining order is the same as for a

motion for a preliminary injunction.  For the reasons stated in

the discussion of the irreparable harm factor and balancing of

the equities factor, this Court FINDS that the public interest

factor also weighs in favor of granting the temporary restraining

order.

## IV.  **Likelihood of Success on the Merits**

Although other claims have been addressed in the

litigation of the instant Motion, the parties' focus in the

likelihood of success inquiry appears to be on Plaintiffs' due process claim. As noted in the section discussing jurisdiction, the Court has reservations about whether <u>Silver</u> applies to Queen's in the first instance. Further, even if <u>Silver</u> applies to Queen's in general, there is still the question whether <u>Silver</u> applies beyond a privileging decision regarding an individual physician's competency or qualifications to a hospital's policy decision that affects a group of physicians without regard to competency or qualification issues. The Court also notes that <u>Silver</u> states: "If the exclusion of a person from its medical or surgical staff is based on the sound and reasonable exercise of discretionary judgment, courts will not intervene, but if the exclusion stems from unreasonable, arbitrary, capricious or discriminatory considerations, equitable relief is available." 53 Haw. at 480, 497 P.2d at 568 (citation and quotation marks omitted). Defendants have made strong arguments that their decision to adopt a closed-facility model was made for legitimate, and not improper, reasons.

For the foregoing reasons, this Court FINDS that there are serious questions on the merits of Plaintiffs' due process claim.

**V.   <u>Summary of Factors</u>**

The Court FINDS that Plaintiffs' likelihood of success on their due process claim is such that there are serious

19

questions as to the merits of this claim, and the balance of hardships tips sharply in Plaintiffs' favor. The Court emphasizes that it has considered the serious questions test in the context of the <u>Winter</u> analysis, and the Court has found that the public interest, threat of irreparable harm, and balance of the equities all weigh strongly in favor of a temporary restraining order. This Court therefore CONCLUDES, on balance, Plaintiffs have established that they are entitled to a temporary restraining order.

## <u>CONCLUSION</u>

On the basis of the foregoing, Plaintiffs' Motion for Temporary Restraining Order, filed on January 27, 2012, is HEREBY GRANTED IN PART AND DENIED IN PART. The Court GRANTS Plaintiffs' request for a temporary restraining order to the extent that the Court ORDERS Defendants to allow Plaintiffs to perform the following procedures on Plaintiffs' patients at the Queen's facilities, including any in-patient treatment, hospitalization, chart or record review, surgery, follow-up care and/or scheduling:

a. Volume Studies for permanent seed implants of the prostate;
b. Permanent seed implants;
c. High dose rate brachytherapy implants of the prostate and substitute tumors;
d. Endoluminal trachea, bile duct, (brachytherapy) radiation therapy;
e. Tomotherapy;
f. 4DCT;
g. Stereotactic body radiotherapy; and

     h.    Patients that need general anesthesia for external
           radiation including pediatric external beam radiation.

The Court DENIES the request for a temporary restraining order in

all other respects.  This temporary restraining order shall

remain in effect until this Court issues its ruling on

Plaintiffs' request for a preliminary injunction.

        IT IS SO ORDERED.

        DATED AT HONOLULU, HAWAII, February 3, 2012.



                    /S/ Leslie E. Kobayashi
                 Leslie E. Kobayashi
                 United States District Judge

**PACIFIC RADIATION ONCOLOGY, LLC, ET AL. V. THE QUEEN'S MEDICAL CENTER, ET AL**; CIVIL NO. 12-00064 LEK-KSC; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER