IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| **PACIFIC RADIATION ONCOLOGY, LLC,** A HAWAIʻI LIMITED LIABILITY CORPORATION; **et al.,**<br><br>     Plaintiffs,<br>  vs.<br><br>**THE QUEEN'S MEDICAL CENTER,** A HAWAIʻI NON-PROFIT CORPORATION, **et al.,**<br><br>     Defendants. | CIVIL NO. **12-00064 LEK-KSC** (Other Civil Action)<br><br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................. 2

II.  DEFENDANTS' COUNTERCLAIM IS UNTIMELY ..................................... 5

    A.   RELEVANT PROCEDURAL HISTORY ............................. 5

    B.   APPLICABLE LAW .................................................... 8

        1.   DOCTRINE OF LACHES ...................................... 8
        2.   FED. R. CIV. P. 16(B) ......................................... 8

    C.   ARGUMENT ............................................................10

III. DEFENDANTS' COUNTERCLAIM FAILS TO STATE A CLAIM UPON
WHICH RELIEF CAN BE GRANTED ........................................... 17

    A.   APPLICABLE LAW ...................................................18

        1.   FED. R. CIV. P. 12(B)(6).....................................18

    B.   ARGUMENT.............................................................18

        1.   DEFENDANTS' FIRST CLAIM FAILS AS A MATTER OF .
LAW......................................................................18

IV.  CONCLUSION ................................................................. 23

TABLE OF AUTHORITIES                                               ii

TABLE OF AUTHORITIES

*Cases*

Am. Dev. Corp. v. Strack,
    81 F.3d 167, *4 (9th Cir. 1996) ............................................................ 13

Association Of Apartment Owners Of Imperial Plaza v. Fireman's Fund Insurance
    Company, Civ. No. 11-00758 ACK-KSC, 2013 WL 2156469, *3 (D. Haw. 2013)
    ....................................................................................................................... 9

Austin v. McNamara,
    979 F.2d 728 (9th Cir. 1992) ............................................................... 22

Conley v. Gibson,
    355 U.S. 41 (1957) ................................................................................ 18

Danjaq, LLC v. Sony Corp.,
    263 F.3d 942, 950-51, 955 (9th Cir.2001) ........................................... 8

Ex parte National Enameling & Stamping Co.,
    201 U.S. 156, 26 S.Ct. 404 (1906) ....................................................... 13

Harlow v. Fitzgerald,
    457 U.S. 800 (1982) ............................................................................... 18

Himmelfarb v. JP Morgan Chase Bank Nat. Ass'n,
    Civ. No. 10-00058 DAE-KSC, 2001 WL 4498975 (D. Haw. 2011) ............. 10, 17

Hishon v. King & Spalding,
    467 U.S. 69 (1984) ................................................................................ 18

Johnson v. Mammoth Recreations, Inc.,
    975 F.2d 604 (9th Cir. 1992) ............................................................... 9

Phelan v. Taitano,
    233 F.2d 117 (9th Cir. 1956) ............................................................... 13

Plotkin v. Pac. Tel. & Tel. Co.,
    688 F.2d 1291 (9th Cir. 1982) ............................................................. 13

*Robertson v. Dean Witter Reynolds, Inc.,*
    749 F.2d 530, (9th Cir.1984) ............................................................... 18

*Rouser v. White,*
    707 F. Supp. 2d 1055 (E.D. Cal. 2010) ............................................... 13

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974)............................................................................. 18

*Silver v. Castle Medical Center,*
    53 Haw. 475 (1972) ............................................................................. 21

*SmileCare Dental Grp. v. Delta Dental Plan of Cal.,*
    88 F.3d 780 (9th Cir.1996) ................................................................. 18

*Statutes*

42 U.S. Code §§ 11101, 11111, 11112 ................................................... 21
42 U.S.C. § 11112 ................................................................................... 22
42 U.S.C. §§ 11101-11152.......................................................................... 5

*Rules*

Fed. R. Civ. P. 16(b)........................................................................passim
Fed. R. Civ. P. Rule 12(b)(6) ............................................................... 18
Fed.R.Civ.P. 16(b)(3)(A) ......................................................................... 9
Fed.R.Civ.P. 16(b)(4) .............................................................................. 9

