Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys at Law
A Law Corporation

| | |
|---|---|
| PAUL ALSTON | 1126 |
| WILLIAM S. HUNT | 1259 |
| CLYDE J. WADSWORTH | 8495 |
| CLAIRE WONG BLACK | 9645 |

1001 Bishop Street, Suite 1800
Honolulu, Hawai`i  96813
Telephone:   (808) 524-1800
Facsimile:   (808) 524-4591
E-mail:   palston@ahfi.com
         whunt@ahfi.com
         cwadsworth@ahfi.com
         cblack@ahfi.com

DANIEL M. MULHOLLAND III, *Pro Hac Vice*
Horty, Springer & Mattern, P.C.
4614 Fifth Avenue
Pittsburgh, Pennsylvania  15213
Telephone:   (412) 687-7677
Facsimile:   (412) 687-7692
E-mail:   dmulholland@hortyspringer.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| PACIFIC RADIATION ONCOLOGY, LLC, a Hawai`i Limited Liability Corporation, et al.,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>THE QUEEN'S MEDICAL CENTER, a | Case No. CV 12-00064 LEK-KSC<br>(Declaratory and Injunctive Relief)<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO [185] PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM; DECLARATION OF WILLIAM S.**<br>*[captioned continued]* |

895971v2 / 3525-24

| | |
|---|---|
| Hawai`i Non-Profit Corporation, et al.,<br><br>                    Defendants. | HUNT; EXH. "A1"-"A3", "B1"–"B3"; CERTIFICATE OF SERVICE<br><br>**Hearing:**<br>Date:  May 19, 2014<br>Time:  9:45 a.m.<br>Judge:  Hon. Leslie E. Kobayashi |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO [185] PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM**

Defendants, by their undersigned attorneys, respectfully submit this Memorandum in Opposition to Plaintiffs' Motion to Dismiss the Counterclaim.

## I.   INTRODUCTION

Plaintiffs' speculative allegations regarding Defendants' reasons and timing for filing their Counterclaim are unsupported, categorically false, and should be rejected outright. Defendants' Answer and Counterclaim was timely filed and constituted an initial pleading, not an amendment. Therefore, Plaintiffs' reliance on the Scheduling Order's deadline to *amend* pleadings is misplaced. Moreover, Plaintiffs' laches argument makes no effort to overcome the "strong presumption that laches is inapplicable" where, as here, a Counterclaim is filed within the relevant statute of limitations. Plaintiffs' substantive attack on Defendants' first Counterclaim[1] also fails: Defendants state a valid Counterclaim

*continued*

---
[1] Plaintiffs do not move to dismiss the second Counterclaim under Rule 12(b)(6). Dkt. 185-1 at 18-23 (addressing first Counterclaim only).

895971v2 / 3525-24                              1

for breach of QMC's Medical Staff Bylaws.  Pursuant to the QMC Bylaws, every medical staff member "releases from any and all liability, extends absolute immunity to and agrees not to sue" the Medical Center, any member of the Medical Staff or the Board, and their authorized representations (among others). Counterclaim, Dkt. 175-1 at ¶ 2. Accordingly, each of the individual physician Plaintiffs breached the Bylaws in filing this action. *Id.* at ¶ 5.

## II.   FACTS

On February 23, 2012, Plaintiffs amended their initial complaint. Dkt. 44.  On March 19, 2012, Defendants timely moved to dismiss the Amended Complaint. Dkt. 61 ("Motion to Dismiss"). The next day, this Court entered an Order granting in part and denying in part Plaintiffs' motion for preliminary injunction. Dkt. 63. Defendants appealed the preliminary injunction on March 21, 2012. Dkt. 64. The Motion to Dismiss was fully briefed during the pendency of the appeal. *See* Dkt. 78 (opposition filed July 2, 2012), Dkt. 81 (reply filed July 23, 2012).  By order dated October 15, 2012, the Court vacated the hearing on the Motion to Dismiss[2] and ordered the parties to notify the Court within five days of

---

*continued*

[2] The Court vacated the hearing because the Ninth Circuit raised the issue of whether there was federal jurisdiction over Plaintiffs' due process claim, and therefore its "ruling on this issue is relevant to the issues before the Court in [Defendant's Motion to dismiss]." Dkt. 87. Accordingly, Plaintiffs' exhaustive recitation of the "relevant history" of the continued hearing on Defendants' Motion to Dismiss in support of their laches argument, Dkt. 185-1 at 12-14, is irrelevant.

