IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

PACIFIC RADIATION ONCOLOGY,       )     CIVIL NO. 12-00064 LEK-KSC
LLC, a Hawai`i Limited            )
Liability Corporation, et         )
al.,                              )
                                  )
            Plaintiffs,           )
                                  )
      vs.                         )
                                  )
THE QUEEN'S MEDICAL CENTER, a     )
Hawai`i Non-Profit                )
Corporation, et al.,              )
                                  )
            Defendants.           )
_____    )


### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER OR IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION

On July 14, 2014, Plaintiffs/Counterclaim Defendants

Pacific Radiation Oncology, LLC, a Hawai`i Limited Liability

Corporation, PRO Associates, LLC, a Hawai`i Limited Liability

Corporation, John Lederer, M.D., Laeton Pang, M.D., Eva Bieniek,

M.D., Vincent Brown, M.D., Paul DeMare, M.D., and Thanh Huynh,

M.D. (collectively "Plaintiffs"), filed their Motion for

Temporary Restraining Order or in the Alternative for Preliminary

Injunction ("Motion"). [Dkt. no. 240.[1]] Defendants/Counter

Claimants Queen's Medical Center, a Hawai`i Non-Profit

Corporation, Queen's Development Corp., a Hawai`i for Profit

---

[1] Plaintiffs filed Exhibit H in support of the Motion under seal on July 15, 2014. [Dkt. no. 241.] This Court, however, will not consider the sealed exhibit because Plaintiffs did not obtain leave of court to file the exhibit under seal.

Corporation, Noreen D.S.W. Mokuau, William G. Obana, M.D., Arthur A. Ushijima, Mark H. Yamakawa, Paula Yoshioka, Sharlene K. Tsuda, Richard C. Keene, Clinton Yee, Naleen N. Andrade, M.D., Ernest H. Fukeda, Jr., Robb Ohtani, M.D., Neil J. Hannahs, Christine M. Gayagas, Peter K. Hanashiro, Robert K. Nobriga, Eric K. Yeaman, Julia C. Wo, Caroline Ward Oda, Peter Halford, M.D., Barry Weinman, each individually and in his or her capacity as Officer and Trustee of Queen's Medical Center (collectively "Defendants"), filed their memorandum in opposition on July 25, 2014,[2] and Plaintiffs filed their reply on July 30, 2014. [Dkt. nos. 249, 260.[3]]

This matter came on for hearing on August 4, 2014. The Court issued its summary ruling on August 7, 2014. [Dkt. no. 277.] This Court has also ruled that it would consider the following documents in ruling on the Motion: the Declaration of Claire Wong Black, filed August 15, 2014 ("Black Declaration"); [dkt. no. 284-2;[4]] Plaintiffs' response to the Black Declaration,

---

[2] On July 30, 2014, this Court granted Defendants' motion for leave to file under seal Exhibits M, P, and Q in support of their memorandum in opposition. [Dkt. no. 261.] Defendants filed the exhibits under seal on August 1, 2014. [Dkt. no. 267.]

[3] On August 1, 2014, Defendants filed supplemental exhibits in opposition to Plaintiffs' Motion ("Supplemental Exhibits"). [Dkt. no. 272.] On August 7, 2014, this Court issued an entering order ("EO") striking the Supplemental Exhibits. [Dkt. no. 276.]

[4] Defendants filed the Black Declaration as part of their Motion for Leave to Supplement Record or, in the Alternative, for
(continued...)

2

filed August 26, 2014 ("Response to Black Declaration"); [dkt. no. 294;] Plaintiffs' position statement regarding sanctions, filed August 26, 2014 ("Plaintiffs' Position Statement"); [dkt. no. 295;] and Defendants' position statement regarding sanctions, filed August 26, 2014 ("Defendants' Position Statement"); [dkt. no. 296].

The instant order is this Court's decision on the Motion, and this order supersedes the August 7, 2014 summary ruling. After careful consideration of the Motion, supporting and opposing documents, and counsel's arguments at the hearing, Plaintiffs' Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

<u>BACKGROUND</u>

At all relevant times, Plaintiff Pacific Radiation Oncology, LLC ("PRO") had five equity members and one employee physician. All six were citizens and residents of Hawai`i and were physicians licensed to practice in Hawai`i. [Amended Complaint for Declaratory and Injunctive Relief and for Damages, filed 2/23/12 (dkt. no. 44) ("Amended Complaint"), at ¶ 3.]

---

[4](...continued)
Reconsideration of [276] EO Dated August 7, 2014. [Dkt. no. 284.] The Court granted that motion, but only to the extent that the Court stated that it would consider the Black Declaration in ruling on the instant Motion. [EO, filed 8/18/14 (dkt. no. 286).] The August 18, 2014 EO allowed Plaintiffs to file a memorandum, with supporting declarations, responding to the Black Declaration, and ordered the parties to file position statements regarding the type of sanction to be awarded.

