IN THE UNITED STATES DISTRICT COURT

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
*Nov 30, 2014*
SUE BEITIA, CLERK

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PACIFIC RADIATION ONCOLOGY, LLC, a Hawai`i Limited Liability Corporation, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> THE QUEEN'S MEDICAL CENTER, a Hawai`i Non-Profit Corporation, et al., <br><br> Defendants. | CIVIL NO. 12-00064 LEK-KSC |

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THE
COUNTERCLAIM FILED FEBRUARY 25, 2014 [DKT. 175-1]**

On July 28, 2014, Plaintiffs/Counterclaim Defendants

Pacific Radiation Oncology, LLC, a Hawai`i Limited Liability

Corporation ("PRO LLC"), PRO Associates, LLC, a Hawai`i Limited

Liability Corporation ("PRO Associates"),[1] John Lederer, M.D.,

Laeton Pang, M.D., Eva Bieniek, M.D., Vincent Brown, M.D.,

Paul DeMare, M.D., and Thanh Huynh, M.D. (all collectively

"Plaintiffs"),[2] filed their "Motion for Summary Judgment on the

---

[1] This Court will refer to PRO LLC and PRO Associates collectively as "the LLCs."

[2] This Court will refer to Drs. Lederer, Pang, Bieniek, Brown, DeMare, and Huynh collectively as "the PRO Physicians," and to Drs. Lederer, Pang, Brown, DeMare, and Huynh collectively as "the PRO Member Physicians." Dr. Bieniek is not a member of PRO LLC, and is not named as a defendant in the Counterclaim. [Counterclaim, filed 2/25/14 (dkt. no 175-1), at ¶ 7.]

Counterclaim Filed February 25, 2014 [Dkt. 175-1]" ("Motion").[3]
[Dkt. no. 253.]  Defendants/Counter Claimants Queen's Medical
Center, a Hawai`i Non-Profit Corporation ("Queen's"), Queen's
Development Corp., a Hawai`i for Profit Corporation ("Queen's
Corp."), Noreen D.S.W. Mokuau, William G. Obana, M.D.,
Arthur A. Ushijima, Mark H. Yamakawa, Paula Yoshioka,
Sharlene K. Tsuda, Richard C. Keene, Clinton Yee,
Naleen N. Andrade, M.D., Ernest H. Fukeda, Jr., Robb Ohtani,
M.D., Neil J. Hannahs, Christine M. Gayagas, Peter K. Hanashiro,
Robert K. Nobriga, Eric K. Yeaman, Julia C. Wo,
Caroline Ward Oda, Peter Halford, M.D., Barry Weinman, each
individually and in his or her capacity as Officer and Trustee of
Queen's Medical Center (collectively "Defendants"),[4] filed their
redacted memorandum in opposition to the Motion on
August 25, 2014, and their sealed unredacted memorandum on
September 5, 2014.  [Dkt. nos. 289, 320.]  Plaintiffs filed their
redacted reply on September 2, 2014, and their sealed unredacted
reply on September 10, 2014.  [Dkt. nos. 305, 331.]

This matter came on for hearing on September 15, 2014.
After careful consideration of the Motion, supporting and

---

[3] Plaintiffs filed an errata to the Motion on July 29, 2014.
[Dkt. no. 258.]

[4] The Court will refer to the individual defendants, *i.e.*
all defendants except Queen's and Queen's Corp., collectively as
"the Trustee Defendants."

opposing memoranda, and the arguments of counsel, Plaintiffs'
Motion is HEREBY GRANTED IN PART AND DENIED IN PART in that it is
GRANTED as to Counterclaim Count I in favor of the PRO Member
Physicians, and as to the free-riding portion of Counterclaim
Count II in favor of PRO LLC, PRO Associates, and the PRO Member
Physicians, and DENIED in all other respects, as set forth more
fully below.

## BACKGROUND

The history of this case is all too familiar to the
parties, and the Court need not repeat it here, except as it may
have bearing on the instant Motion.

On February 25, 2014, Defendants filed their Answer and
Defenses to Amended Complaint for Declaratory and Injunctive
Relief and Damages ("Answer"),[5] which included the Counterclaim.
[Dkt. no. 175.] The Counterclaim asserts the following claims: a
breach of contract claim by the Trustee Defendants against the
PRO Member Physicians ("Counterclaim Count I"); and a claim by
Queen's alleging unfair methods of competition ("UMOC"), in
violation of Haw. Rev. Stat. § 480-2, against all the LLCs and
the PRO Member Physicians ("Counterclaim Count II").

Counterclaim Count I alleges that, by bringing the
instant action, the PRO Member Physicians each violated his

---

[5] Plaintiffs filed their Amended Complaint for Declaratory
and Injunctive Relief and for Damages ("Amended Complaint") on
February 23, 2012. [Dkt. no. 44.]

contract with Queen's in which he agreed to be bound by the
Bylaws of the Medical Staff - Queen's Medical Center ("the
Bylaws").[6]  The Bylaws include a release and immunity from suit
provision, which also includes a covenant not to sue.  The
Trustee Defendants assert that they were intended beneficiaries
of these contracts.  [Counterclaim at ¶¶ 1-4.]

Counterclaim Count II asserts that the PRO Member
Physicians make up PRO Associates, which owns one-third of the
Cancer Center of Hawaii, LLC ("CCH").  CCH owns and operates two
out-patient radiation oncology facilities, which compete with
Queen's.  [Id. at ¶¶ 8-10.]  The crux of Counterclaim Count II is
that the PRO Member Physicians improperly used their clinical
privileges at Queen's, and all the benefits and information
associated therewith, to divert patients from Queen's to CCH-
operated facilities.  It alleges that this constituted a
diversion of Queen's resources for the PRO Member Physicians'
economic gain.  This caused a detriment to Queen's economic
interests and violated § 480-2.  [Id. at ¶¶ 12-15.]

