IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PACIFIC RADIATION ONCOLOGY, LLC, a Hawai`i Limited Liability Corporation, et al., | ) ) ) ) ) | CIVIL NO. 12-00064 LEK-KSC |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| THE QUEEN'S MEDICAL CENTER, a Hawai`i Non-Profit Corporation, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO EXCLUDE THE TESTIMONY OF JONATHAN A. CUNITZ**

On July 9, 2014, Defendants/Counter Claimants Queen's Medical Center, a Hawai`i Non-Profit Corporation ("Queen's" or "QMC"), Queen's Development Corp., a Hawai`i for Profit Corporation, Noreen D.S.W. Mokuau, William G. Obana, M.D., Arthur A. Ushijima, Mark H. Yamakawa, Paula Yoshioka, Sharlene K. Tsuda, Richard C. Keene, Clinton Yee, Naleen N. Andrade, M.D., Ernest H. Fukeda, Jr., Robb Ohtani, M.D., Neil J. Hannahs, Christine M. Gayagas, Peter K. Hanashiro, Robert K. Nobriga, Eric K. Yeaman, Julia C. Wo, Caroline Ward Oda, Peter Halford, M.D., Barry Weinman, each individually and in his or her capacity as Officer and Trustee of Queen's Medical Center (all collectively "Defendants"), filed their Motion to Exclude the Testimony of Jonathan A. Cunitz

("Cunitz Motion"). [Dkt. no. 231.]

Plaintiffs/Counterclaim Defendants Pacific Radiation Oncology, LLC, a Hawai`i Limited Liability Corporation ("PRO"), PRO Associates, LLC, a Hawai`i Limited Liability Corporation, John Lederer, M.D., Laeton Pang, M.D., Eva Bieniek, M.D., Vincent Brown, M.D., Paul DeMare, M.D., and Thanh Huynh, M.D.[1] (all collectively "Plaintiffs"), filed their memorandum in opposition on November 10, 2014, and Defendants filed their reply on November 17, 2014. [Dkt. nos. 407, 424.] This matter came on for hearing on December 1, 2014.[2] After careful consideration of the motion, supporting and opposing memoranda, and the arguments of counsel, Defendants' Cunitz Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below. In short, the Cunitz Motion is DENIED insofar as the Court will allow testimony at trial regarding Dr. Cunitz's interpretations of Plaintiffs' historic financial documents, assuming disclosure deadlines are met, and is GRANTED all other respects.

---

[1] This Court will refer to Drs. Lederer, Pang, Bieniek, Brown, DeMare, and Huynh collectively as "the PRO Physicians," and to Drs. Lederer, Pang, Brown, DeMare, and Huynh collectively as "the PRO Member Physicians." Dr. Bieniek is not a member of PRO.

[2] At the hearing, this Court also heard argument on Defendants' Motion to Exclude the Testimony of Ronald B. Goodspeed ("Goodspeed Motion") and Motion to Exclude the Testimony of Thomas L. Greaney ("Greaney Motion"). [Dkt. nos. 229-30.] On December 31, 2014, this Court issued an order granting the Goodspeed Motion and the Greaney Motion in part and denying them in part. [Dkt. no. 467.]

## BACKGROUND

The parties and the Court are familiar with the factual and procedural background of this case. The Court will only discuss the events that are relevant to the instant motion.

Jonathan A. Cunitz has a Doctor of Business Administration degree in accounting from the Harvard Business School. [Cunitz Motion, Decl. of William S. Hunt ("Hunt Decl."), Exh. A (Letter dated 9/10/13 to Mark S. Davis, Esq. from Dr. Cunitz ("Cunitz Report")), Exh. G (Dr. Jonathan A. Cunitz Curriculum Vitae ("Cunitz CV")) at 37.[3]] He previously taught courses in the masters programs at the New York University Graduate School of Business Administration and the University of Connecticut School of Business Administration. [Cunitz CV at 38.] He is currently the president of Jonathan A. Cunitz & Company, which "[p]rovide[s] consulting services to businesses, financial institutions and professional firms in the area of financial management, accounting and information systems." [Id. at 37.] Plaintiffs emphasize that Dr. Cunitz "has provided extensive accounting and financial testimony" for thirty-five years. [Mem. in Opp. to Cunitz Motion ("Cunitz Opp.") at 26.]