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| **PACIFIC RADIATION ONCOLOGY, LLC,** A HAWAIʻI LIMITED LIABILITY CORPORATION; **et al.,** | CIVIL NO. **12-00064 LEK-KSC** (Other Civil Action) |
| Plaintiffs, vs. | **MEMORANDUM IN SUPPORT OF MOTION** |
| **THE QUEEN'S MEDICAL CENTER,** A HAWAIʻI NON-PROFIT CORPORATION, **et al.,** | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT MOTION

Defendants filed their counterclaim on February 25, 2014, which was more than two years after the complaint was filed and after Defendants had deposed all Plaintiffs' experts and some of the Plaintiffs, who did not have the benefit of knowing Defendants' allegations against them at the time. The tardy counterclaim is the latest strategic maneuver in Defendants' approach to their defense against former colleagues and partners, and it should be dismissed in its entirety as untimely and because it has no basis in law.

1

## I.   INTRODUCTION

Defendants filed their counterclaim more than two years after Plaintiffs filed their initial complaint in state court (January 27, 2012) and their amended complaint in federal court (February 23, 2012).   Defendants' delay is unjustified because the claims for relief asserted in their counterclaim are based on alleged factual predicates that were known to Defendants at the outset of the litigation but were repeatedly denied in Defendants' assertions during the injunction proceedings and before the Ninth Circuit.

The counterclaim accuses Plaintiffs of wrongful conduct in improperly stealing patients from the Queen's Medical Center ("QMC") and causing Defendants to suffer damages.   Defendants explicitly allege unprofessional behavior triggering a right to a hearing, including allegations that Plaintiffs had engaged in conduct that:

> interfered with the patients' continuity of care, created unnecessary risks for patients, created confusion about the extent of QMC's services and responsibilities toward patients who had been seen at QMC, created confusion about the absence of any business relationship between TCCH and QMC, and hindered QMC's efforts to maintain the quality of care given to patients in need of radiation treatments.

Defendant's Counterclaim, Docket #175-1, p. 5, par. 12.

Defendants also allege that "PRO Member Physicians *misused confidential patient information* provided to them by QMC for the purpose of evaluating which

patients to divert to TCCH." *Id.*, p.6, par.14 (emphasis added). And, Defendants allege Plaintiffs used their clinical privileges to "misappropriate QMC's resources." *Id.*, par. 15.

In stark contrast to these allegations, throughout the injunction litigation before this Court and before the Ninth Circuit, Defendants argued that their decision to terminate the rights of Plaintiffs to practice at QMC was simply a "business decision" not based on any allegations of wrongdoing that would require a due process hearing. It is for this very reason Defendants waited until the day after the Ninth Circuit affirmed this Court's grant of the injunction and upheld the finding that Plaintiffs would likely prevail on the merits of their due process claim to file an answer and counterclaim reversing the position they steadfastly had maintained throughout the previous two years.

Defendants elected to "sleep on their rights" and made a strategic decision to delay the filing of their responsive pleading until after the appeal was decided but also after the parties had conducted substantial discovery, including the exchange of expert opinions and the depositions by Defendants of all Plaintiffs' expert witnesses and two of the Plaintiffs. As a result, Defendants placed Plaintiffs in an untenable and prejudiced position wherein two Plaintiffs were deposed without even being apprised of Defendants' claims against them and in fact, while operating under the belief that the misconduct claims alleged in the counterclaim

3

were not a part of Defendants' original defense.  Moreover, all Plaintiffs experts have provided opinions and have been deposed without being able to opine on issues relevant to the recently disclosed counterclaim.

Defendants delay also has run afoul of the Rule 16(b) scheduling order regarding the timeframe within which to add parties or amend pleadings.  *See* Fed. R. Civ. P. 16(b).  They have not sought proper leave of court to modify the order and cannot demonstrate good cause to justify such a modification.  Certainly, the addition of a new pleading naming Plaintiffs as Counter-Defendants and adding new causes of action, claims for relief, and claims for damages is the type of action the Rule 16(b) scheduling order contemplates will be completed at an early date in the case.  Without making any claim of newly discovered information, Defendants, by waiting over two years to file their claim, have caused prejudice to Plaintiffs without any acceptable justification.