their receipt of the Ninth Circuit's ruling on the appeal. Dkt. 87. The Court stated that, if necessary, it would "request further briefing and [ ] reset the Motion for hearing." *Id.* In a subsequent Order, the Court deemed the Motion to Dismiss "WITHDRAWN WITHOUT PREJUDICE". Dkt. 93 (emphasis in original). Notably, Plaintiffs' recitation of "Relevant Procedural History" fails to reference that Order. *See* Dkt. 185-1 at 5-8. On February 24, 2014, the Ninth Circuit entered an Order denying Defendants' appeal of the preliminary injunction.[3] The very next day, Defendants filed their Answer and Counterclaim. Dkt. # 175.

## III.   ARGUMENT

### A.   Defendants Timely Filed their Counterclaim

#### 1.   Plaintiffs' Reliance on the Scheduling Order is Misplaced

The timely filing of the Defendants' Motion to Dismiss tolled the time period for filing a responsive pleading to the Amended Complaint. Fed. R. Civ. P. 12(a)(4). Because the Court neither denied the Motion to Dismiss nor postponed its disposition until trial, Defendants' Answer and Counterclaim was timely filed and constituted an initial pleading, not an amendment. *Id.*

Plaintiffs' reliance on the Amended Rule 16 Scheduling Order's deadline to amend pleadings is misplaced. Paragraph 5 of the Scheduling Order, Dkt. 163, relates to motions to join additional parties or to *amend* the pleadings.

*continued*

---

[3] This order became final with the issuance of the Ninth Circuit's mandate on March 19, 2014. Dkt. 187.

However, Defendants' Answer and Counterclaim is an initial pleading, not an amendment. Therefore, the provision of the Amended Scheduling Order governing amended pleadings is not applicable to the Defendants' Answer and Counterclaim. Plaintiffs' cited authority is likewise inapposite. Plaintiffs disingenuously claim that Judge Ezra "recognized[ ] a counterclaim that names Plaintiffs as defending parties and raises new causes of action is an amendment of the pleadings governed by Rule 16." Dkt. 185-1 at 10-11 discussing *Himmelfarb v. JP Morgan Chase Bank Nat'l Ass'n*, Civ. No. 10-00058 DAE-KSC, 2011 WL 4498975 (D. Haw. Sept. 26, 2011). Critically, **the defendant in *Himmelfarb* had already answered the complaint,** and therefore—unlike the instant case—JP Morgan's counter-and-crossclaims *were* amended pleadings. *See* Civ. No. 10-00058, Dkt. 6 (JP Morgan's Answer).  And, Judge Ezra declined to disturb the order allowing defendant to file its counter/crossclaim. 2011 WL 4498975, at *4.

  **B.** **Laches Does Not Apply**

    Plaintiffs argue that Defendants' Counterclaims should be barred by the doctrine of laches. Whether conduct constitutes laches in any given circumstance is an issue of fact. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 695 F.3d 946, 951 (9th Cir. 2012) *cert. granted*, 134 S. Ct. 50 (2013). Insofar as a defense of laches requires close scrutiny of the particular facts of the case, it is "seldom susceptible of resolution" by a motion to dismiss. *Kourtis v. Cameron*, 419 F.3d

989, 1000 (9th Cir. 2000) (overruled on other grounds by *Taylor v. Sturgell*, 553 U.S. 880 (2008)). *See also Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1041 (9th Cir. 2000) (quoting *Couveau v. American Airlines*, 218 F.3d 1078, 1083 (9th Cir. 2000) ("This court has previously observed that because a claim of laches 'depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution by summary judgment.'"). Thus, laches is not a proper matter to raise on a Rule 12(b)(6) motion, and the motion should be denied for that reason alone.