According to the Amended Complaint, PRO was the largest radiation oncology group in Hawai`i.  [Id. at ¶ 3.]  Drs. DeMare, Brown, Huynh, Lederer, Pang, and Bieniek (collectively "the PRO Physicians") were part of PRO in various capacities.  At the time Plaintiffs filed the Amended Complaint, Drs. Lederer and Brown were managers of PRO, Dr. Huynh was an equity partner, and Drs. DeMare, Pang, and Bieniek were members.  [Id. at ¶¶ 4-5.] Prior to the filing of this action, the PRO Physicians provided services to their patients at, *inter alia*, The Queen's Medical Center ("Queen's"), The Cancer Center of Hawai`i ("TCCH") facility in Ewa Beach, and the TCCH facility in Liliha.  Queen's was the only facility on Oahu that was licensed by the Nuclear Regulatory Commission ("NRC") and had an operating room.  When the procedures they performed did not require an operating room, the PRO Physicians tried to accommodate their patients and allow the patients to choose the treatment location.  [Id. at ¶ 3.]

In 2011, after an approximately forty-year professional relationship between Queen's and PRO, Queen's Board of Trustees made the decision to transition the Queen's radiation oncology department to a closed facility.  In other words, only physicians who are employed by Queen's would be granted clinical privileges at Queen's.  [Id. at ¶¶ 11, 19.]  Plaintiffs' position is that implementing the closed-facility model, also known as an employment-based model, would effectively terminate the PRO

4

Physicians' privileges at Queen's and leave them without access to an NRC-licensed hospital facility to treat their patients.

Plaintiffs allege that, in adopting the closed-facility model, the Queen's Board of Directors ("the Board") "did not follow any of the constitutional, legal, or due process requirements provided for in both the [Queen's] Bylaws and applicable Hawai`i law to ensure that the Plaintiffs' substantive and procedural rights to due process were not violated." [Id. at ¶ 19.] Plaintiffs allege that Defendants' stated reason for adopting the closed-facility model - "'to standardize and to achieve improved clinical outcomes, enhance patient satisfaction, [and] achieve better quality and continuity of care'" - is a pretext, and the real reason behind the policy change is to deny patients the opportunity to be treated at non-Queen's facilities, thereby preventing Plaintiffs from providing services which compete with Queen's. [Id. at ¶¶ 25-26.] Plaintiffs also argue that, in enacting a resolution adopting the closed-facility model, Defendants acted "arbitrarily, capriciously, dishonestly, and maliciously with the specific and deliberate intent of harming Plaintiffs and destroying Plaintiffs' ability to treat patients at facilities competing with [Queen's]." [Id. at ¶ 27.] Further, Plaintiffs allege that Defendants acted "intentionally, knowingly, grossly negligently and in conscious and in wanton disregard to rights of the Plaintiffs warranting an award of

exemplary and punitive damages." [Id. at ¶ 29.]

The Amended Complaint alleges the following claims: denial of procedural and substantive due process, as guaranteed by article I of the Hawai`i Constitution and the First and Fourteenth Amendments of the United States Constitution ("Count I"); violations of Queen's bylaws and governing regulations ("Count II"); intentional and tortious interference with Plaintiffs' contractual obligations to facilities which compete with Queen's ("Count III"); intentional and tortious interference with prospective business advantage ("Count IV"); intentional and tortious interference with Plaintiffs' professional and contractual relationship with their patients ("Count V"); unfair, deceptive, anti-competitive and illegal trade practices in violation of Haw. Rev. Stat. Chapter 480 based on the termination of the PRO Physicians' privileges ("Count VI"); unfair, deceptive, anti-competitive and illegal trade practices in violation of Chapter 480 based on violations of the Federal Anti-Kickback statute, 42 U.S.C. § 1320a-7b ("Count VII"); unfair, deceptive, anti-competitive and illegal trade practices in violation of Chapter 480 based on attempted economic credentialing ("Count VIII"); unfair, deceptive, anti-competitive and illegal trade practices in violation of Chapter 480 based on the breach of Queen's corporate integrity agreement with the Office of the Inspector General of the Department of

Health and Human Services ("Count IX"); and a claim for breach of fiduciary duty and bad faith ("Count X").

The Amended Complaint prays for the following relief: temporary, preliminary, and permanent injunctions enjoining Queen's from terminating the PRO Physicians' hospital privileges; special, general, and punitive damages under Hawai`i law for the damages caused by Defendants' actions alleged in the Amended Complaint; treble damages under Chapter 480, if greater than the amount of punitive damages that Plaintiffs are entitled to; attorneys' fees, interest, and prejudgment interest; restitution, disgorgement of profits, and other equitable relief warranted by Defendants' breach of their fiduciary duties; and any other appropriate relief.