In the instant Motion, Plaintiffs ask for summary
judgment in their favor as to both Counterclaim Count I and
Counterclaim Count II.  In their opposition, Defendants submit

---

[6] All citations to the Bylaws refer to the version attached
to Defendants' Redacted Concise Counterstatement of Facts, filed
8/25/14 (dkt. no. 290) ("Defendants' CSOF"), as Exhibit 25 to the
Declaration of Claire Wong Black ("Black Declaration").

4

that this Court should not only deny Plaintiffs' Motion, but also award summary judgment in favor of the Trustee Defendants as to Counterclaim Count I and to Queen's as to Counterclaim Count II.

**DISCUSSION**

## I.  <u>Motion to Supplement</u>

On September 9, 2014, Defendants filed their Motion for Leave to Supplement the Summary Judgment Record with New Material Evidence ("Motion to Supplement"). [Dkt. no. 326.] Defendants ask this Court to consider portions of Marilynn Y. Hata's deposition. [Motion to Supplement, Decl. of Claire Wong Black, proposed Exh. 34 (Excerpts of 9/4/14 Depo. of Marilynn Y. Hata ("Defs.' Excerpts of Hata Depo.")).] Plaintiffs filed a memorandum in opposition to the Motion to Supplement on September 10, 2014 and another on September 23, 2014. [Dkt. nos. 329, 348.] Defendants filed their reply in support of the Motion to Supplement on October 7, 2014. [Dkt. no. 364.]

Pursuant to Local Rule 56.1(h), after a party's submission of materials with a its concise statement of facts, "[s]upplemental affidavits and declarations may only be submitted with leave of court." In deciding whether to grant leave to supplement, this district court considers whether the party established good cause for the failure to submit the supplemental documents with its concise statement of facts. See <u>Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 732 F. Supp. 2d 1107,

1126-27 n.20 (D. Hawai`i 2010) (finding that the plaintiff "has not established good cause for its failure to timely file this declaration").

On August 26, 2014, Plaintiffs served notice of Ms. Hata's deposition, and, on August 28, 2014, they served an amended notice. [Dkt. nos. 291, 301 (Certificates of Service).] The deposition took place on September 4, 2014. Thus, Defendants had not even received notice of Ms. Hata's deposition when they filed their redacted memorandum in opposition to Plaintiffs' Motion on August 25, 2014. Ms. Hata is a former employee of Island Urology, [Defs.' Excerpts of Hata Depo. at 20,] and she testified about the referral of Island Urology patients to PRO Physicians and about the issue of whether they would be treated at Queen's or PRO-affiliated facilities. See, e.g. id. at 20-22.

This Court finds that there is good cause to allow Defendants to supplement the summary judgment record with Defendants' Excerpts of the Hata Deposition. Defendants' Motion to Supplement is therefore GRANTED. For the sake of completeness, this Court will also consider Plaintiffs' Excerpts of the Hata Deposition.[7]

---

[7] Defendants submitted further exhibits with their reply in support of the Motion to Supplement. [Reply in Supp. of Motion to Supplement, Decl. of Claire Wong Black, Exhs. A-F.] This Court has only considered Exhibits A through F in deciding whether to grant the Motion to Supplement. This Court has not considered in them in ruling on the merits of Plaintiffs' Motion.

This Court now turns to the merits of Plaintiffs'
Motion.

## II.  **Plaintiffs' Motion**

### A.  **Counterclaim Count I**

In the Motion, Plaintiffs argue that: 1) the Bylaws are
not a contract between Queen's and the PRO Physicians; and
2) even if the Bylaws are a contract, the filing of this action
did not violate the Bylaws' immunity provision.

#### 1.  **Applicable Law**

In ruling on Plaintiffs' initial motion for a temporary
restraining order and a preliminary injunction, this Court
"concluded . . . that: 1) it has federal question jurisdiction
over Count VII, which alleges that Defendants violated 42 U.S.C.
§ 1320a-7b and that the violation constitutes an actionable claim
under Haw. Rev. Stat. Chapter 480; and 2) it has supplemental
jurisdiction over the remaining claims in the Complaint."  861 F.
Supp. 2d, 1170, 1183 (D. Hawai`i 2012) (citing 2012 WL 381209, at
*6 (D. Hawai`i Feb. 3, 2012)).[8]  In Defendants' appeal from the
Preliminary Injunction Order, the Ninth Circuit held that federal
jurisdiction exists because of the federal due process claim

_____

[8] 861 F. Supp. 2d 1170 is this Court's Order Granting in
Part and Denying in Part Plaintiffs' Motion for Preliminary
Injunction ("Preliminary Injunction Order"), and 2012 WL 381209
is this Court's Order Granting in Part and Denying in Part
Plaintiffs' Motion for a Temporary Restraining Order ("TRO
Order").

against Queen's in Count I. 555 F. App'x 730, 731 (9th Cr. 2014). Thus, this Court reiterates that it has supplemental jurisdiction over all of the state law claims in this case, including Defendants' claims in the Counterclaim.

"When a district court . . . hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims." Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011). This Court will therefore apply Hawai`i case law regarding contract interpretation to the issues of: whether the PRO Member Physicians are contractually bound to comply with the Bylaws; and, if so, what the scope of the immunity provision is.