Plaintiffs retained Dr. Cunitz "to evaluate and testify about Plaintiffs' economic loss of physician income resulting

---

[3] All citations to the Cunitz Report refer to the Bates stamp page numbers, which are located in the bottom, right-hand corner of each page.

from QMC's decision to prevent Plaintiffs from treating patients at QMC." [Id. at 2.] The Cunitz Report: 1) analyzes the losses that each of the PRO Physicians suffered in 2012 after the termination of their privileges at Queen's; and 2) projects their future losses. Dr. Cunitz states that "[a]ll of the losses shown . . . are due to the termination of privileges and other actions initiated by QMC." [Cunitz Report at 4.] Dr. Cunitz used three methodologies to calculate the PRO Physicians' loss of income in 2012: 1) "profit margin applied to patient receipts;" 2) "income statement analysis;" and 3) "normalized income analysis." [Id. at 9-11 (emphases omitted).] According to Dr. Cunitz, because "[t]he results under each approach are similar, . . . the average is a reasonable representation of the loss in 2012 for each physician." [Id. at 11.] He used the profit margin applied to patient receipts methodology to determine the PRO Physicians' loss of income for 2013. For Drs. Huynh, Lederer, Pang, and Bieniek, he used the 2013 loss, with certain adjustments, to estimate the losses for 2014 and beyond. He estimated Dr. DeMare's loss for 2014 through 2016 as $184,000, and Dr. Brown loss after 2014 as zero, due to their personal circumstances, such as intended retirement. [Id. at 12-13.]

In the Cunitz Motion, Defendants ask this Court to exclude the Cunitz Report and Dr. Cunitz's testimony because: 1) Dr. Cunitz improperly submitted a "preliminary" report, in

4

violation of Fed. R. Civ. P. 26(a)(2); 2) he is not sufficiently qualified to render the opinions he has given in this case; 3) his opinions regarding Plaintiffs' loss of income are inadmissible because he relied on flawed and untested methodology; and 4) his opinions are inadmissible because they are based on inadequate and incomplete data and baseless assumptions.

## STANDARD

Fed. R. Evid. 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

The Ninth Circuit interprets Rule 702

> to require that "[e]xpert testimony . . . be both relevant and reliable." Estate of Barabin [v. AstenJohnson, Inc.], 740 F.3d [457,] 463 [(9th Cir. 2014) (en banc)] (alteration and ellipsis in original) (internal quotation marks omitted). A proposed expert's testimony, then, must "have a reliable basis in the knowledge and experience of his discipline." Kumho Tire [Co. v. Carmichael],

> 526 U.S. [137,] 148, 119 S. Ct. 1167[, 143 L. Ed. 2d 238 (1999)] (internal quotation marks omitted). This requires district courts, acting in a "gatekeeping role," to assess "whether the reasoning or methodology underlying the testimony" is valid and "whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592-93, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) . . . . It is not "the correctness of the expert's conclusions" that matters, but "the soundness of his methodology." Estate of Barabin, 740 F.3d at 463 (internal quotation marks omitted).

Ollier v. Sweetwater Union High Sch. Dist., 768 F.3d 843, 860 (9th Cir. 2014) (some alterations in Ollier).

> "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." [Primiano v. Cook, 598 F.3d 558,] 564 [(9th Cir. 2010)] (citation omitted). The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." Alaska Rent-A-Car[, Inc. v. Avis Budget Grp., Inc.], 738 F.3d [960,] 969 [(9th Cir. 2013)]. Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." Id. at 969-70.

Pyramid Techs., Inc. v. Hartford Cas. Ins. Co., 752 F.3d 807, 813 (9th Cir. 2014) (some alterations in Pyramid Techs.).

## DISCUSSION

### I. Dr. Cunitz's Qualifications

The Court will first address Defendants' argument that Dr. Cunitz is not qualified to render the opinions he has given in this case. Defendants emphasize that Dr. Cunitz: is not a

6

certified public accountant ("CPA"); is not familiar with the professional standards applicable to CPAs; does not have a degree in economics; and does not have any training or experience in hospital/medical management, billing, or reimbursement.