In addition to the prejudice caused by Defendants' delay, Defendants' first claim for relief fails to state any claim upon which relief can be granted.  The claim is one for immunity arising out of an interpretation of the QMC Bylaws giving rise to attorney fees.  It is a defense, rather than an affirmative claim.  Moreover, Defendants have raised the issue repeatedly in the past.  It has been rejected and so

4

it is law of the case that this defense fails.[1]  In any event, as argued below, this case is an action regarding the failure to afford due process and to engage in unfair business practices, which is not waived by any provision of the Bylaws.   The immunity provision only applies to individuals who provide information as part of a professional review action where the targeted physicians received notice and a right to respond.    The preemptive mandates of the Health Care Quality Improvement Act ("HCQIA") further identify the circumstances in which the immunity provision applies.  *See* 42 U.S.C. §§ 11101-11152.

For these reasons, and all the reasons discussed below, Plaintiffs move to dismiss Defendants' counterclaim.

## II.   DEFENDANTS' COUNTERCLAIM IS UNTIMELY

### A.   RELEVANT PROCEDURAL HISTORY

Plaintiffs filed their initial complaint on January 27, 2012, in the First Circuit Court for the State of Hawaiʻi, which Defendants then removed to federal court on January 31, 2012.  *See* Docket #1, Attachment #1.  On February 23, 2012, one day after this Court's Preliminary Ruling on Plaintiffs' Motion for Preliminary Injunction (Docket #43), Plaintiffs responded by filing an amended complaint to include all the individual radiation oncologists as Plaintiffs (Document #44).

---

[1] Defendants have raised the defense of immunity throughout this case, including in the injunction proceedings before this Court, before the Ninth Circuit, and in their motion to dismiss, filed on March 19, 2012.

On March 5, 2012, the Court entered a scheduling order with a deadline of October 5, 2012, by which to file all motions to join additional parties or to amend the pleadings.

Defendants did not file an answer but instead, on March 19, 2012, they filed a motion to dismiss. The Court calendared a hearing for July 23, 2012. On July 2, 2012, Plaintiffs timely filed their opposition to Defendants' motion. After Plaintiffs had filed their opposition pleadings, Defendants requested an extension of the deadline for submitting their reply brief, which this Court granted on July 10, 2013. Docket #79. The Court also granted Defendants' request to continue the hearing on Defendants' motion and calendared it for October 19, 2012. *Id.*

The October 5, 2012 deadline for joining additional parties or amending the pleadings expired without either resolution of Defendants' motion to dismiss or the filing of an answer or counterclaim by Defendants.

On October 15, 2012, the Ninth Circuit heard arguments in Defendants' appeal of this Court's injunction, during which the parties addressed the additional briefing requested by the panel on the issue of whether federal jurisdiction existed. Following the oral argument, the Court vacated the October 19, 2012 hearing date for Defendants' motion to dismiss. Docket #87. On October 23, 2012, following the Ninth Circuit's entry of an order referring the parties to mediation, the Court

again reserved its ruling on Defendants' motion to dismiss pending the outcome of mediation.  Docket # 91.

On March 11, 2013, the scheduling order was amended and the date for moving to add parties or amend the pleadings was reset to June 14, 2013.  Again, the deadline expired without resolution of Defendants' motion to dismiss, the filing of an answer or counterclaim, or a request by Defendants to modify the scheduling order to extend the deadline.  On September 25, 2013, the Court entered a Second Amended Scheduling Order, which confirmed that the opportunity for adding additional parties or amending the pleadings had "CLOSED."  The subsequent Amended Scheduling Order entered on February 12, 2014, again confirmed that the opportunity for moving to join parties or amend the pleadings had "CLOSED."

In January 2014, fifteen months after the Ninth Circuit's referral of the matter to mediation, the Ninth Circuit officially terminated the mediation.  During this period of mediation, the parties continued to engage in discovery and litigate the pretrial matters.  The parties served extensive written discovery requests, served third party subpoenas, conducted depositions, and exchanged expert reports.  Defendants conducted the depositions of all Plaintiffs' experts as well as two of the Plaintiff physicians.

On February 24, 2014, the Ninth Circuit issued its ruling upholding this Court's injunction in its entirety and finding federal jurisdiction.  One day later,

Defendants filed their answer and the counterclaim, which is the subject of this motion by Plaintiffs to dismiss. Docket #175.