In support of their laches argument, Plaintiffs cite only one case—*Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001). Plaintiffs fail to explain how *Danjaq* is analogous to this case, because it is not. *Danjaq* found that the counterclaim at issue was barred by laches because the "delay range[d] from thirty-six years…to nineteen years" and the "economic prejudice" that the plaintiff would have suffered was approximately "one billion dollars." *Id.* at 953, 956. The "extraordinary delay and the extraordinary prejudice" in *Danjaq*, 263 F.3d at 954, is a far cry from what Plaintiffs allege in their Motion to Dismiss Defendants' Counterclaim ("Plaintiffs' Motion"). Plaintiffs' complaint that they were prejudiced because their experts and two of the Plaintiff physicians were already deposed is undermined by those same experts' testimony. Each of Plaintiffs' experts agreed that they had been retained to testify as to *Plaintiffs'* claims and had not requested any further documents in order to complete their review and report or

needed any documents within the control of Defendants. Declaration of W. Hunt at Ex. A1, R. Goodspeed testimony Tr.: 55: 3-7; Ex. A2, J. Cunitz testimony Tr.: 182: 8 – 183:3; Ex. A3, T. Greaney testimony Tr.: 27:14 – 28:4. *See also* n.6, *infra*.

Plaintiffs also make unsupported, speculative, and categorically false allegations regarding Defendants' reasons and timing for filing their Counterclaim, which was well within the relevant statute of limitations for each claim for relief. As discussed further below, none of the reasons advanced by Plaintiffs warrant the application of the laches doctrine.

### 1. Laches is Inapplicable Because the Counterclaim was Filed Within the Relevant Statutes of Limitations

When a counterclaim is filed within the relevant statute of limitations, "the strong presumption is that laches is inapplicable." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836 (9th Cir. 2002). *See also Shouse v. Pierce County*, 559 F.2d 1142, 1147 (9th Cir. 1977) (application of laches when claim is filed within the statute of limitations period is "extremely rare"). Each of Defendants' claims for relief under its Counterclaim falls within the applicable statute of limitations, so laches does not apply.

Defendants' first claim for relief alleges breach of contract against each of the Plaintiff physicians. Counterclaim, Dkt. 175-1, ¶¶ 1 – 6. The filing of Plaintiffs' suit on January 27, 2012 violated the release and covenant not to sue provisions of the Plaintiff physicians' applications for reappointment and the

Defendants' Medical Staff Bylaws. Hawai`i has a six-year statute of limitations for breach of contract actions. H.R.S. § 657-1. Therefore, Defendants would have had until approximately January 27, 2018 to file their breach of contract claim against the Plaintiff physicians. Furthermore, Plaintiffs' claims of surprise and prejudice are utterly disingenuous. Two days after the complaint was removed to federal court, Defendants set forth the basis for this claim in their Opposition to Plaintiffs' Motion for Temporary Restraining Order (Dkt. 14, filed Feb. 2, 2012, at 21 – 22), as well as their Motion to Dismiss (Dkt. 61 at 11 – 12).

Defendants' second claim for relief alleges unfair competition in violation of H.R.S. § 480-2. Dkt. 175-1, ¶¶ 7 – 16. The statute of limitations for claims brought under this statute is four years from the time the cause of action accrues. H.R.S. § 480-24. The Counterclaim alleges that the conduct of the Plaintiff physicians in violation of Chapter 480 continued through February 1, 2012. Thus, Defendants would have had until approximately February 1, 2016 to file their second claim for relief. Because Defendants filed their Counterclaim on February 25, 2014, it was timely.

Plaintiffs fail to proffer anything remotely close to rebutting the presumption of timeliness, but simply rely on unsupported allegations of delay. For example, Plaintiffs speculate that Defendants "opted to defer its filing so as not to take a position that was contrary to the one they had so vigorously advanced before

the trial court and the Ninth Circuit." Dkt. 185-1 at 8. Aside from being false, this type of unsupported allegation is insufficient to support a defense of laches. *See, e.g.*, *Trustees for Alaska Laborers-Construction Indus. Health and Sec. Fund v. Ferrell*, 812 F.2d 512, 518 (9th Cir. 1987) (holding that unsupported allegations could not sustain a defense of laches).