In the instant Motion, Plaintiffs allege that, in January 2011, Queen's was concerned that it was losing patients to TCCH. Queen's executives therefore authorized Queen's administrators to analyze PRO's referral practices and any resulting loss of revenue to Queen's. This required the administrators to access and review the confidential medical records of hundreds of PRO patients whose records were on Queen's electronic record-keeping system because the patients had their initial consultations at Queen's. Queen's did not notify either the patients or the treating physicians about this review. [Mem. in Supp. of Motion at 5-6, 8.]

Initially, a spreadsheet was prepared of all surgeons, urologists, or other physicians who referred a patient to a PRO Physician, as far back as 2008. After the analysis of the spreadsheet, an effort was made to encourage some of the referring physicians to begin referring patients to non-PRO radiation oncologists. A further review of the PRO patients' records was conducted to determine: where each PRO patient received his or her treatment; whether it appeared that a PRO Physician directed the patient to a TCCH facility for reasons that were not related to the patient's best interests; and the economic impact on Queen's. Queen's sought to confirm its suspicions that the PRO Physicians were referring patients to TCCH for economic reasons. [Id. at 8-9.] According to Plaintiffs, the "unlawful examinations of PRO's confidential patient records to gain a competitive advantage is now part of Plaintiffs' 480-2 claim against [Queen's]." [Id. at 9.]

Randy Talavera, the manager of Queen's radiation therapy department reviewed the records of 133 patients "who had a consultation with a PRO physician but then did show up at [Queen's] again for radiation therapy during the time frame January 2011 through June of 2011." [Id.] A list of 132 such patients was compiled showing each patient's name, patient number, and the name of his or her physician ("the List"). Defendants' counsel attached the List as an exhibit to: 1) a

subpoena to TCCH's custodian of records, signed by the Clerk of Court on July 10, 2014 ("the Subpoena"); and 2) Defendants' Second Request for Production of Documents and Things to Plaintiffs Pacific Radiation Oncology, LLC and PRO Associates, LLC, dated July 9, 2013[5] ("the RPD"). [Motion, Decl. of Mark S. Davis ("Davis Decl."), Exhs. A (Subpoena), B (RPD).[6]] On July 10, 2014, Defendants' counsel publicly filed the complete, unredacted Subpoena with its return of service. [Mem. in Supp. of Motion at 2; Dkt. no. 236.] Defendants' counsel contacted the magistrate judge through an email on July 12, 2014 and stated that they had inadvertently filed the unredacted List as an exhibit to the Subpoena. Counsel stated that, as soon as possible, Defendants would file an ex parte motion to delete the exhibit from the public record, but counsel asked the magistrate judge if the district court could remove the Subpoena from the publicly available website and allow Defendants to replace the exhibit with a redacted version, pending the filing and ruling on the ex parte motion. [Davis Decl., Exh. C.] On July 14, 2014, the Clerk's Office restricted access to the Subpoena, and

---

[5] The date was apparently a typographical error and should have read July 9, 2014.

[6] The copies of the List attached to Exhibit A and Exhibit B are redacted so that only the first two digits of the patient number and the physician's name is visible for each patient. The copies of the List served with the original Subpoena and the original RPD were not redacted. [Mem. in Supp. of Motion at 1-2.]

Defendants filed their ex parte motion to seal the exhibit.
[Dkt. no. 239.]  The magistrate judge granted the ex parte motion
on July 15, 2014.  [Dkt. no. 242.]

In addition to challenging the attachment of the List
to the Subpoena and the RPD and the public filing of the List
with the Subpoena, Plaintiffs argue that: Queen's was not
entitled to review the medical records that were the basis of
List; and Defendants are not entitled to review the additional
medical records that they seek in the Subpoena and the RPD.
Plaintiffs argue that Queen's past review and use of the medical
records of the PRO patients, and the proposed review Defendants
seek of additional patient records, violate the Health Insurance
Portability and Accountability Act of 1996, 42 U.S.C. § 1320d, *et
seq.*, ("HIPAA"), including its implementing regulations, and the
Hawai`i State Constitution.  Thus, Plaintiffs seek a temporary
restraining order ("TRO") and/or a preliminary injunction that
will "put an end to [Queen's] unauthorized access to and
dissemination of PRO's patient records, and to enjoin [Queen's],
its attorneys, and its consultants from reviewing and more
importantly form publishing the highly confidential information
including the names of these many, many cancer patients."  [Mem.
in Supp. of Motion at 15.]