## 2. Whether the Bylaws are Contractual Obligations

When the PRO Member Physicians sought reappointment to the Queen's medical staff in 2011, each signed the Queen's form Release of Consent, Liability and Practitioners Statement ("Release Form") as part of his application. [Exh. 18, (dkt. no. 322) ("Brown Application"), at 8; Exh. 19 (dkt. no. 322-1) ("DeMare Application") at 8; Exh. 20 (dkt. no. 322-2) ("Pang Application") at 8; Exh. 22 (dkt. no. 322-3) ("Huynh Application") at 8; Exh. 24 (dkt. no. 322-4) ("Lederer Application") at 8.] The form states, in pertinent part:

> By applying for renewal of my appointment and clinical privileges to the Medical Staff at The Queen's Medical Center, I:

8

. . . .

2.    Agree to be bound by the terms of the Bylaws
      and supporting manuals of the Medical Staff
      (Rules and Regulations) and the Hospital
      Bylaws and policies as now existing or
      hereafter amended . . . .

. . . .

13.   Acknowledge any provisions in Medical Staff
      Bylaws for release and immunity from
      liability.

See, e.g., Brown Application at 8.

The Release Form expressly identifies the Bylaws and clearly and unequivocally states that the Bylaws are incorporated into the signing party's Release Form.  See Safeway, Inc. v. Nordic PCL Constr., Inc., 130 Hawai`i 517, 527-28, 312 P.3d 1224, 1234-35 (Ct. App. 2013) (describing analysis of whether another document has been incorporated by reference into an agreement). Plaintiffs do not claim that the Bylaws were unavailable to the PRO Member Physicians.  Further, each of the PRO Member Physicians acknowledged during his deposition that he agreed to be bound by the Bylaws when he applied for reappointment.  [Black Decl., Exh. 14 (Excerpts of 1/28/14 Depo. of Vincent Cook Brown, M.D. ("Defs.' Excerpts of Brown Depo.")) at 32; Exh. 15 (Excerpts of 1/28/14 Depo. of Paul Arthur DeMare, M.D. ("Defs.' Excerpts of DeMare Depo.")) at 37, 39; Exh. 16 (Excerpts of 3/12/14 Depo. of Laeton J. Pang, M.D. ("Defs.' Excerpts of Pang Depo.")) at 58-59; Exh. 21 (Excerpts of 7/17/14 Depo. of Thanh Van Huynh, M.D.

("Defs.' Excerpts of Huynh Depo.")) at 35; Exh. 23 (Excerpts of 3/12/14 and 3/13/14 Depo. of John L. Lederer, M.D. ("Defs.' Excerpts of Lederer Depo.")) at 106.]

This Court finds that there are no disputes of fact as to this issue. See Fed. R. Civ. P. 56(a) (stating that a movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"); Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) ("A fact is material if it could affect the outcome of the suit under the governing substantive law."). This Court therefore concludes that the Bylaws are incorporated by reference into the Release Form. See Safeway, 130 Hawai`i at 527, 312 P.3d at 1234 ("Although it is clear that whether one agreement has incorporated another has factual components, whether material has been incorporated presents a question of law." (citations and quotation marks omitted)); see also Cho Mark Oriental Food, Ltd. v. K & K Int'l, 73 Haw. 509, 519, 836 P.2d 1057, 1063 (1992) (stating that, generally "the construction and legal effect to be given a contract is a question of law"). This Court further concludes that, by signing the Release Form in connection with his respective application, each of the PRO Member Physicians agreed to be bound by the Bylaws. Thus, the terms of the Bylaws

are part of the contracts between Queen's and each of the PRO

Member Physicians.

### 3. Scope of the Immunity Provision

The Bylaws state, in pertinent part:

12.3 IMMUNITY FROM LIABILITY

12.3 GRANT OF IMMUNITY AND AUTHORIZATION TO
     OBTAIN/RELEASE INFORMATION

> By requesting an application and/or applying
> for appointment, reappointment, or clinical
> privileges, the individual expressly accepts
> the conditions set forth in this Section
> 12.3:

12.3-1    Immunity

> **To the fullest extent permitted by law,
> the individual releases from any and all
> liability, extends absolute immunity to,
> and agrees not to sue [Queen's] or the
> Board, any member of the Medical Staff
> or the Board, their authorized
> representatives, and third parties who
> provide information for any matter
> relating to appointment, reappointment,
> clinical privileges, or the individual's
> qualifications for the same.** This
> immunity covers any actions,
> recommendations, reports, statements
> communications, and/or disclosures
> involving the individual that are made,
> taken, or received by [Queen's], its
> authorized agents, or third parties in
> the course of credentialing and peer
> review activities.

[Bylaws at QMC000052 (emphasis added).]  This Court will refer to

§ 12.3-1 as "the Immunity Provision."

11

In the Motion, Plaintiffs argue that the scope of the Immunity Provision is limited to credentialing and peer review. [Mem. in Supp. of Motion at 11.] Defendants urge this Court to reject that argument. [Mem. in Opp. at 33.] Defendants' position emphasizes the "absolute immunity" language, which they argue prohibits any suit "relating to appointment, reappointment, clinical privileges, or the individual's qualifications for the same." Counterclaim Count I asserts that the PRO Member Physicians breached the covenant not to sue in the Immunity Provision by filing this action. [Counterclaim at ¶¶ 2-5.] This Court finds that the scope of Immunity Provision is not apparent from its plain language, and therefore the provision is ambiguous. Further, both Plaintiffs' interpretation of the Immunity Provision and Defendants' interpretation are arguably reasonable.