The record establishes that Dr. Cunitz has specialized knowledge in the area of accounting, and the Court finds that his specialized knowledge will help the jury understand Plaintiffs' evidence regarding their claim for loss of income. Defendants essentially argue that: a CPA or an economist would be more qualified to address the lost income claim; and, specifically, an accountant who specializes in healthcare issues would be more qualified. Such arguments address the weight of evidence, not the admissibility of evidence. Unless they are prohibited from doing so on grounds outside the scope of this Order, Defendants can raise their arguments about Dr. Cunitz's qualifications through cross-examination, presentation of contrary evidence, and arguments regarding Plaintiffs' burden of proof. See Pyramid Techs., 752 F.3d at 813.

This Court therefore DENIES the Cunitz Motion to the extent that the motion challenges Dr. Cunitz's qualifications.

## II. Rule 26 Requirements

Because Plaintiffs specifically retained Dr. Cunitz to give expert testimony in this case, they were required to disclose a written report by him containing the following:

7

>     (i) a complete statement of all opinions the
>     witness will express and the basis and reasons for
>     them;
>
>     (ii) the facts or data considered by the witness
>     in forming them;
>
>     (iii) any exhibits that will be used to summarize
>     or support them;
>
>     (iv) the witness's qualifications, including a
>     list of all publications authored in the previous
>     10 years;
>
>     (v) a list of all other cases in which, during the
>     previous 4 years, the witness testified as an
>     expert at trial or by deposition; and
>
>     (vi) a statement of the compensation to be paid
>     for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Defendants argue that the Cunitz Report is merely a preliminary report, which violates Rule 26(a)(2)(B)'s requirement that the report be "complete" and that it include all of the exhibits he will use to summarize or support his opinions.

The Cunitz Report does state that it is "a preliminary analysis." [Cunitz Report at 2.] At his deposition, however, Dr. Cunitz stated that he is prepared to testify at trial about the opinions and conclusions in his report. The only exceptions are that he would: 1) update the present value calculation in his report to reflect a date closer to the trial date;[4] and 2) revise

---

[4] The present value in the Cunitz Report is calculated as of January 1, 2014. [Cunitz Report at 14.] Trial in this matter is currently scheduled for June 23, 2015.

his report based on new information about the PRO Physicians, such as Dr. Bieniek's relocation, Dr. Huynh's religious studies in Asia, and the number of hours the PRO Physicians have worked since he prepared the report. [Cunitz Opp., Decl. of Mark. S. Davis ("Davis Decl."), Exh. A (Excerpts of Trans. of 2/17/14 Depo. of Jonathan Cunitz ("Pltfs.' Excerpts of Cunitz Depo.")) at 83-84.] The Court finds that these anticipated revisions and/or updates to the Cunitz Report are proper subjects of a supplemental report required by Rule 26. See Fed. R. Civ. P. 26(a)(2)(E) (stating that parties must supplement their expert disclosures "when required under Rule 26(e)," which governs supplemental disclosures and responses). The fact that Dr. Cunitz anticipates these revisions and/or updates does not render the Cunitz Report incomplete.

This Court therefore DENIES the Cunitz Motion to the extent that the motion alleges a violation of Rule 26(a)(2)(B).

## III. Daubert Analysis

The Court next turns to Defendants' Daubert challenge. The Ninth Circuit has stated that the analysis of an expert's reliability is flexible. Barabin, 740 F.3d at 463.

> To determine reliability, the Supreme Court has suggested several factors: "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." [Barabin, 740 F.3d at 463]

9

> (quoting United States v. Hankey, 203 F.3d 1160,
> 1167 (9th Cir. 2000) [(citing Daubert, 509 U.S. at
> 592-94, 113 S. Ct. 2786)]); see also Primiano, 598
> F.3d at 564. These factors are "meant to be
> helpful, not definitive, and the trial court has
> discretion to decide how to test an expert's
> reliability as well as whether the testimony is
> reliable, based on the particular circumstances of
> the particular case." Primiano, 598 F.3d at 564
> (citations and quotation marks omitted); see also
> Barabin, 740 F.3d at 463. The test "is not the
> correctness of the expert's conclusions but the
> soundness of his methodology," and when an expert
> meets the threshold established by Rule 702, the
> expert may testify and the fact finder decides how
> much weight to give that testimony. Primiano, 598
> F.3d at 564-65.