## B.    APPLICABLE LAW

### 1.    DOCTRINE OF LACHES

Laches will bar a claim when the party asserting it shows the opposing party unreasonably delayed in filing the action and the delay caused prejudice. *Danjaq, LLC v. Sony Corp.*, 263 F.3d 942, 950-51, 955 (9th Cir.2001) (internal citations and quotation marks omitted).    Laches is an equitable defense that prevents a party, "who with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights." *Danjaq*, 263 F.3d at 950-51 (internal citations and quotation marks omitted). The common law defense of laches, which is seldom invoked, is completely applicable to the specific circumstances of this case.  As discussed below, Defendants possessed the "full knowledge of the facts" but opted to defer its filing so as not to take a position that was contrary to the one they had so vigorously advanced before the trial court and the Ninth Circuit.  Nor did Defendants want to cloud the prospects of having the case dismissed for lack of jurisdiction by asserting their own new claims to the mix of pending of claims.

### 2.    FED. R. CIV. P. 16(B)

Pursuant to Fed. R. Civ. P. 16(b), the district court must issue a scheduling

8

order that limits "the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed.R.Civ.P. 16(b)(3)(A).  After a scheduling order has been entered, it "may be modified only for good cause and with the judge's consent."  Fed.R.Civ.P. 16(b)(4).  In the District of Hawai'i, the court "may modify a pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"  *Association Of Apartment Owners Of Imperial Plaza v. Fireman's Fund Insurance Company*, Civ. No. 11-00758 ACK-KSC, 2013 WL 2156469, *3 (D. Haw. 2013), *quoting Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992) (internal citations omitted). As noted by Judge Alan C. Kay: "The Ninth Circuit has stated that 'the focus of the inquiry is upon the moving party's reasons for seeking modification ... [i]f that party was not diligent, the inquiry should end.'"  *Id.* (internal citations omitted). Judge Kay further noted: "Allowing parties to disregard the Rule 16 Scheduling Order would 'undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.'" *Id.,* quoting *Johnson,* 975 F.2d at 610.

Judge David Alan Ezra also discussed circumstances that might warrant allowing the defense to file a counterclaim after the Rule 16(b) deadline for filing all motions to join additional parties or amend the pleadings had expired. *Himmelfarb v. JP Morgan Chase Bank Nat. Ass'n,* Civ. No. 10-00058 DAE-KSC,

9

2001 WL 4498975 (D. Haw. 2011). Judge Ezra affirmed that in arguing it should
be allowed leave of court to file a counterclaim after the deadline for filing a
motion to join additional parties and amend the pleadings had passed, the
defendant "had to satisfy the more rigorous 'good cause' standard established by
Rule 16." *Id.*, fn. 3. Certainly, as Judge Ezra recognized, a counterclaim that
names Plaintiffs as defending parties and raises new causes of action is an
amendment of the pleadings governed by Rule 16.

## C.    ARGUMENT

Defendants' filing of a cause of action is untimely because it was filed more
than two years after Plaintiffs filed both the initial and amended complaints, and
importantly, after significant discovery had been completed by Defendants. The
matters alleged in Defendants' counterclaim had been known to them for at least
two years, and Defendants' delay was calculated, unreasonable, and will cause
prejudice to Plaintiffs if not dismissed.

The claim of laches in this case is not just theoretical. As discussed, two of
the Plaintiffs were deposed *before* the counterclaim was filed and therefore they
did not have any knowledge of the claims or allegations of wrongdoing Defendants
intended to raise *after* their depositions. In fact, Defendants' repeated contentions
during the injunction hearing were exactly the opposite of the claims asserted in
the counterclaims. Plaintiffs believed, at the time of their respective depositions,

10

that Defendants' position was that they had executed a "business decision" and not acted upon allegations of wrongdoing that would implicate their due process rights in a credentialing or peer review hearing.