Further, the Ninth Circuit has concluded that there are a number of legitimate reasons for delay, such as exhaustion of remedies through administrative processes and preparing a complicated claim. *Evergreen Safety Council v. RSA Network, Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012). Plaintiffs acknowledge that Defendants filed their Counterclaim soon after the administrative process of mediation, ordered by the Ninth Circuit, was terminated. *See* Dkt. 185-1 at 7 ("In January 2014…the Ninth Circuit officially terminated mediation."). Since Defendants filed their Counterclaim on February 25, 2014, approximately one month after the termination of mediation, it is beyond comprehension how Plaintiffs can now claim that there was delay—let alone unreasonable delay—by Defendants in filing their Counterclaim.

Also, Defendants' claim for relief under H.R.S. § 480-2 is a "complicated claim." The unfair competition principles underlying the Chapter 480 claim are inherently complex and Plaintiffs' refusal to disclose relevant financial information for The Cancer Center of Hawaii, LLC, from which certain

Plaintiff Physicians and PRO derive substantial revenue, has hampered Defendants' efforts to prepare their second claim for relief.

### C. Defendants Have Stated a Valid Counterclaim for Breach of the Plaintiffs' Prior Releases and Covenants Not to Sue

Plaintiffs contend that the first Counterclaim fails as a matter of law by focusing on one sentence in one section of the Bylaws' immunity provision. Their myopic reading of the Bylaws defies logic and violates fundamental canons of contract interpretation. The plain language of the Medical Staff Bylaws provides broad and absolute immunity to QMC, any member of the Medical Staff or the Board, and their authorized representatives (among others):

> **12.3 IMMUNITY FROM LIABILITY**
>
> **12.3 GRANT OF IMMUNITY AND AUTHORIZATION TO OBTAIN/RELEASE INFORMATION**
>
> By requesting an application and/or applying for appointment, reappointment, or clinical privileges, the individual expressly accepts the conditions set forth in this Section 12.3:
>
> **12.3-1 Immunity:**
>
> To the fullest extent permitted by law, the individual releases from any and all liability, extends absolute immunity to, and agrees not to sue the Medical Center or the Board, any member of the Medical Staff or the Board, their authorized representatives, and third parties who provide information for any matter relating to appointment, reappointment, clinical privileges, or the individual's qualifications for the same. This immunity covers any actions, recommendations, reports, statements, communications, and/or disclosures involving the individual that are made, taken, or received by the Medical Center, its authorized agents, or third parties in the course of credentialing and peer review activities.

Medical Staff Bylaws, Dkt. 1-4 (Ex. A to Plaintiffs' TRO Motion) § 12-3.1 at PageID# 136-37. Plaintiffs contend that the last sentence of Section 12.3-1 limits the immunity provision to apply "in the course of credentialing and peer review activities." Dkt. 185-1 at 20. To the contrary, the reference to credentialing and peer review does not limit immunity, but simply provides further examples of

when the release and immunity would be effective. Plaintiffs' interpretation would render the first sentence of Section 12.3-1 meaningless. *Evergreen Eng'g, Inc. v. Green Energy Team LLC*, 884 F. Supp. 2d 1049, 1062 (D. Haw. 2012) ("We have long expressed our disapproval of interpreting a contract such that any provision be rendered meaningless.").

Plaintiffs' strained interpretation also ignores Sections 12.3-5, 12.3-6, and 12.4 of Article 12, all of which provide broad immunity prohibiting any claims against QMC, its Board, and members of the Medical Staff—whether those claims arise pursuant to QMC's business decision to employ physicians in order to enhance quality and continuity of care, or under Plaintiffs' theories regarding failure to engage in the due process provisions of the Bylaws and failure to engage in credentialing or peer review activities. Section 12.3-5 makes clear that an individual instituting "legal action to challenge any credentialing, peer review, **or other action**" does so in contravention of Section 12.3's grant of immunity. Dkt. 1-4, § 12.3-5 at PageID# 137 (requiring reimbursement of costs, fees, and lost revenues "[i]f, *notwithstanding this Section,* an individual institutes legal action challenging any credentialing, privileging, peer review, **or other action** and does not prevail") (emphasis added). Similarly, Section 12.3-6 ("Scope of Section") states that "**[a]ll of the provisions in this Section 12.3** are applicable" both "throughout the term of any appointment or reappointment period and thereafter"

as well as if clinical privileges are "revoked, reduced, restricted, suspended, **and/or otherwise affected**". *Id.* (emphasis added). Section 12.4 ("Activities and Information Covered") further provides that the immunity provisions of Article 12 apply to all acts in connection with activities "**concerning but not limited to** … activities related to monitoring and maintaining quality patient care":