This Court has described the standards applicable to a motion for a TRO as follows:

> In general, the standard for a temporary restraining order or a preliminary injunction is as follows:
>
>> "[I]njunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 376 (2008). The standard for granting a preliminary injunction and the standard for granting a temporary restraining order are identical. See Haw. Cnty. Green Party v. Clinton, 980 F. Supp. 1160, 1164 (D. Haw. 1997); Fed. R. Civ. P. 65.
>
> Sakala v. BAC Home Loans Servicing, LP, CV. No. 10-00578 DAE-LEK, 2011 WL 719482, at *4 (D. Hawai`i Feb. 22, 2011) (alteration in original).
>
>> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, Inc., --- U.S. ---, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)) (explaining that, "[t]o the extent that [the Ninth Circuit's] cases have suggested a lesser standard, they are no longer controlling, or even viable" (footnote omitted)); see also Winter, 129 S. Ct. at 374-76 (holding that, even where a likelihood of success on the merits is established, a mere "possibility" of irreparable injury is insufficient to warrant preliminary injunctive relief, because "[i]ssuing a preliminary injunction based only on a

> possibility of irreparable harm is
> inconsistent with [the Supreme Court's]
> characterization of injunctive relief as an
> extraordinary remedy that may only be awarded
> upon a clear showing that the plaintiff is
> entitled to such relief").
>
> Painsolvers, Inc. v. State Farm Mut. Auto. Ins.
> Co., 685 F. Supp. 2d 1123, 1128-29 (D. Hawai`i
> 2010) (footnote and some citations omitted)
> (alterations in original). The Ninth Circuit has
> held that its "serious questions" version of the
> sliding scale test for preliminary injunctions
> survives Winter to the extent that, a court may
> grant a preliminary injunction where the plaintiff
> (1) "demonstrates . . . that serious questions
> going to the merits were raised and the balance of
> hardships tips sharply in the plaintiff's
> favor[,]" and (2) satisfies the other Winter
> factors, likelihood of irreparable injury and that
> the injunction is in the public interest.
> Alliance for the Wild Rockies v. Cottrell, 632
> F.3d 1127, 1134-35 (9th Cir. 2011) (citation and
> block quote format omitted) (some alterations in
> original).

Hunger v. Univ. of Hawai`i, 927 F. Supp. 2d 1007, 1015 (D.

Hawai`i 2013) (some alterations in Hunger) (some citations

omitted).

**DISCUSSION**

I.  **Temporary Restraining Order/Preliminary Injunction**

At the outset, this Court recognizes that the Motion

raises important issues about the confidentiality of patients'

medical records. A patient's medical records, especially a

cancer patient's medical records, contain material that is the

very essence of private, personal information. It is beyond

dispute that the public disclosure of that information in this

case subjected the affected PRO patients to potential irreparable harm.  Further, the unauthorized review and use of patients' medical records, even where the use is less than public disclosure, also puts the patients at risk of irreparable harm.

The patients on the List, however, are not parties to this action, nor have any of them come forward to join in Plaintiffs' Motion.  This Court notes that, in each of the Hawai`i Supreme Court's mandamus rulings that Plaintiffs cite, it was the patient who was seeking a ruling protecting his or her medical information.  Cohan v. Ayabe, 132 Hawai`i 408, 322 P.3d 948 (2014); Naipo v. Border, 125 Hawai`i 31, 251 P.3d 594 (2011) (per curiam); Brende v. Hara, 113 Hawai`i 424, 153 P.3d 1109 (2007) (per curiam).  Despite that fact, this Court could find that the PRO Physicians face imminent, irreparable harm because their relationships with the affected patients would suffer because of the alleged violation of the patients' rights under HIPAA and the Hawai`i State Constitution.  However, even if it made such a finding, this Court could not grant the TRO that Plaintiffs seek.

In spite of the egregious public disclosure of the List, this Court cannot find that Plaintiffs are likely to succeed on the merits because the Amended Complaint does not contain a claim alleging improper review and use of confidential patient information in violation of HIPAA and the Hawai`i State

Constitution.[7]  Plaintiffs claim that this is part of their

§ 480-2 claims (Counts VI through IX), but Plaintiffs' position

is belied by the allegations of the Amended Complaint, which do

not refer to the improper review and use of patient information.

Plaintiffs therefore cannot satisfy the likelihood of success

requirement.  Because all of the factors of the _Winter_ analysis

are mandatory, this Court need not address the remaining factors.

The dilemma presented in the Motion is a serious one, but it

simply does not fit within the TRO analysis.  Plaintiffs' Motion

is therefore DENIED to the extent that it seeks a TRO and/or a

preliminary injunction.

## II.  **Discovery Issues**

        This Court, however, also construes Plaintiffs' Motion

as a discovery motion.

### A.    **Violation of the Protective Order**

        On November 8, 2013, the magistrate judge filed the

Amended Stipulated Protective Order ("Protective Order").  [Dkt.

no. 134.]  The Protective Order defines "Protected Health

Information" as "any information about Parties or non-parties

relating to their health, medical conditions, diagnosis, and

treatments protected by federal and/or state law including but

not limited to information relating to HIV status, mental health,

---

        [7] Nor could Plaintiffs meet the serious questions as to the
merits requirement.

and substance abuse." [Id. at ¶ 3.]  It also states:

>The Parties shall make reasonable efforts to
>ensure that . . . Protected Health Information
>[is] not filed in the public record of this
>litigation.  If any Party seeks to file . . .
>Protected Health Information or any document
>containing such information with the Court, that
>Party shall first file a motion or stipulation to
>allow filing of such information in redacted form
>or under seal.  In addition, the Party shall
>submit a copy of the motion or stipulation along
>with the documents sought to be filed in redacted
>form or under seal for *in camera* review by the
>Court. . . .