In considering reasonable interpretations of the Immunity Provision, this Court must construe the provision against the drafter - Queen's - which "would have been in a better position to know which options were available to it . . . ." See Kutkowski v. Princeville Prince Golf Course, LLC, 129 Hawai`i 350, 360, 300 P.3d 1009, 1019 (2013) (citing Restatement (Second) of Contracts § 206 (1981); Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 110 n.5, 839 P.2d 10, 25 n.5 (1992)). In Amfac, the Hawai`i Supreme Court noted that

12

"[w]hen the contract has been negotiated between two parties of equal sophistication and equal bargaining power, the rule of interpreting ambiguities against the drafter has been held inapplicable." Amfac, 74 Haw. at 110 n.5, 839 P.2d at 25 n.5 (citing Falmouth National Bank v. Ticor Title Ins. Co., 920 F.2d 1058, 1062 (1st Cir. 1990); Missouri Pacific Railroad Co. v. Kansas Gas & Electric Co., 862 F.2d 796, 800 (10th Cir. 1988)).

It is beyond dispute that the PRO Member Physicians are educated, sophisticated parties. However, their agreement to be bound by the Bylaws is contained in a form release document prepared by Queen's. The PRO Member Physicians could not draft, negotiate, or bargain the terms in the Release Form and the Bylaws. This Court therefore finds that there was unequal bargaining power between the PRO Member Physicians and Queen's in their agreement that the physicians would be bound by the Bylaws. This Court will apply the rule that ambiguities in the Immunity Provision - and the Bylaws in general - must be construed against Queen's as the drafter of the Release Form and the Bylaws.

The Hawai`i Supreme Court has also recognized that "a contract should be construed as a whole and its meaning determined from the entire context and not from any particular word, phrase, or clause." Hawaii Med. Ass'n v. Hawaii Med. Serv.

13

Ass'n, Inc. ("HMA"),[9] 113 Hawai`i 77, 92, 148 P.3d 1179, 1194

(2006). This Court must read the Immunity Provision in the

context of the Bylaws as a whole, including the following

provisions:

> 12.3-5 Legal Actions:
>
>> If, notwithstanding this Section, an
>> individual institutes legal action
>> challenging any credentialing,
>> privileging, peer review, or other
>> action and does not prevail, he or she
>> shall reimburse [Queen's] and any member
>> of the Medical Staff or Board involved
>> in the action for all costs incurred in
>> defending such legal action, including
>> reasonable attorney's fees and lost
>> revenues.
>
> . . . .
>
> 12.4 ACTIVITIES AND INFORMATION COVERED
>
> 12.4-1 ACTIVITIES
>
>> The confidentiality and immunity
>> described by this Article applies to all
>> acts, communications, proceedings,
>> interviews, reports, records, minutes,
>> forms, memoranda, statements,
>> recommendations, findings, evaluations,
>> opinions, conclusions or disclosures
>> performed or made in connection with
>> this or any other health care facility's
>> or organization's activities concerning
>> but not limited to:
>
>> A.   Applications appointment, or
>>      clinical privileges.

---

[9] This Order refers to Hawaii Medical Services Association,
Inc. as "HMSA."

B.    Periodic reappraisals for
      reappointment and clinical
      privileges.

C.    Corrective or disciplinary action.

D.    Hearings and appellate reviews.

E.    Quality assurance program
      activities.

F.    Utilization and claims reviews.

G.    Profiles and profile analysis.

H.    Malpractice loss prevention.

I.    Other Hospital and staff activities
      related to monitoring and
      maintaining quality patient care
      and appropriate professional
      conduct.

[Bylaws at QMC000052-53.]

Reading the Immunity Provision in the context of the
entire Bylaws, including §§ 12.3-5 and 12-4.1, this Court
concludes that the Immunity Provision is not limited to
credentialing and peer review.  Even construing the Immunity
Provisions and other related provisions against Queen's,
Plaintiffs' interpretation of the Immunity Provision is too
narrow.  This Court concludes that, in addition to credentialing
and peer review, the Immunity Provision applies to the clinical
privileging process.

While Plaintiffs' interpretation is too narrow,
Defendants' is overly broad.  Defendants would have this Court
interpret the Immunity Provision to bar all civil actions related

to privileging decisions, even where, as in the instant case, the privileging decision allegedly violated Queen's own Bylaws, state law, and federal law. First, Hawai`i courts have recognized that "a court may refuse to enforce contracts that violate law or public policy" and "'[i]llegal contracts are generally unenforcible [sic].'" <u>Inlandboatmen's Union of the Pac., Hawai`i Region, Marine Div. of Int'l Longshoremen's & Warehousemen's Union v. Sause Bros., Inc.</u>, 77 Hawai`i 187, 194, 881 P.2d 1255, 1262 (Ct. App. 1994) (some alterations in <u>Inlandboatmen's Union</u>) (some citations omitted) (quoting <u>Wilson v. Kealakekua Ranch</u>, 57 Haw. 124, 128, 551 P.2d 525, 528 (1976)).

Plaintiffs' Complaint alleges that, in deciding to terminate the PRO Physicians' clinical privileges, Queen's violated "the procedural safeguards concerning the termination of privileges contained within" the Bylaws. [Amended Complaint at ¶ 34.] If the Immunity Provision barred the PRO Physicians from bringing any civil actions relating to privileging decisions, including claims that Queen's failed to provide procedural safeguards guaranteed by the Bylaws, Plaintiffs would have no recourse to hold Queen's accountable. Defendants' interpretation of the Immunity Provision would essentially render the procedural safeguard provisions meaningless. Such an interpretation is contrary to the principles of contract interpretation under Hawai`i law. <u>See</u> <u>Stanford Carr Dev. Corp. v. Unity House, Inc.</u>,

111 Hawai`i 286, 297, 141 P.3d 459, 470 (2006) ("We have long expressed our disapproval of interpreting a contract such that any provision be rendered meaningless.").  Defendants have cited some case law from other jurisdictions in which the courts adopted interpretations of immunity provisions similar to Defendants' interpretation in the instant case, but, as these rulings are inconsistent with Hawai`i case law, this court declines to follow such case law.