Pyramid Techs., 752 F.3d at 813-14. The Ninth Circuit has recognized that

> the trial court's gatekeeping function explained
> in Daubert applies not only to scientific
> testimony, but to all expert testimony. Kumho
> Tire, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L.
> Ed. 2d 238 (1999). And the Court emphasized that
> the Daubert factors are not an exhaustive
> checklist; rather, the trial court must base its
> inquiry on the facts of each case. Id. at 150,
> 119 S. Ct. 1167. . . .

F.T.C. v. BurnLounge, Inc., 753 F.3d 878, 888 (9th Cir. 2014). The Ninth Circuit has also emphasized that, in exercising its gatekeeping function, a court does not act as a fact finder. Pyramid Techs., 752 F.3d at 813.

Dr. Cunitz testified that he developed three methodologies to calculate the PRO Physicians' loss of income, each of which was "very specific to these circumstances," because the case presents "a very unique situation." [Pltfs.' Excerpts

of Cunitz Depo. at 92-93, 117.] He stated that there "may be" variations of these methodologies which he "use[d] for other analyses," but he could not identify any at the time of his deposition, and he stated that he did not know whether or not anyone else uses these methodologies to calculate lost earnings. [Id. at 93.] Dr. Cunitz's position appears to be that no one else uses these methodologies because of the lack of a comparable practice to PRO in Hawai`i and because practices in other states are not comparable to PRO because the medical community in Hawai`i is unique. [Id. at 132-33.]

This Court agrees with Dr. Cunitz that the PRO Physicians' **medical practice** is unique and may not have a comparable practice in Hawai`i, or any other state. However, their **claim in this case** that they lost a significant source of their income as a result of Defendants' actions and omissions is not unique. This Court questions whether the facts of this case are so unique as to require the creation of accounting methodologies that neither Dr. Cunitz nor any other accountant has used before. Even assuming that it was necessary to create new methodologies for the specific facts of this case, for Dr. Cunitz's opinions to satisfy the standards set forth in Daubert and its progeny: 1) the reasoning and techniques underlying his methodologies must have been reliable in the field of accounting; and 2) he must have reasonably applied them to the

11

facts of this case.  See Ollier, 768 F.3d at 843.  This Court first turns to the reliability analysis.

 A. **<u>Testing and Rate of Error</u>**

As to the first <u>Daubert</u> factor - whether the expert's theories and techniques can be tested - and the third factor - the known or potential rate of error, Dr. Cunitz testified:

> Q. Have the methodologies ever been tested to see if they render reliable results by you or anyone else?
>
> A. I don't know.
>
> Q. Have you ever done any testing to determine whether they result in a reliable estimate of the lost earnings?
>
> A. The fact that they are similar, using three different approaches, was my test of reliability.
>
> Q. What do you mean when you refer to them as similar?
>
> A. The results are approximately the same.
>
> Q. Do you have any range within which you would define similar results, like plus or minus 10 percent, plus or minus 50 percent?
>
> A. Well, they're certainly less than 10 percent from the average.  Looks like they're less than 5 percent, even.
>
> Q. When you apply these methodologies, do you have a known error rate for knowing whether they're reliable or not?
>
> A. No.

[Pltfs.' Excerpts of Cunitz Depo. at 117-18.]  Thus, the only test of reliability that Dr. Cunitz identified is the fact that

the results of the three methodologies are "similar," *i.e.* he asserts that they differ less than ten percent from the average of the three results.

Exhibit 3 to the Cunitz Report is a table of the PRO Member Physicians' loss of income for 2012, as determined according to Dr. Cunitz's three methodologies and the average of the three results for each physician.[5]  [Cunitz Report at 17.] The three methodologies resulted in the following amounts for Dr. Lederer's loss of income: $292,617; $288,036; and $282,614. The average is $287,756.  The lowest amount, which was determined by the normalized income analysis, is $5,142 - or less than 2% - below the average.  The results, however, are not as consistent for the other PRO Member Physicians.