Likewise, Defendants insisted on moving forward with Plaintiffs' experts and pushed for the production of the experts' "final" opinions in the case before any of the principals of QMC had been deposed.  As the record of proceedings before Magistrate Judge Kevin S.C. Chang demonstrates, Plaintiffs could not, and, even as of the filing of this motion still have not been able to depose the principal Defendants because of ongoing discovery disputes with Defendants.[2]  Plaintiffs repeatedly advised Defendants that deposing the experts would be premature, given the state of Defendants' incomplete discovery productions, and did so in person, during telephone conversations, and via letter.  Exhibit A, Letter dated February 11, 2014, from Mark S. Davis.  In addition, prior to each expert deposition, Plaintiffs' counsel again put Defendants on notice that the incomplete factual record made the deposition premature.  Exhibit B, Excerpt of Transcript from the Videotaped Deposition of Thomas L. Greaney, pp. 5-7; Exhibit C, Excerpt of Transcript from the Deposition of Jonathan Cunitz, pp. 11-12; and Exhibit D, Excerpt of Transcript from the Deposition of Ronald Goodspeed, pp. 6-

---

[2] Plaintiffs note that the week of March 10, 2014, they received more than 2,000 pages of responsive documents from Defendants, which Plaintiffs originally requested in September 2012.

7.  Defendants persisted, and now the record confirms that they did so with full knowledge that they intended to name Plaintiffs as counter-defendants and raise new claims directly relevant to the matters about which the experts were opining.

This situation created by Defendants is precisely what the defense of laches seeks to avoid.  Defendants made a calculated decision to file the counterclaim only after the Ninth Circuit upheld the injunction on due process grounds and refused to dismiss the case on jurisdictional grounds.  This is rank gamesmanship, which Defendants engaged in to avoid providing a further basis for federal jurisdiction and to avoid refuting their position that QMC's actions constituted a "business decision," which is the argument they so vigorously advanced before this Court and the Ninth Circuit.[3]  They alone could have avoided this situation.

The fact Defendants' motion to dismiss has not been adjudicated does not provide a defense to their delay, especially since Defendants requested that the Court continue the adjudication of the motion.  The relevant history is as follows.  On March 19, 2012, in lieu of an answer, Defendants filed a motion to dismiss.  On March 20, 2012, this Court entered its injunction order.  Defendants immediately appealed the Court's order, entering their notice of appeal on March 21, 2012.

---

[3] Examples of where Defendants' argued that their actions were the result of a "business decision," rather than to address the type of improper conduct alleged in their counterclaim, appear in their opposition to Plaintiffs' request for injunctive relief (Docket #14, pp. 1, 16), their motion to dismiss (Docket #61, pp. 1-2, 8), and throughout Defendants-Appellants' Opening Brief, filed on April 11, 2012 (Ninth Circuit No. 12-15624, DktEntry #7, pp. 2, 5-6).

During the pendency of Defendants' appeal of the injunction, this Court retained

jurisdiction over trial matters unrelated to the injunction, and Plaintiffs timely filed

their opposition to Defendants' motion to dismiss on July 2, 2012.  *See Phelan v.*

*Taitano*, 233 F.2d 117, 119 (9th Cir. 1956) ("An appeal from an interlocutory order

does not divest the trial court of jurisdiction to continue with other phases of the

case.") *citing Ex parte National Enameling & Stamping Co.*, 201 U.S. 156, 26

S.Ct. 404, 406 (1906); *Am. Dev. Corp. v. Strack*, 81 F.3d 167, *4 (9th Cir. 1996)

("It is a well-recognized exception to the general rule that appeals from orders

granting or denying an injunction do not divest the district court of jurisdiction.")

*citing Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982); *Rouser*

*v. White*, 707 F. Supp. 2d 1055, 1063 (E.D. Cal. 2010)("Clearly, the Ninth Circuit

did not hold that district courts lack jurisdiction only as to those issues that do not

implicate the issues raised in the appeal").

On July 9, 2012, just days *after* Plaintiffs had filed their opposition

pleadings in good faith, Defendants petitioned the Court to continue the hearing on

their motion to dismiss, which had been set for July 23, 2012.  Plaintiffs opposed

Defendants' request to continue the adjudication of the matter until after the Ninth

Circuit decided the appeal, as there was no basis for doing so and Plaintiffs did not

want to delay the litigation.  However, as a courtesy to Defendants, Plaintiffs did

not object to a short continuance of the hearing date.  *See* Exhibit E, Letter dated

July 9, 2012 from Clyde J. Wadsworth. The Court granted Defendants' petition and the hearing was continued three months to October 19, 2012. Docket #87.