> 12.4  ACTIVITIES AND INFORMATION COVERED
>
> 12.4-1  ACTIVITIES
> The confidentiality and immunity described by this Article applies to all acts, communications, proceedings, interviews, reports, records, minutes, forms, memoranda, statements, recommendations, findings, evaluations, opinions, conclusions or disclosures performed or made in connection with this or any other health care facility's or organization's activities concerning but not limited to:
>
> I.  Other Hospital and staff activities related to monitoring and maintaining quality patient care and appropriate professional conduct.

*Id.*, § 12.4-1(I) at PageID# 138 (emphasis added). Defendants have maintained from the inception of Plaintiffs' suit that the adoption of the employment practice model "w[as] needed to address the concerns regarding quality, patient safety, and continuity of care in the QMC radiation therapy program." Dkt. 14 at 6-7.

By its plain terms, the Bylaws' immunity provision applies broadly to bar the instant action, whether arising from activities to maintain quality patient care or, as Plaintiffs would have it, from actions that "otherwise affect" their clinical privileges.[4] Thus it is crystal clear that Defendants stated a valid

---

*continued*

[4] In the alternative, and at minimum, Section 12.3-1 provides immunity to QMC, any member of the Medical Staff or the Board, and their authorized representatives

counterclaim for violation of the Bylaws arising from Plaintiffs' filing of the instant action.[5]

A release of claims is valid if it is voluntary, deliberate, and informed. *Salsman v. Access Sys. Americas, Inc.*, 489 F. App'x 227 (9th Cir. 2013). Plaintiffs affirmed under oath that they voluntarily signed the release and covenant not to sue contained in their application forms and the Medical Staff Bylaws.[6] *i.e.*

---

*continued*
"for any matter relating to appointment, reappointment, clinical privileges or the individual's qualifications for the same." Plaintiffs' suit clearly relates to clinical privileges. Dkt. 1-1 (Complaint) and Dkt. 44 (Amended Complaint) at ¶¶ 31 ("The actions of the Defendants to terminate the Plaintiffs' hospital privileges … is a violation of existing Hawai`i law"). Even under this more restrictive reading of the Bylaws' immunity provision, Defendants have stated a valid claim for breach of the Bylaws.

[5] Plaintiffs' claim that "both this Court and the Ninth Circuit have rejected [Defendants'] defense" relating to the Bylaws' release and immunity is wholly unsupported. Dkt. 185-1 at 19. Neither this Court's preliminary injunction order nor the Ninth Circuit's memorandum opinion addresses the immunity provision of the Bylaws. This Court's finding of reasonable likelihood of success on Plaintiff Lederer's due process claim under state law is irrelevant to Defendants' breach of contract claim and, in any event, was "based on the current record" as of March 20, 2012. Dkt. 63 at 29. It is certainly not law of the case as to the breach of contract Counterclaim or Release and Immunity Defense. *Ranchers Cattlemen Action Legal Fund v. Dep't of Ag.*, 499 F.3d 1108, 1114 (9th Cir. 2007) (stating general rule that decisions at the preliminary injunction phase do not constitute law of the case as they "must often be made hastily and on less than a full record").

[6] Plaintiffs claim they "did not have the benefit of knowing Defendants' allegations against them at the time" they were deposed. Dkt. 185-1 at 1. However, advanced warning of the breach of contract counterclaim presumably would not have changed the individual physician Plaintiffs' response to the straightforward

Ex. B1, deposition of P. DeMare at Tr.: 23:18 – 24: 13; Ex. B2, deposition of V. Brown at Tr.: 23:2-14; Ex. B3, deposition of L. Pang at Tr.:47:24 – 48:22. Dr. Lederer's deposition has not yet been completed. (Declaration of William S. Hunt).