[Id. at ¶ 15.]

It is beyond dispute that the List constituted

Protected Health Information, as defined in the Protective Order,

because it revealed patients' names and their cancer diagnoses.

Protective orders are issued to protect parties and other persons

"from annoyance, embarrassment, oppression or undue burden or

expense."  Fed. R. Civ. P. 26(c)(1).  Information about a

patient's cancer diagnosis is precisely the type of information

that protective orders are intended to prevent disclosure of.

Defendants admit, as they must, that the List should not have

been publicly filed with the Subpoena.  Defendants assert that

the public filing of the List was inadvertent and that defense

counsel took reasonable steps to try to avoid the public filing

of Confidential Health Information.  Defense counsel, Clare Wong

Black, Esq. of the law firm Alston Hunt Floyd & Ing ("Alston

Hunt"), took the following steps:

> 2.   On February 18, 2014, I instructed the
>       paralegal and all administrative assistants
>       to the attorneys working on the above-
>       captioned matter regarding redaction and
>       dissemination of Confidential Information
>       . . . pursuant to the stipulated protective
>       order entered in this case.
>
> 3.   On March 25, 2014, I instructed certain staff
>       members working on the above captioned matter
>       that that [sic] no documents — including
>       certificates of service — should be
>       electronically filed without express attorney
>       review and approval before filing.
>
> 4.   On July 8, 2014, I instructed certain staff
>       members working on the above-captioned matter
>       that the list of patients transferred by PRO
>       physicians from [Queen's] to TCCH — which
>       list ultimately became Exhibit A and was
>       inadvertently included in the electronically
>       filed return of service — was highly
>       confidential patient information and needed
>       to be kept in a safe place.

[Black Decl. at ¶¶ 2-4 (citations omitted).]  In spite of these

instructions, however, on July 10, 2014, "a staff member

inadvertently filed a return of service," which included the List

as an Exhibit, "without requesting attorney review and approval

as required."  [Id. at ¶ 6.]  Based on the existing record, these

are the only steps that Alston Hunt took to prevent the public

filing of the List.[8]

_____

[8] Ms. Black also describes instructions that she gave on
July 11, 2014, which was after the public filing of the Subpoena
that the List, but before counsel became aware of the filing.
[Black Decl. at ¶ 5.]  This Court, however, finds that the post-
disclosure instructions are not relevant to the issue of whether
counsel's pre-disclosure steps were reasonable.  This Court also
finds that Alston Hunt's efforts to address the public filing of
                                                  (continued...)

The Black Declaration indicates that the only specific instruction defense counsel gave specifically about the List was the July 8, 2014 instruction that the List was highly confidential and to keep it "in a safe place." [Id. at ¶ 4.] Ms. Black did not repeat her prior instructions about obtaining attorney approval prior to filing documents in this case. The last instruction about obtaining approval before filing, however, was almost four months prior to the filing of the List. This Court FINDS that, under the circumstances of this case - a case in which Protected Health Information clearly plays a significant role - Alston Hunt failed to make reasonable efforts to ensure that Protected Health Information was not publicly filed, and the Alston Hunt staff member included the List in a public filing because of Alston Hunt's failure to make reasonable efforts. This Court therefore FINDS that Alston Hunt violated the Protective Order by publicly filing the List.

### 1.  **Applicable Law**

The Ninth Circuit has stated that "[d]istrict courts have the inherent power to sanction a lawyer for a 'full range of litigation abuses.'"  <u>Evon v. Law Offices of Sidney Mickell</u>, 688

---

[8](...continued)
the List are not relevant to the issue of whether it violated the Protective Order by publicly filing the List.  The post-disclosure efforts are relevant to Defendants' obligations under a different provision of the Protective Order.  <u>See</u> Protective Order at ¶ 24.

F.3d 1015, 1035 (9th Cir. 2012) (quoting <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 55, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)).  In <u>Evon</u>, the Ninth Circuit rejected the argument that the district court lacked the inherent authority to impose sanctions for an allegedly inadvertent violation of a protective order.  <u>Id.</u>

"[A] district court may levy sanctions pursuant to its inherent power for willful disobedience of a court order or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  <u>Id.</u> (alteration, citations, and internal quotation marks omitted).  "[A] 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately."  <u>Id.</u>  Thus, a district court can impose sanctions for either: "(1) willful violation of a court order; **or** (2) bad faith.  A determination that a party was willfully disobedient is different from a finding that a party acted in bad faith.  Either supports the imposition of sanctions."  <u>Id.</u> (emphasis added).  In the instant case, this Court has found that Alston Hunt violated the Protective Order.  Thus, the only remaining issue is whether that failure was willful.