Finally, this Court notes that § 12.4-1 states, in pertinent part: "If . . . an individual institutes legal action challenging any credentialing, privileging, peer review, or other action and does not prevail . . . ."  This provision contemplates that: 1) legal actions regarding privileging decisions may be filed; and 2) the plaintiffs may prevail.  Thus, § 12.4-1 does not support Defendants' interpretation of the Immunity Provision as prohibiting the filing of any action relating to privileging decisions.

For these reasons, and in particular because this Court must construe any ambiguities against Queen's, this Court rejects Defendants' interpretation of the Immunity Provision.  Reading the Immunity Provision in the context of the entire Bylaws, and in particular in conjunction with §§ 12.3-5 and 12.4-1, this Court concludes that the Immunity Provision only prohibits suits based on **the provision of information** – including information

regarding an individual's qualifications - in the appointment,
reappointment, privileging, credentialing, peer review,
disciplinary and other processes listed in the relevant
sections.[10]

In light of this Court's interpretation of the Immunity
Provision, this Court CONCLUDES that the PRO Member Physicians
did not violate the Immunity Provision in bringing their claims
in the instant case.  This Court therefore GRANTS Plaintiffs'
Motion as to Counterclaim Count I.

B. **Counterclaim Count II**

Plaintiffs argue that they are entitled to summary
judgment as to Counterclaim Count II because Queen's has not
alleged, and cannot prove, that PRO LLC, PRO Associates, and the
PRO Member Physicians caused a negative effect on competition,
and Queen's suffered an anti-competitive injury.  Further, to the
extent that Counterclaim Count II relies upon an alleged unfair
or deceptive acts or practices ("UDAP") claim, Plaintiffs argue

---

[10] For example, in connection with Plaintiffs' motion for a
preliminary injunction, [filed 1/27/12 (dkt. nos. 1-3 to 1-19),]
Defendants submitted an affidavit by Peter Bryant-Greenwood,
M.D., who was the Chairman of Queen's Credentialing Committee for
physicians and who was part of the task force which ultimately
recommended that Queen's radiation oncology department transition
to a closed-department model.  He described complaints that he
had about the PRO Physicians' competency during the task force's
investigation.  Preliminary Injunction Order, 861 F. Supp. 2d at
1174-75 & nn.6-7.  The Immunity Provision prohibits the PRO
Physicians from suing Dr. Greenwood, for example, for defamation
based on what he presented to the task force.

that Queen's lacks standing to pursue that claim because it is not a consumer.

Queen's brings Counterclaim Count II pursuant to Haw. Rev. Stat. § 480-2, which states, in pertinent part:

> (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.
>
> . . . .
>
> (d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.
>
> (e) Any person may bring an action based on unfair methods of competition declared unlawful by this section.

Queen's is a "person" for purposes of Haw. Rev. Stat. Chapter 480, but it is not a "consumer."  See Haw. Rev. Stat. § 480-1.[11]

---

[11] Section 480-1 states, in pertinent part:

> "Consumer" means a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment.
>
> . . . .
>
> "Person" or "persons" includes individuals, corporations, firms, trusts, partnerships, limited partnerships, limited liability partnerships, limited liability limited partnerships, limited liability companies, and incorporated or unincorporated associations, existing under or

(continued...)

Thus, Queen's can bring a UMOC claim pursuant to § 480-2(e), but it cannot bring a UDAP claim pursuant to § 480-2(d). This Court, however, does not construe Counterclaim Count II as alleging a UDAP claim. Defendants' argument that the conduct of PRO LLC, PRO Associates, and the PRO Member Physicians was unfair and deceptive is merely a component of their allegation of anti-competitive conduct. See HMA, 113 Hawai`i at 113, 148 P.3d at 1215 ("[W]e hold that any person may bring a claim of unfair methods of competition based upon conduct that could also support a claim of unfair or deceptive acts or practices as long as the nature of the competition is sufficiently alleged in the complaint.").

The Hawai`i Supreme Court has stated:

> Davis explained that in order to state a cause of action and recover money damages under HRS § 480-2(e), a plaintiff must first satisfy the requirements of HRS § 480-13. Davis [v. Four Seasons Hotel Ltd.], 122 Hawai`i [423,] 434, 228 P.3d [303,] 314 [(2010)] (citation omitted). "HRS § 480-13(a) provides that, with limited exceptions, any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by [chapter 480]:(1) [m]ay sue for damages . . . ; and (2) [m]ay bring proceedings to enjoin the unlawful practices[.]" Id. Davis noted, therefore, that a claim under HRS § 480-13 has three elements essential to recovery: (1) a violation of HRS chapter 480; (2) which causes an

---

[11](...continued)
authorized by the laws of this State, or any other state, or any foreign country.

injury to the plaintiff's business or property;
and (3) proof of the amount of damages.  <u>Davis</u>,
122 Hawai`i at 435, 228 P.3d at 315 (citations
omitted). . . .

   With respect to the second element, <u>Davis</u>
explained that this element includes two parts.
First, a plaintiff is required to allege an injury
in fact to his or her "business or
property." . . .

   Second, a plaintiff is required to allege the
"nature of the competition." . . .  We explained
that this means that the plaintiff must allege
that "he or she was harmed as a result of actions
of the defendant that negatively affect
competition."  <u>Davis</u>, 122 Hawai`i at 438, 228 P.3d
at 318.  The plaintiff was further required to
allege "how [Defendants] conduct [would]
negatively affect competition."  <u>Davis</u>, 122
Hawai`i at 437-38, 228 P.3d at 317-18.