The three methodologies resulted in the following amounts for Dr. Pang's loss of income: $74,624; $73,280; and $89,022.  The average is $78,975.  The highest amount, determined by the normalized income analysis, is $10,047 - or almost 13% - above the average.  The three methodologies resulted in the following amounts for Dr. Brown's loss of income: $177,403; $163,533; and $127,651.  The average is $156,196.  The lowest amount, determined by the normalized income analysis, is $28,545

---

[5] Dr. Cunitz did not use the three methodologies to calculate Dr. Bieniek's loss of income because she is an employee of PRO, not an equity member like the PRO Member Physicians. [Cunitz Report at 8-9.]

13

- or approximately 18% - below the average.

Even if this Court accepts Dr. Cunitz's testimony that his methodologies can be tested by examining the similarity of their results,[6] this Court finds that there is a **lack of similarity** in the results, and this weighs against a finding of reliability. This Court also finds that the lack of a known rate of error weighs against a finding of reliability.

B.  **Peer Review and Publication and General Acceptance**

As to the second Daubert factor - whether the theories or techniques have been subjected to peer review and publication - and the fourth factor - whether the theories or techniques are generally accepted in that area of expertise, Dr. Cunitz testified:

> Q. . . .
>
> Are you aware of any standards or guidelines, by anyone other than yourself, that suggest that this is the way that someone should conduct a lost earnings analysis?
>
> A. No.
>
> . . . .

---

[6] Dr. Cunitz did not refer to any professional source or standard to support his assertion that the similarity of the results is evidence that the three methodologies are reliable. He merely stated, "I **think** the fact that they are so similar indicates they are reliable approaches." [Pltfs.' Excerpts of Cunitz Depo. at 115 (emphasis added).] Similarly, he cited no authority supporting his use of the average of the three methodologies. See id. ("**I feel** the average is a reasonable representation of the loss of income." (emphasis added)).

14

>     Q. Is there any literature supporting the use
> of these methodologies?
>
>     A. I don't know.
>
>     Q. Do you know of anyone else who uses
> similar methodologies in projecting lost earnings?
>
>     A. No.
>
>     Q. Do you ever use this methodology of
> projecting earnings in any of your non-litigation
> support activities, the consulting work that you
> described earlier?
>
>     A. No.

[Pltfs.' Excerpts of Cunitz Depo. at 116-18.]

Dr. Cunitz testified that he holds all of the opinions in his report to a reasonable degree of certainty and that all of the methodologies he used are reasonable and appropriate for the situation presented in this case, but he did not identify a professional standard that he applied or referred to in developing his methodologies. [Hunt Decl., Exh. B (Excerpts of 2/17/14 Depo. of Jonathan Cunitz ("Defs.' Excerpts of Cunitz Depo.")) at 24-25.]

Further, Dr. Cunitz did not know if there were generally accepted theories or techniques in the field of accounting that he could have used to determine the PRO Physicians' loss of income.

>     Q. What other alternatives could you have
> considered?  Are there alternative methods that
> would be generally applicable that you decided not
> to use?

> A. I don't know because I didn't consider anything. I hadn't thought about it.

[Defs.'s Excerpts of Cunitz Depo. at 29.] He was also unaware of any guidelines or standards of accounting that apply to his opinions in this case.

> Q. Do you believe that you're subject to any guidelines or standards with respect to the opinions that you issued in this report?
>
> A. Just those that might be imposed by the legal system.
>
> Q. And what might those be?
>
> A. To provide opinions within my area of expertise.
>
> Q. Aside from that, are you subject to any guidelines or standards with respect to the opinions that you're offering in this case?
>
> A. Not that I'm aware of.

[Id. at 110; Pltfs.' Excerpts of Cunitz Depo. at 111.]