Prior to this Court's hearing on Defendants' motion to dismiss, however, the Ninth Circuit entertained oral arguments on Defendants' appeal. In light of jurisdictional concerns that emerged as a result of Defendants' wholesale attack of Plaintiffs' claims on appeal, this Court elected to reserve its resolution of Defendants' pending motion until after the Ninth Circuit ruled.[4] The Ninth Circuit then referred the case to mediation, which caused this Court to reserve ruling until after the completion of mediation. Docket #91. During the ensuing fifteen months, Plaintiffs participated in mediation in good faith. However, no progress towards a resolution was achieved.[5]

Even after Defendants informed the Court that mediation had failed, which they did via letter dated January 25, 2014, they continued with their strategic decision not to file an answer or a counterclaim, no doubt banking on the possibility that their appeal would result in the Ninth Circuit throwing out the case on the basis of jurisdiction. The fact they filed an answer and counterclaim one day after the Ninth Circuit issued its order in favor of Plaintiffs, demonstrates they

---

[4] As Defendants originally had removed Plaintiffs' action to federal court, it would have been no small injustice if their subsequent appeal had resulted in this Court's order in Plaintiffs' favor being thrown out because of a lack of federal jurisdiction.
[5] Defendants stated their position regarding mediation in their questionnaire filed with the Ninth Circuit. *See* Exhibit F, Excerpt from Mediation Questionnaire, submitted by Defendants-Appellants with the Ninth Circuit on March 29, 2012.

were in fact prepared to file the pleadings but instead had elected to "sleep upon their rights" to avoid raising contradictory arguments and to take advantage of the possibility that Plaintiffs' case would be thrown out of federal court altogether.[6]

As is evident from a plain reading of Defendants' counterclaim, the allegations averred therein concern facts that have been known to Defendants since the very outset of the case.  Indeed, Defendants raised the issue of immunity from suit, which forms the basis of their first claim for relief, in their opposition to Plaintiffs' request for injunctive relief, in their appellate briefs, and again in their motion to dismiss.[7]  *See* Docket #14, p. 5; Defendants-Appellants Opening Brief, No. 12-15624, pp. 11-12; Docket #61-1, p.12.

With respect to Defendants' second claim for relief, Plaintiffs recently discovered that the alleged basis for Defendants' second claim was known to Defendants well before litigation even commenced, i.e., *prior* to the adoption of the August 29, 2010 resolution by the Board of Trustees terminating the ability of Plaintiffs to exercise their privileges at QMC.  Records belatedly produced by Defendants this past January demonstrate that Defendants had adopted their

---

[6] The fact Defendants did not wait for this Court's adjudication of their motion to dismiss before filing their counterclaim admits of the fact their delay was unjustified.

[7] Although raised at these critical junctures, neither this Court nor the Ninth Circuit found the argument persuasive. As such, the law of the case is that the defense fails.

position regarding PRO's alleged "transferring" of patients as early as July 2011,
which is six months before Plaintiffs even filed suit.

During the two years Defendants' motion to dismiss has been pending
resolution, and the parties have engaged in extensive discovery, no unforeseen
circumstances have arisen nor have facts emerged not previously known to
Defendants to justify the delay in bringing their claim against Plaintiffs.
Accordingly, it is clear that Defendants consciously decided to delay the filing of
their counterclaim until after the Ninth Circuit had finished its review of their
appellate case and substantial discovery had been completed, including extensive
written discovery, third party subpoenas, the depositions of all Plaintiffs' expert
witnesses as well as the depositions of two of the principal Plaintiffs, which
Defendants conducted in a manner that would *not* point out the inconsistencies in
the arguments Defendants were advancing to the Ninth Circuit.  Defendants could
not, with a straight face, contend that their action arose out of a straightforward
"business decision" with no allegation of impropriety triggering Plaintiffs rights to
a hearing while at the same time sue Plaintiffs, as they have in the counterclaim,
for causing them damages by improperly stealing patients.