Release and immunity provisions like this one are "typical" in Medical Staff Bylaws. *Lyons v. Saint Vincent Health Ctr.*, 731 A.2d 206, 210 (Pa. Commw. Ct. 1999); *Janda v. Madera Cmty. Hosp.*, 16 F. Supp. 2d 1181, 1187 (E.D. Cal. 1998). Such provisions have been routinely upheld by the courts in disputes between physicians and hospitals over medical staff appointment or clinical privileges. *Johnson v. Grays Harbor Cmty. Hosp.*, No. C06-5502BHS, 2008 WL 819724, at *9 (W.D. Wash. Mar. 25, 2008) (defendants entitled to summary judgment pursuant to medical staff bylaws' immunity provision) *aff'd*, 385 F. App'x 647 (9th Cir. 2010).[7]

---

*continued*
question of whether they voluntarily signed the release and covenant not to sue contained in their application forms. Therefore, Plaintiffs were not prejudiced.

[7] *See Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 420-21 (7th Cir. 2009); *Blume v. Marian Health Ctr.*, 516 F.3d 705, 708 (8th Cir. 2008); *Everett v. St. Ansgar Hosp.*, 974 F.2d 77, 80 (8th Cir. 1992); *De Leon v. Saint Joseph Hosp.*, 871 F.2d 1229, 1234 (4th Cir. 1989); *Vesom v. Atchison Hosp. Ass'n*, No. 04–2218–JAR, 2006 WL 2714265, at *27 (D. Kan. Sept. 22, 2006); *Deming v. Jackson-Madison County Gen. Hosp. Dist.*, 553 F. Supp. 2d 914, 938 (W.D. Tenn. 2008).

### 1. The HCQIA Does Not Preempt More Stringent Contracts

Plaintiffs claim that the release and immunity language in the Medical Staff Bylaws is preempted by the Health Care Quality Improvement Act ("HCQIA"). This is simply not so. The HCQIA expressly allows for immunity under state law in excess of the federally mandated protections:

> Except as specifically provided in this subchapter, nothing in this subchapter shall be construed as changing the liabilities or immunities under law or as preempting or overriding any State law which provides incentives, immunities, or protection for those engaged in a professional review action that is in addition to or greater than that provided by this subchapter.

42 U.S.C. § 11115(a). Indeed, Plaintiffs' argument that the HCQIA trumps the release that they signed was specifically rejected in *Sternberg v. Nanticoke Mem'l Hosp., Inc.*, 62 A.3d 1212 (Del. 2013). There, the Delaware Supreme Court held:

> Other state and federal courts, including the U.S. Supreme Court, have recognized that other provisions of the HCQIA do not preempt more stringent state laws or contracts interpreted under state law. If Congress or the General Assembly wish to create such a limitation, it is within their power to do so. Until that day, private parties are free to contract for broader standards to protect the peer review process, as was done here.

*Id.* at 1217-18. Other cases that have affirmed that the HCQIA does not preempt more stringent state laws include *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1290 (M.D. Fla. 2009) *aff'd*, 451 F. App'x 862 (11th Cir. 2012); *Freilich v. Bd. of Upper Chesapeake Health, Inc.*, 142 F. Supp. 2d 679, 696 (D. Md. 2001) *aff'd sub nom. Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d

205 (4th Cir. 2002); *Johnson v. Christus Spohn*, No. C-06-138, 2008 WL 375417, at *14 (S.D. Tex. Feb. 8, 2008) *aff'd sub nom. Johnson v. Spohn*, 334 F. App'x 673 (5th Cir. 2009).

The court in *Sternberg*, *supra*, affirmed the grant of summary judgment in favor of the defendants on their claim for attorney's fees based on the covenant not to sue contained in the defendant hospital's bylaws. Likewise, in *Adeduntan v. Hosp. Auth. of Clarke County*, No. 3:04-CV-65 (CDL), 2006 WL 1934872, at *6 (M.D. Ga. Jul. 11, 2006), the court held, based on a covenant not to sue similar to that signed by the Plaintiffs in this case, that the defendant hospital was entitled to recover its litigation expenses, including attorney's fees, reasonably incurred in defending a physician's lawsuit against it.

## IV. CONCLUSION

For all of the above reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Dismiss Defendants' Counterclaim.

DATED:  Honolulu, Hawai`i, April 28, 2014.

      /s/ William S. Hunt
PAUL ALSTON
WILLIAM S. HUNT
CLYDE J. WADSWORTH
CLAIRE WONG BLACK

Attorneys for Defendants