In <u>Evon</u>, the defendant's attorney, who was "running up against the filing deadline, filed documents without sealing or redacting them, exposing to public view certain material that had

been designated 'confidential' under the protective order." Id. at 1034. In appealing the award of sanctions against him, the attorney argued that the public filing was "inadvertent," but the Ninth Circuit stated that "what he really means is that on the day of the filing, he realized that compliance with the protective order would cause him additional time and work, and he **chose** not to comply." Id. at 1035 (emphasis in original).

The instant case does not rise to the same level as Evon because there is no evidence that Alston Hunt chose to violate the Protective Order or that Alston Hunt acted in bad faith or with an improper motive. Evon, however, clearly holds that a district court may impose sanctions if there was a deliberate violation of a court order. See id. Alston Hunt, through its staff member, deliberately filed the Subpoena, which included the List as an exhibit. This Court therefore FINDS that Alston Hunt's violation of the Protective order was willful and warrants the imposition of sanctions.

## 2. **Appropriate Sanction**

As noted *supra* note 4, this Court directed the parties to file position statements addressing the type of sanction that this Court should impose for the violation of the Protective Order. Plaintiffs propose the following sanctions:

- an order requiring Queen's to send each affected patient a written notice of Queen's HIPAA violation, with an admission that it failed to report the violation "at the outset of

this controversy[;]" [Pltfs.' Position
Statement at 1-2;]

- an order prohibiting Queen's, Alston Hunt,
  Defendants' mainland counsel, Horty, Springer
  & Mattern, P.C., "and all their attorneys,
  staff, consultants or agents" from
  "publiciz[ing] or access[ing] further in
  relation to this litigation **any** medical
  records of **any** non-party patients without
  consent or authorization of the patients in
  accordance with law[;]" [id. at 2 (emphases
  in original);]

- an order deeming withdrawn Defendants' requests
  for discovery of the medical records of non-
  parties; [id.;]

- an order requiring Defendants to identify all
  documents containing "the protected health
  information of patients whose medical records
  Queen's accessed through its records system
  and disclosed to third parties," including
  identifying all persons who have seen the
  records and where copies of the records
  exist; [id.;] and

- an order requiring Defendants and their counsel
  to destroy all existing copies of medical
  records and any notes containing information
  from those records [id.].

The imposition of sanctions in this Order, however, is limited to
sanctions for the public filing of the List as part of the
Subpoena.  All of Plaintiffs' proposed sanctions relate to
Plaintiffs' request for a ruling on whether Defendants' review
and use of the patients' medical records was proper in the first
instance and whether Defendants are entitled to obtain other
similar records in discovery.  These issues are beyond the scope
of this Order.  See infra Discussion Section II.B.  This Court

therefore rejects Plaintiffs' proposed sanctions.

Defendants propose that this Court impose a monetary sanction of no more than $1,000.00, and they emphasize that the sanction imposed "must specifically relate to the particular claim at issue in the discovery order." [Defs.' Position Statement at 2 (citing U.S. v. Nat'l Med. Enters., Inc., 792 F.2d 906, 910 (9th Cir. 1986)).]

Under the circumstances of this case, a monetary sanction is a less than satisfactory form of sanction, but the Court is unable to articulate one that is more appropriate. With this limitation in mind, the Court is cognizant that the amount of the sanction must relate to the specific purpose of the sanction - the improper public disclosure of patients' confidential health information. Defendants' proposed limit, however, is arbitrary and ignores the seriousness of the violation. This Court recognizes that the List was publicly available for less than a week, but the violation of the patients' confidentiality was still significant. Further, the public disclosure of the List could have been easily avoided. This Court, however, acknowledges that no affected patient has come forward to argue that he or she was harmed by the temporary public availability of the List. Plaintiffs submitted a declaration by a patient identified as Mary Doe ("Doe Declaration") with their Response to Black Declaration. [Dkt.

no. 294-1.] Mary Doe, however, did not specifically address the period when the List was publicly available. She, like Plaintiffs, focuses on Defendants' review and use of her medical records in the first instance. [Id. at ¶¶ 8-10.] This Court, however, notes that Mary Doe states that her "cancer diagnosis was something [she] had kept closely guarded and did not publicize to even many of [her] friends." [Id. at ¶ 10.] This supports the Court's finding that the public availability of the List, even if for less than a week, warrants sanctions because it was an egregious violation of the patients' confidentiality.

This Court therefore FINDS that the appropriate sanction for Alston Hunt's violation of the Protective Order is an award of Plaintiffs' reasonable attorneys' fees and costs incurred in responding to the public filing of the List as part of the Subpoena. This includes, *inter alia*, Plaintiffs' counsel's: communication with defense counsel and district court personnel regarding the removal of the List from the public record; communication with patients identified on the List to notify them of **the public filing of the List**; and the filing and litigation of the instant Motion. This Court, however, will reduce the attorneys' fees and costs associated with the Motion because of Plaintiffs' limited success, *i.e.* because Plaintiffs moved for a TRO and a preliminary injunction and this Court denied those requests.