<u>Gurrobat v. HTH Corp.</u>, 133 Hawai`i 1, 21, 323 P.3d 792, 812

(2014) (some alterations in <u>Gurrobat</u>).

   As to the first element, a violation of Chapter 480,

Defendants allege two theories - "free-riding" and improper self-

referral practices.

   1.   **<u>Free-Riding</u>**

   Defendants describe the concept of free-riding as:

   Free riding on another person's market
   achievements can be defined as any act that a
   competitor or another market participant
   understakes with the intention of directly
   exploiting another person's industrial or
   commercial achievement for his own business
   purposes . . . [i]n that sense, free riding
   is the broadest form of competition by
   imitation.

   Protection Against Unfair Competition: Analysis of
   the Present World Situation, World Intellectual

> Property Organization (WIPO) (Geneva, 1994).
> "Free riding occurs when one firm benefits from
> the actions of another without paying for it."
> Dennis Carlton and Jeffery Perloff, Modern
> Industrial Organization, (3d. Ed. 2000) p. 347.

[Mem. in Opp. at 14 (alteration in Mem. in Opp.) (some citations omitted).] Defendants have identified some cases recognizing that businesses have a legitimate interest in preventing free-riding. [Id. at 16-17 (citing Cont'l T.V., Inc. v. GTE Sylvania Inc., 433 U.S. 36, 55, 97 S. Ct. 2549, 2560 (1977); Alvord-Polk, Inc. v. F. Schumacher & Co., 37 F.3d 996, 1010-11 (3d Cir. 1994); Morris Commc'ns Corp. v. PGA Tour, Inc., 364 F.3d 1288, 1298 (11th Cir. 2004)).] Defendants, however, have not identified any statute or case law establishing that free-riding is a violation of Chapter 480, and this Court has not found any.

This Court has recognized that:

> When interpreting state law, a federal court is
> bound by the decisions of a state's highest court.
> Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422,
> 427 (9th Cir. 2011). In the absence of a
> governing state decision, a federal court attempts
> to predict how the highest state court would
> decide the issue, using intermediate appellate
> court decisions, decisions from other
> jurisdictions, statutes, treatises, and
> restatements as guidance. Id.; see also
> Burlington Ins. Co. v. Oceanic Design & Constr.,
> Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the
> extent this case raises issues of first
> impression, our court, sitting in diversity, must
> use its best judgment to predict how the Hawai`i
> Supreme Court would decide the issue." (quotation
> and brackets omitted)).

Evanston Ins. Co. v. Nagano, 891 F. Supp. 2d 1179, 1189 (D.

Hawai`i 2012) (some citations omitted). This Court has not found any indication in Hawai`i case law that the Hawai`i Supreme Court would recognize free-riding as a violation of Haw. Rev. Stat. Chapter 480. This Court therefore predicts that the Hawai`i Supreme Court would not recognize a Chapter 480 claim based on free-riding, and this Court CONCLUDES that Counterclaim Count II fails as a matter of law to the extent that Defendants' UMOC claim is based on free-riding. Plaintiffs' Motion is GRANTED as to the portion of Counterclaim Count II based on free-riding.

## 2. Self-referral Practices

Defendants also argue that the PRO Member Physicians' self-referral practices constitute unfair methods of competition.[12]

There is undisputed evidence that the PRO Physicians frequently referred patients who they initially saw at Queen's to CCH facilities.[13] See, e.g., Defs.' Excerpts of DeMare Depo. at 78. The PRO Physicians characterize this practice as merely providing their patients with choices or alternatives. See, e.g., Defs.' Excerpts of DeMare Depo. at 80-82; Defs.' Excerpts

_____

[12] Defendants describe self-referral as "the practice by which a physician suggests patients should seek treatment at a facility in which he/she has an ownership interest." [Mem. in Opp. at 19.]

[13] Although all six of the PRO Physicians apparently had the same referral practices, Dr. Bieniek is not a member of PRO and is not named as a defendant in Counterclaim Count II.

of Lederer Depo. at 159-60.  Defendants argue that the PRO Member Physicians' referral practice violated Chapter 480 because they failed to provide the patients with prior written disclosures stating that they were referring the patients to a facility where they have an ownership interest.  Defendants contend that the failure to provide such written disclosures, which must be signed by both the referring physician and the patient prior to the referral, violates Haw. Rev. Stat. 431:10C-308.7.

Section 431:10C-308.7 states, in pertinent part:

(c) No health care provider shall refer, for any service or treatment authorized under this chapter, a patient to any entity in which the referring provider has a financial interest unless the referring provider has disclosed that financial interest to the patient.

For the purposes of this section "financial interest" shall mean an ownership or investment interest through debt, equity, or any other means. "Financial interest" does not refer to salary or other compensation paid to physicians by a health maintenance organization, or any compensation arrangement involving payment by a group practice which contracts with a health maintenance organization to a physician in the same group practice or entity affiliated with the health maintenance organization for services provided to a member of the health maintenance organization.

(d) The health care provider shall make the disclosure required by this section in advance and in writing, and shall obtain the signature of the patient and retain the disclosure form for a period of two years.  The health care provider shall include in the disclosure a statement indicating that the patient is free to choose a different health care provider.

Article 10C governs motor vehicle insurance, but Defendants argue

24

that § 431:10C-308.7 applies to the PRO Member Physicians' self-referrals because section (b) states "for any services or treatment authorized under this chapter" and Chapter 431 is the Insurance Code. Defendants, however, have not cited any case law supporting their argument that § 431:10C-308.7 applies outside of the context of motor vehicle insurance.