Based on Dr. Cunitz's deposition testimony, this Court finds that: the lack of peer review and publication of methodologies similar to those he used in this case weigh against a finding of reliability; and the lack of general acceptance in the field of accounting of similar methodologies weigh against a finding of reliability. Further, Dr. Cunitz did not testify that he based his methodologies upon theories and principles of accounting that have been subject to peer review and publication, or are generally accepted in the field. The lack of such evidence weighs against a finding of reliability.

C. **Summary**

This Court finds that all of the four Daubert factors weigh against a finding of reliability. This Court acknowledges that, in evaluating the theories and techniques Dr. Cunitz used to develop his methodologies, it has the discretion to consider other factors. This Court, however, declines to do because the four Daubert factors are the factors that are most relevant to the reliability analysis in this case. This Court also emphasizes that the problems it has identified in the Cunitz Report and Dr. Cunitz's deposition testimony go beyond the correctness of his conclusions.

As the offering party, Plaintiffs have the burden of establishing the admissibility of Dr. Cunitz's testimony. See Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council, 683 F.3d 1144, 1154 (9th Cir. 2012). The evidence properly before the Court in this case does not establish that Dr. Cunitz's opinions are reliable.[7] This Court therefore FINDS

---

[7] Plaintiffs submitted a declaration by Dr. Cunitz, dated November 10, 2014 ("Cunitz Declaration"), with the Cunitz Opposition. The Cunitz Declaration is an attempt to address matters relevant to the issues discussed in this Order. The Court, however, has not considered the Cunitz Declaration because it is an improper supplement to the Cunitz Report. All of the statements in the Cunitz Declaration regarding his methodologies could have, and should have, been included in either his report or his deposition testimony. Further, at best, the Cunitz Declaration conflicts with his deposition testimony, and Plaintiffs cannot use the declaration to undo the candid testimony that Dr. Cunitz gave during his deposition.

that Dr. Cunitz's opinions and testimony regarding the PRO Physicians' loss of income are not reliable, and therefore will not be helpful to the jury. In light of this Court's findings, this Court need not address the remaining issues in the Cunitz Motion.

This Court CONCLUDES that Dr. Cunitz's opinions and testimony regarding the PRO Physicians' loss of income are inadmissible, and GRANTS the Cunitz Motion as to those opinions and testimony.

## IV. Permissible Testimony

This Court has excluded Dr. Cunitz's testimony and opinions regarding the PRO Physicians' loss of income. However, this Court has also found that Dr. Cunitz has expertise in the field of accounting in general that will help the jury to understand Plaintiffs' evidence regarding their alleged loss of income. The financial documents that Plaintiffs will likely present at trial will be voluminous and difficult for the jury to understand without the assistance of expert testimony. This Court therefore DENIES the Cunitz Motion insofar as this Court will allow Dr. Cunitz to testify regarding his interpretation of Plaintiffs' **historic** financial documents. This Court emphasizes that Dr. Cunitz cannot testify as to any opinions regarding Plaintiffs' loss of income or how their loss of income is calculated.

If Plaintiffs choose to call Dr. Cunitz to testify in the manner permitted by this Order, Plaintiffs shall file a notice by **February 5, 2015**. Further, Dr. Cunitz shall prepare a supplemental report limited to his interpretation of Plaintiffs' historic financial documents, and Plaintiffs must disclose the report to Defendants' counsel by **February 20, 2015**. If Plaintiffs fail either to file their notice or to disclose Dr. Cunitz's supplemental report by the deadlines in this Order, this Court will not permit Dr. Cunitz to testify at trial.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion to Exclude the Testimony of Jonathan A. Cunitz, filed July 9, 2014, is HEREBY GRANTED IN PART AND DENIED IN PART. The Cunitz Motion is DENIED insofar as this Court will allow Dr. Cunitz to testify at trial regarding his interpretation of Plaintiffs' historic financial documents, if Plaintiffs comply with the notice and disclosure requirements set forth in this Order. The Cunitz Motion is GRANTED in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 16, 2015.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**PACIFIC RADIATION ONCOLOGY, LLC., ET AL. VS. THE QUEEN'S MEDICAL CENTER, ET AL; CIVIL 12-00064 LEK-KSC; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF JONATHAN A. CUNITZ**