The fact Defendants filed their counterclaim after the deadline for adding
parties or amending the pleadings had expired provides additional grounds for
dismissing Defendants' counterclaim as untimely.  Defendants elected not to file

an answer or counterclaim naming Plaintiffs as Counter-defendants by the Rule 16(b) scheduling order deadline for adding parties or amending the pleadings. In the absence of good cause justifying Defendants' disregard of this pretrial deadline, any request by Defendants to modify the scheduling order should be denied. Even if Defendants had moved to modify the scheduling order under Rule 16(b), the motion would be without merit as Defendants cannot meet the rigorous standard of good cause with the necessary demonstration of diligence on their part. To the contrary, as Defendants have had two years to file a counterclaim based on facts that have been known to them since the outset of the case, their conduct is indeed quite the opposite of diligent.[8]

Defendants' delay is unreasonable, and allowing Defendants to pursue their counterclaim at this juncture, especially in light of their own efforts to delay the adjudication of their motion to dismiss and yet proceed with the underlying discovery, would cause further prejudice to Plaintiffs.

## III. DEFENDANTS' COUNTERCLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

---

[8] In this case, unlike the facts before Judge Ezra in *Himmelfarb*, Defendants have had the same counsel from the outset of the litigation. They have pursued a number of different strategies, including an appeal of the injunction, the filing of a motion to dismiss, and the filing of an answer prior to the adjudication of their motion. However, the filing of a counterclaim long after the expiration of the October 5, 2012 deadline by which to join additional parties or amend their pleadings cannot be justified.

A.     **APPLICABLE LAW**

    1.     **FED. R. CIV. P. 12(B)(6)**

The Court may dismiss a claim as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.,* 88 F.3d 780, 783 (9th Cir.1996); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533-34 (9th Cir.1984).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the party will prevail in the action, but whether it is entitled to offer evidence in support of its claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *abrogated on other grounds Harlow v. Fitzgerald,* 457 U.S. 800 (1982). Dismissal under Rule 12(b)(6) is warranted if it appears beyond doubt that no set of facts would support the claim and entitle the claimant to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984), *citing Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

B.     **ARGUMENT**

    1.     **DEFENDANTS' FIRST CLAIM FAILS AS A MATTER
        OF LAW**

As discussed previously, Defendants' first claim is not a counterclaim but rather an affirmative defense, which Defendants assert as the Seventh Defense in their Answer, filed February 25, 2015.  See Docket #175, p. 7, par. 25.  Moreover, as both this Court and the Ninth Circuit have rejected this defense, and in fact imposed and upheld the relief requested by Plaintiffs, it is law of the case that this defense fails.

Even if the Court views this as an appropriate claim, rather than a defense, and concludes it is not defeated as law of the case, the claim should be dismissed as a matter of law because the plain language of the provision does not provide the immunity defense propounded by Defendants.  To support their counterclaim, Defendants excerpt language from Section 12.3-1 of the QMC Bylaws.  In doing so, they misrepresent the application of the immunity provision, which relates to the providing of information to a committee engaged in the process of credentialing physicians and undertaking peer review proceedings.  Upon proper reading of the immunity provision of the Bylaws, it is clear beyond a doubt that Defendants' claim fails.

In their counterclaim, Defendants extract parts of Section 12.3-1 in a manner that seeks to confound the proper reading of the provision.  Counterclaim, Docket #175-1, p. 2, par. 2.  For the Court's convenient reference, Plaintiffs provide the full text of Section 12-3.1 as follows:

19

> To the fullest extent permitted by law, the individual releases from
> any and all liability, extends absolute immunity to, and agrees not to
> sue the Medical Center or the Board, any member of the Medical Staff
> or the Board, their authorized representatives, and third parties **who
> provide information** for any matter relating to appointment,
> reappointment, clinical privileges, or the individual's qualifications
> for the same. **This immunity covers any actions,
> recommendations, reports, statements communications, and/or
> disclosures involving the individual that are made, taken, or
> received by the Medical Center, its authorized agents, or third
> parties in the course of credentialing and peer review activities.**

Docket #31-7, p. 52, which is also attached hereto as Exhibit G (emphasis added).