Plaintiffs shall file a memorandum, with a supporting declaration of counsel and supporting documentation (including detailed itemization of the hours spent and invoices or receipts for any expenses incurred), by no later than **September 29, 2014.** Plaintiffs' memorandum shall not exceed five pages.  Plaintiffs' filing must comply with the requirements of Local Rule 54.3(d) and (e).

Defendants may file a memorandum, not to exceed five pages, responding to the amount of Plaintiffs' requested award of attorneys' fees and costs.  Defendants may also file declarations and exhibits, if any, relevant to the amount of the requested award.  Defendants may not use the memorandum to challenge the decision to award sanctions or the ruling that an award of reasonable attorneys' fees and costs is the appropriate sanction. Defendants must file their memorandum by no later than **October 13, 2014.**

This Court CAUTIONS the parties that it may strike any memorandum that does not comply with this Order.

### B.  <u>Other Relief</u>

To the extent that Defendants contend that patient information is relevant and necessary to the claims and defenses in this case, while Plaintiffs seek to prevent Defendants from obtaining or using patient information in a manner that violates HIPAA and/or the Hawai`i State Constitution, the parties must

address these issues through the normal discovery process.  This Court therefore ORDERS the parties to contact the magistrate judge to schedule a discovery conference to address the use of Protected Health Information in this case.

In order to provide guidance to the parties and the much beleaguered magistrate judge, this Court will briefly address the parties' dispute about the applicable law. Defendants take the position that their review and use of the medical records of the patients at issue in this case complies with HIPAA.  Plaintiffs contend that Defendants' prior use and review of the medical records violated HIPAA, as well as article I, section 6 of the Hawai`i Constitution, which states, in relevant part that "[t]he right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest."  Plaintiffs also argue that this Court should prohibit Defendants from obtaining any further medical records of PRO patients.  Defendants assert that HIPAA preempts Plaintiffs' arguments based on the Hawai`i State Constitution.

HIPAA does contain an express preemption provision.  42 U.S.C. § 1320d-7(a)(1) (stating, in pertinent part, that "a provision or requirement under this part, or a standard or implementation specification adopted or established under sections 1320d-1 through 1320d-3 of this title, shall supersede

any **contrary** provision of State law . . . ." (emphasis added)).

Pursuant to the regulations implementing HIPAA:

> Contrary, when used to compare a provision of
> State law to a standard, requirement, or
> implementation specification adopted under this
> subchapter, means:
>
>> (1) A covered entity or business associate
>> would find it impossible to comply with both
>> the State and Federal requirements; or
>>
>> (2) The provision of State law stands as an
>> obstacle to the accomplishment and execution
>> of the full purposes and objectives of part C
>> of title XI of the Act, section 264 of Public
>> Law 104-191, or sections 13400-13424 of
>> Public Law 111-5, as applicable.

45 C.F.R. § 160.202. In addition,

> A standard, requirement, or implementation
> specification adopted under this subchapter that
> is contrary to a provision of State law preempts
> the provision of State law. This general rule
> applies, except if one or more of the following
> conditions is met:
>
>> . . . .
>>
>> (b) The provision of State law relates to the
>> privacy of individually identifiable health
>> information and is more stringent than a
>> standard, requirement, or implementation
>> specification adopted under subpart E of part
>> 164 of this subchapter.
>>
>> . . . .

45 C.F.R. § 160.203. Thus, courts have recognized that HIPAA

does not preempt "more stringent" privacy protections guaranteed

under state law. See, e.g., OPIS Mgmt. Res., LLC v. Sec., Fla.

Agency for Health Care Admin., 713 F.3d 1291, 1294 (11th Cir.

2013). Pursuant to the HIPAA regulations:

> More stringent means, in the context of a
> comparison of a provision of State law and a
> standard, requirement, or implementation
> specification adopted under subpart E of part 164
> of this subchapter, a State law that meets one or
> more of the following criteria:
>
> > (1) With respect to a use or disclosure, the
> > law prohibits or restricts a use or
> > disclosure in circumstances under which such
> > use or disclosure otherwise would be
> > permitted under this subchapter, except if
> > the disclosure is:
> >
> > > (i) Required by the Secretary in
> > > connection with determining whether a
> > > covered entity or business associate is
> > > in compliance with this subchapter; or
> > >
> > > (ii) To the individual who is the
> > > subject of the individually identifiable
> > > health information.
> >
> > . . . .
> >
> > (4) With respect to the form, substance, or
> > the need for express legal permission from an
> > individual, who is the subject of the
> > individually identifiable health information,
> > for use or disclosure of individually
> > identifiable health information, provides
> > requirements that narrow the scope or
> > duration, increase the privacy protections
> > afforded (such as by expanding the criteria
> > for), or reduce the coercive effect of the
> > circumstances surrounding the express legal
> > permission, as applicable.
> >
> > . . . .
> >
> > (6) With respect to any other matter,
> > provides greater privacy protection for the
> > individual who is the subject of the
> > individually identifiable health information.