This Court has not found any case law from the Hawai`i Supreme Court, or the Intermediate Court of Appeals of Hawai`i ("ICA"), supporting Defendants' position that § 431:10C-308.7 applies in all situations when the Insurance Code applies. This Court must therefore predict how the Hawai`i Supreme Court would decide this issue. This Court has not found any case law from the Hawai`i Supreme Court or the ICA applying **any provision** of Article 10C outside of the context of motor vehicle insurance. Further, the Insurance Code is voluminous, containing more than twenty articles. It defies logic to believe that the legislature would have placed a disclosure requirement in the article titled Motor Vehicle Insurance if it intended the requirement to apply to all treatment and services by health care providers under the Insurance Code. If that was the legislature's intent, it could have placed the requirement in one of the articles with general applicability, such as Article 3 (Insurers General Requirements) or Article 10 (Insurance Contracts Generally). The only logical interpretation of § 431:10C-308.7 is that it is limited to the

context of motor vehicle insurance, but health care providers
giving referrals in that context must make the required
disclosure for any service or treatment authorized under the
Insurance Code.  See Kinkaid v. Bd. of Review of City & Cnty. of
Honolulu, 106 Hawai`i 318, 323, 104 P.3d 905, 910 (2004) ("the
legislature must be presumed not to intend an absurd result, such
that legislation will be construed to avoid, if possible,
inconsistency, contradiction, and illogicality" (brackets,
citations, and internal quotation marks omitted)).  This Court
therefore predicts that the Hawai`i Supreme Court would reject
Defendants' suggested interpretation of § 431:10C-308.7 because
it is illogical and is not supported by any prior decisions in
the Hawai`i state courts.

        Defendants have not presented any evidence which
suggests that the PRO Member Physicians were treating any of the
patients at issue in this case in the context of motor vehicle
insurance.  This Court therefore concludes that § 431:10C-308.7
does not apply in this case, and Defendants cannot base their
UMOC claim on the alleged failure to comply with the disclosure
requirements therein.

        Defendants also argue that, apart from the argument
regarding § 431:10C-308.7, the PRO Member Physicians' referral
practices were unfair and deceptive and therefore violated
Chapter 480.  Plaintiffs state that all of the patients at issue

received written disclosures about the CCH ownership when they went to a CCH facility for the first time. The disclosures are maintained in the patients' files at CCH. [Defs.' Excerpts of Lederer Depo. at 73-74; Pltfs.' Concise Counterstatement of Additional Material Facts in Supp. of Motion, filed 9/2/14 (dkt. no. 306) ("Pltfs.' Reply CSOF"), Decl. of Mark S. Davis ("Davis Reply Decl."), Exh. Z (Pltfs.' Excerpts of 7/17/14 Depo. of Paul Arthur DeMare, M.D.) at 25-26; Pltfs.' Reply CSOF, Decl. of Thanh Huynh, M.D., Exh. X (CCH disclosure form).] Defendants' position is that the PRO Member Physicians withheld information regarding their ownership interest in the CCH facilities that they referred patients to until after the patients were already at the facility for treatment. Defendants contend that the failure to disclose that information manipulated patients' choices.

In <u>HMA</u>, the Hawai`i Supreme Court stated:

if HMSA engages in acts or practices that impede or interfere with physicians' ability to provide effective healthcare services to their patients and/or create incentives for patients to look elsewhere for medical services — that is, to other participating physicians who may be reluctant to challenge HMSA or to non-participating physicians — such acts or practices can, if proven, constitute unfair methods of competition.

113 Hawai`i at 112-13, 148 P.3d at 1214-15; <u>see also</u> <u>Gurrobat</u>, 133 Hawai`i at 22, 323 P.3d at 813 ("similar to <u>HMA</u>, plaintiffs may prove how a defendant's conduct negatively affects competition by showing that defendant's conduct enables the

defendant to create incentives for customers to purchase banquet services from the defendant instead of competitors who did not engage in the unlawful conduct").

In the instant case, when a PRO Member Physician referred a patient – who he initially saw at Queen's – to a CCH facility, the patient had a choice between accepting the referral to the CCH facility or rejecting the referral and being treated at Queen's. Defendants contend that the referring physician's ownership interest in the CCH facility is a factor that the patient would consider in making that decision. However, by failing to disclose his ownership interest in the CCH facility until the referred patient has arrived at the CCH facility for treatment, the PRO Member Physician deprived the patient of the opportunity to make a meaningful decision. Even if the patient objected to the PRO Member Physician's ownership interest in the referral facility, the patient is unlikely to refuse the referral at that point because he has already scheduled and arrived at the CCH facility for treatment. Defendants' position is that a patient has an incentive to chose treatment at a facility where his physician does not have an ownership interest over treatment at a facility where his physician does have an ownership interest. Defendants contend that, by failing to disclose their ownership interests in CCH prior to referral, the PRO Member Physicians improperly eliminate that incentive.

This Court finds that such conduct could possibly be deceptive. See, e.g., Haw. Rev. Stat. § 481A-3(a).[14] Thus, Defendants can base a UMOC claim on the PRO Member Physicians' allegedly deceptive self-referral practice if they can prove the nature of the competition. See HMA, 113 Hawai`i at 113, 148 P.3d at 1215. Plaintiffs do not dispute that Queen's and PRO are "active competitors in the market for radiation oncology services." [Reply at 9.] Defendants have submitted some evidence that patients were confused and there were misunderstandings because of the PRO Physicians' improper self-referrals. See Defs.' CSOF, Decl. of Darlena Chadwick ("Chadwick Decl."), Exh. 7 (email dated 9/9/11 from Darlena Chadwick to Virginia Walker regarding complaints by PRO Physicians' patients);[15] Defs.' Excerpts of Hata Depo. at 21-22, 26-27. Defendants have also

---

[14] Section 481A-3(a) states, in pertinent part:

> A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person:
>
> . . . .
>
> (3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another[.]

[15] Darlena Chadwick is the Vice President of Patient Care at Queen's. [Chadwick Decl. at ¶ 2.] Virginia Walker is the Director of Cancer Center, Women's Health, & Imaging Services at Queen's. [Id., Exh. 6 at 1.]

asserted that Queen's lost an estimated $4.8 million in gross revenue as a result of the PRO Physicians' referral practices. [Defs.' CSOF at Additional Material Facts ¶ 14 (citing Chadwick Decl., Exh. 6 (email dated 7/1/11 from Virginia Walker to Darlena Chadwick regarding radiation therapy patients transferred)).]

Plaintiffs contest the admissibility and reliability of Defendants' evidence. See, e.g., Pltfs.' 9/10/14 Mem. in Opp. to Motion to Supplement at 1-2; Pltfs.' Reply CSOF at ¶ 14. In reviewing Plaintiffs' Motion and determining whether there is a genuine issue of material fact as to Counterclaim Count II, this Court must view the current record in the light most favorable to Defendants. See Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir. 2013) ("We review a grant of summary judgment de novo and must determine, viewing the facts in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." (citations and quotation marks omitted)). This Court finds that Defendants' evidence is sufficient to raise a genuine dispute of material fact as to the issues of whether: the PRO Member Physicians' self-referral practice was an unfair and deceptive practice; whether their actions, and the actions of PRO LLC and PRO Associates, negatively affected competition; and whether Queen's was harmed as a result. Insofar as there are genuine disputes of material

30

fact, Plaintiffs are not entitled to summary judgment as to Counterclaim Count II.  Plaintiffs' Motion is therefore DENIED as to Counterclaim Count II.

## III. Defendants' Request for Summary Judgment

Defendants ask this Court to award summary judgment in their favor as to both counts of the Counterclaim pursuant to Fed. R. Civ. P. 56(f)(1) and Local Rule 56.1(i).  Insofar as this Court has granted summary judgment in favor of Plaintiffs as to Counterclaim Count I, Defendant's request is DENIED as to that count.

Rule 56(f) states: "After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant[.]"  Similarly, Local Rule 56.1(i) states:

> If a party moves for summary judgment and the record establishes as a matter of law that another party is entitled to summary judgment against the moving party, the court, in the court's discretion, may enter summary judgment against the moving party after providing that party with oral or written notice and an opportunity to be heard.

"[I]f an issue is fully and fairly ventilated by the parties' summary judgment briefing and there is no evidence from which a jury could reasonably decide that issue in the movant's favor, then summary judgment on that issue may properly be granted against the movant."  Barnett v. Lincoln Nat'l Life Ins. Co., No. CV-12-2160-PHX-SMM, 2014 WL 4259482, at *5 (D. Ariz. Aug. 27,

2014). "Grants of summary judgment to a nonmoving party, however, are 'generally disfavored, because they risk depriving a losing party of adequate notice and opportunity to oppose summary judgment.'" <u>Apple, Inc. v. Samsung Elecs. Co.</u>, Case No.: 12-CV-00630-LHK, 2014 WL 252045, at *15 n.9 (N.D. Cal. Jan. 21, 2014) (quoting <u>Mikkelsen Graphic Engineering, Inc. v. Zund Am., Inc.</u>, --- Fed. Appx. ---, 2013 WL 4269406, at *7 (Fed. Cir. Aug. 16, 2013)).

In light of the genuine issues of material fact described *supra* Section II.B.2., Defendants have not established, as to Counterclaim Count II, that there is "no evidence from which a jury could reasonably decide" the claim in Plaintiffs' favor. This Court therefore DENIES Defendants' request for summary judgment pursuant to Rule 56(f)(1) and Local Rule 56.1(i) as to Counterclaim Count II.

**<u>CONCLUSION</u>**

On the basis of the foregoing, this Court rules as follows:

-Defendants' Motion for Leave to Supplement the Summary Judgment Record with New Material Evidence, filed September 9, 2014, is HEREBY GRANTED;

-Plaintiffs' "Motion for Summary Judgment on the Counterclaim Filed February 25, 2014 [Dkt. 175-1]," filed July 28, 2014, is HEREBY GRANTED insofar as this Court GRANTS summary judgment in favor of the PRO Member Physicians as to Counterclaim Count I and in favor of PRO LLC, PRO Associates, and the PRO Member Physicians as to the portion of Counterclaim Count II based on free-riding;

-Plaintiffs' Motion is HEREBY DENIED as to the portion of Counterclaim Count II based on the PRO Member Physicians' self-referral practices; and

-Defendants' request for summary judgment pursuant to Fed. R. Civ. P. 56(f)(1) and Local Rule 56.1(i) is HEREBY DENIED.

     IT IS SO ORDERED.

     DATED AT HONOLULU, HAWAII, November 30, 2014.



     /s/ Leslie E. Kobayashi
     Leslie E. Kobayashi
     United States District Judge

**PACIFIC RADIATION ONCOLOGY, LLC, ET AL. VS. THE QUEEN'S MEDICAL CENTER, ET AL.; CIVIL 12-00064 LEK-KSC; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THE COUNTERCLAIM FILED FEBRUARY 25, 2014 [DKT. 175-1]**