When the language modifying the provision is read in full, it is clear that the

provision simply does not apply to this action, where Plaintiffs filed suit against

Defendants for their wholesale disregard of the QMC Bylaws and their failure to

engage in the very due process that would have triggered the immunity provisions

afforded by the Bylaws. Section 12-3.1 applies "in the course of credentialing and

peer review activities." However, this case is about the *failure* to engage in any

credentialing or peer review activities. In this case, Plaintiffs were already

credentialed, a fact Defendants raise repeatedly in their unavailing attempts to

argue their actions did not change Plaintiffs' status as credentialed members of

QMC's hospital staff but merely limited the exercise of their privileges. In

addition, Defendants have argued, though disingenuously, that their actions did not

implicate the peer review process set forth in the QMC Bylaws, even though they

alleged misconduct on the part of Plaintiffs as a part of their basis for terminating

their ability to practice at QMC.[9]

Defendants are not immune, as a matter of law, from allegations that they

failed to afford due process or otherwise contravened the public's interest. *See*

*Silver v. Castle Medical Center*, 53 Haw. 475 (1972). As Defendants are well

aware, the instant action is against them for their failure to follow their own

Bylaws and to provide a hearing to Plaintiffs. As such, it is not proscribed or in

any way undermined by the immunity and release provisions of the Bylaws.

Moreover, this is an issue that is preempted by federal law, the Heath Care

Quality Improvement Act, which authorizes the immunity provisions only if the

institution follows its bylaws and provides notice and hearing to the impacted

physician. *See* 42 U.S. Code §§ 11101, 11111, 11112, Health Care Quality

---

[9] Defendants' inconsistent application of the peer review provisions of the QMC Bylaws is further reflected in their position regarding Plaintiffs' request for information concerning the QMC Medical Executive Committee's treatment of Defendants' decision to kick Plaintiffs off the QMC campus. They have asserted a "peer review privilege" in response to Plaintiffs' request, all the while maintaining that their case against Plaintiffs did not implicate the peer review provisions concerning notice and due process. *See* Exhibit H, Excerpts from the Deposition of Paul Morris, M.D., on February 11, 2014, pp. 66-70. In addition, they admitted the applicability of the peer review process by asking Plaintiffs during a deposition why they did not request a hearing prior to filing a lawsuit. *See* Exhibit I, Excerpt from the Deposition of Vincent Cook Brown, M.D., on January 28, 2014, p. 105. Of course, as this Court is well aware, because the due process provisions of the Bylaws were ignored, Plaintiffs had no idea of the basis for Defendants' action until *after* they had filed suit and Defendants finally were forced to justify their action through the submission of affidavits. This underscores why the immunity provision simply does not apply.

Improvement Act ("HCQIA") (identifying when and how a professional review action should be taken to qualify for immunity); *see also Austin v. McNamara*, 979 F.2d 728 (9th Cir. 1992) (addressing the reasonableness requirements of a professional review action necessary to entitle participants to immunity under HCQIA). HCQIA grants immunity to people who provide information as part of a peer review and credentialing process but certainly does not provide immunity to an institution that ignores its owns bylaws. *See* 42 U.S.C. § 11112.

Even if Section 12.3-1 bore any relevance to Plaintiffs' action against Defendants, Defendants have by their own actions nullified the application of the immunity provision. As Defendants readily admit in their counterclaim, QMC and the individual physicians agreed to enter into a contractual relationship with each other whereby they both would be bound by the Bylaws. By failing to follow the Bylaws and provide due process before unlawfully terminating Plaintiffs' ability to practice, QMC breached its contractual obligation to Plaintiffs before the PRO physicians even filed suit. It was this breach that left Plaintiffs with no choice but to sue. Thus, Defendants in effect nullified any obligation on the part of Plaintiffs by breaching their contractual obligations first. Moreover, because Defendants adamantly refused even to divulge to Plaintiffs the basis for their decision, that is, that Plaintiffs had engaged in improper conduct causing harm to patients, Plaintiffs were *forced* to file a law suit. For these reasons, it is Defendants who are in fact

responsible for incurring not only substantial legal fees and costs to Plaintiffs, but any costs they themselves have incurred as a result of their breach. Because Defendants completely disregarded the Bylaws, judicial intervention was not barred but entirely appropriate to address the breach of Defendants' obligations to Plaintiffs.

## IV. CONCLUSION

For all the reasons set forth above, Plaintiffs respectfully ask the Court to dismiss Defendants' counterclaim in its entirety.

DATED:    Honolulu, Hawai'i, March 18, 2014.

/s/ MARK S. DAVIS

MARK S. DAVIS
MICHAEL K. LIVINGSTON
LORETTA SHEEHAN
MATTHEW C. WINTER
CLARE E. CONNORS
Attorneys for Plaintiffs

23