§ 160.202.

Further, although <u>Cohan</u>, <u>Naipo</u>, and <u>Brende</u>, were factually distinguishable in the context of Plaintiffs' request for a TRO and a preliminary injunction, <u>see</u> *supra* Discussion Section I., the legal analysis in those cases regarding the relationship between HIPAA and article I, section 6 of the Hawai`i Constitution applies to the parties' discovery disputes. In <u>Cohan</u>, the Hawai`i Supreme Court stated:

> HIPAA provides the "federal floor of privacy protections that does not disturb more protective rules or practices. . . . **The protections are a mandatory floor, which other governments** and any [Department of Health and Human Services regulated] entities **may exceed.**" <u>Brende</u>, 113 Hawai`i at 429, 153 P.3d at 1114 (quoting 65 Fed. Reg. 82,462 (Dec. 28, 2000)).
>
> . . . .
>
> Hawai`i is one of ten states that expressly recognize a right to privacy in their constitutions. . . . In promulgating [article I, section 6], the 1978 Constitutional Convention intended "that privacy [be] treated as a fundamental right for purposes of constitutional analysis." Comm. Whole Rep. No. 15, in 1 Proceedings of the Constitutional Convention of Hawai`i of 1978 (Proceedings), at 1024. This express right of privacy is "a recognition that the dissemination of private and personal matters, be it true, embarrassing or not, can cause mental pain and distress far greater than bodily injury. . . . In short, this right of privacy includes the right of an individual to tell the world to 'mind your own business.'" Stand. Comm. Rep. No. 69, in 1 Proceedings at 674.

132 Hawai`i at 415, 322 P.3d at 955 (some alterations in <u>Cohan</u>) (emphases added) (footnote omitted). Thus,

> in Hawai`i "a medical information protective order
> issued in a judicial proceeding must, **at a
> minimum**, provide the protections of the HIPAA."
> [Brende, 113 Hawai`i at 429, 153 P.3d at 1114]
> (emphasis added).  The court further held that
> article I, section 6 of the Hawai`i Constitution,
> establishing the right of privacy, applies to
> "informational privacy" and protects "the right to
> keep confidential information which is highly
> personal and intimate."  Id. at 430, 153 P.3d at
> 1115 (quotation marks and brackets omitted).
> Because health information is "highly personal and
> intimate," it is protected by the informational
> prong of article I, section 6.  Id.

Id. at 416, 322 P.3d at 956 (emphasis in Cohan) (footnote

omitted).  This Court therefore CONCLUDES that the review and use

of the medical records of the patients at issue in this case must

comply with HIPAA and article I, section 6 of the Hawai`i State

Constitution.  However, this Court notes that:

> Once health information has been de-identified, it
> is no longer protected by HIPAA.  Further, because
> HIPAA allows "more stringent" state law to preempt
> federal law only when it relates to the privacy of
> "individually identifiable health information," 45
> C.F.R. § 160.203(b), this leads to the conclusion
> that state law also does not protect de-identified
> information.  Nw. Mem'l Hosp. [v. Ashcrof], 362
> F.3d [923,] 926 [(7th Cir. 2004)].

Id. at 417, 322 P.3d at 957.

This Court emphasizes that its analysis in this section

does not constitute a ruling that: 1) any party is or is not

entitled to obtain discovery; or 2) any party is or is not

entitled to use medical records previously obtained and/or

reviewed.  The parties may address these discovery issues during

their conference with the magistrate judge.

28

## **CONCLUSION**

On the basis of the foregoing, Plaintiffs' Motion for Temporary Restraining Order or in the Alternative for Preliminary Injunction, filed July 14, 2014, is HEREBY GRANTED IN PART AND DENIED IN PART.  The Motion is GRANTED insofar as this Court: FINDS that Defendants' counsel, Alston Hunt Floyd & Ing, violated the Amended Stipulated Protective Order; [dkt. no. 134;] and FINDS that the appropriate sanction is an award of Plaintiffs' reasonable attorneys' fees and costs incurred as a result of the violation, as described in this Order.  Plaintiffs shall file their memorandum regarding the amount of the award, with supporting documentation, by **September 29, 2014**, and Defendants may file a memorandum responding to the requested amount by **October 13, 2014**.  This Court CAUTIONS the parties that this Court may strike any memorandum that does not comply with the requirements set forth in this Order.  Plaintiffs' Motion is DENIED in all other respects.

This Court ORDERS the parties to contact the magistrate judge to schedule a discovery conference to address the issues set forth in this Order.

IT IS SO ORDERED.

//

//

//

DATED AT HONOLULU, HAWAII, September 12, 2014.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**PACIFIC RADIATION ONCOLOGY, LLC VS. THE QUEEN'S MEDICAL CENTER, ET AL; CIVIL 12-00064 LEK-KSC; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER OR IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION**