IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PACIFIC RADIATION ONCOLOGY, LLC, a Hawai`i Limited Liability Corporation, et al., ) ) ) ) | CIVIL NO. 12-00064 LEK-KSC |

PACIFIC RADIATION ONCOLOGY,   )    CIVIL NO. 12-00064 LEK-KSC
LLC, a Hawai`i Limited        )
Liability Corporation, et     )
al.,                          )
                              )
          Plaintiffs,         )
                              )
     vs.                      )
                              )
THE QUEEN'S MEDICAL CENTER, a )
Hawai`i Non-Profit            )
Corporation, et al.,          )
                              )
          Defendants.         )
_____)


**ORDER RESERVING RULING ON PLAINTIFFS' APPEAL FROM
MAGISTRATE JUDGE'S ORDER REGARDING DISCOVERY ISSUES [DKT. 363]**

On October 7, 2014, the magistrate judge issued his

Order Regarding Discovery Issues ("10/7/14 Discovery Order").

[Dkt. no. 363.]  On October 14, 2014, Plaintiffs/Counterclaim

Defendants Pacific Radiation Oncology, LLC, a Hawai`i Limited

Liability Corporation ("PRO LLC"), PRO Associates, LLC, a Hawai`i

Limited Liability Corporation ("PRO Associates"), John Lederer,

M.D., Laeton Pang, M.D., Eva Bieniek, M.D., Vincent Brown, M.D.,

Paul DeMare, M.D., and Thanh Huynh, M.D. (all collectively

"Plaintiffs"),[1] filed their appeal from the 10/7/14 Discovery

_____

[1] This Court will refer to Drs. Lederer, Pang, Bieniek,
Brown, DeMare, and Huynh collectively as "the PRO Physicians,"
and to Drs. Lederer, Pang, Brown, DeMare, and Huynh collectively
as "the PRO Member Physicians."  Dr. Bieniek is not a member of
PRO LLC, and is not named as a defendant in the Counterclaim.
(continued...)

Order ("Discovery Appeal").  [Dkt. no. 380.]  Defendants/Counter

Claimants Queen's Medical Center, a Hawai`i Non-Profit

Corporation ("Queen's" or "QMC"), Queen's Development Corp., a

Hawai`i for Profit Corporation, Noreen D.S.W. Mokuau,

William G. Obana, M.D., Arthur A. Ushijima, Mark H. Yamakawa,

Paula Yoshioka, Sharlene K. Tsuda, Richard C. Keene, Clinton Yee,

Naleen N. Andrade, M.D., Ernest H. Fukeda, Jr., Robb Ohtani,

M.D., Neil J. Hannahs, Christine M. Gayagas, Peter K. Hanashiro,

Robert K. Nobriga, Eric K. Yeaman, Julia C. Wo,

Caroline Ward Oda, Peter Halford, M.D., Barry Weinman, each

individually and in his or her capacity as Officer and Trustee of

Queen's Medical Center (all collectively, "Defendants"), filed

their memorandum in opposition on October 31, 2014, and

Plaintiffs filed their reply on November 14, 2014.  [Dkt. nos.

399, 416.]

         On January 6, 2015, Intervenors John and Mary Doe 1

through 19 ("the Patient Intervenors") filed a memorandum

regarding the Discovery Appeal.[2]  [Dkt. no. 471.]  On

January 16, 2015, Plaintiffs and Defendants filed their

respective responses to the Patient Intervenors' memorandum.

---

     [1](...continued)
[Counterclaim, filed 2/25/14 (dkt. no 175-1), at ¶ 7.]

     [2] On December 24, 2014, this Court issued its order allowing
the Patient Intervenors to intervene for the limited purposes of
addressing the instant Discovery Appeal.  See dkt. no. 462,
*available at* 2014 WL 7366792.

[Dkt. nos. 481, 482.] The Patient Intervenors filed their reply on January 21, 2015. [Dkt. no. 486.]

The Court has considered the Discovery Appeal as a non-hearing matter pursuant to Rule LR7.2(e) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"). After careful consideration of the appeal, supporting and opposing memoranda, and the relevant legal authority, the Court HEREBY RESERVES RULING on Plaintiffs' Discovery Appeal because the Court will certify the central question in the Discovery Appeal to the Hawai`i Supreme Court.

## BACKGROUND

The underlying facts that gave rise to the dispute in the Discovery Appeal are described in this Court's September 18, 2014 Amended Order Granting in Part and Denying in Part Plaintiffs' Motion for Temporary Restraining Order or in the Alternative for Preliminary Injunction ("9/18/14 TRO Order").[3] [Dkt. no. 343.[4]] In particular:

> Randy Talavera, the manager of Queen's radiation therapy department reviewed the records of 133 patients "who had a consultation with a PRO physician but then did [not] show up at [Queen's] again for radiation therapy during the time frame January 2011 through June of 2011." A list of 132

---

[3] Plaintiffs filed their Motion for Temporary Restraining Order or in the Alternative for Preliminary Injunction ("TRO Motion") on July 14, 2014. [Dkt. no. 240.]

[4] The 9/18/14 TRO Order is also available at 2014 WL 4682688.

such patients was compiled showing each patient's
name, patient number, and the name of his or her
physician ("the List").[5]  Defendants' counsel
attached the List as an exhibit to: 1) a subpoena
to [The Cancer Center of Hawaii's ("TCCH")]
custodian of records, signed by the Clerk of Court
on July 10, 2014 ("the Subpoena"); and
2) Defendants' Second Request for Production of
Documents and Things to Plaintiffs Pacific
Radiation Oncology, LLC and PRO Associates, LLC,
dated July 9, 2013 ("the RPD").  On July 10, 2014,
Defendants' counsel publicly filed the complete,
unredacted Subpoena with its return of service
[("the Return of Service")].

9/18/14 TRO Order, 2014 WL 4682688, at *4 (some alterations in

original) (footnotes and citations omitted).  This Court also

stated:

To the extent that Defendants contend that patient
information is relevant and necessary to the
claims and defenses in this case, while Plaintiffs
seek to prevent Defendants from obtaining or using
patient information in a manner that violates [the
Health Insurance Portability and Accountability
Act of 1996, 42 U.S.C. § 1320d, *et seq.*,
("HIPAA"),] and/or the Hawai`i State Constitution,
the parties must address these issues through the
normal discovery process. . . .

Id. at *11.  However, to provide guidance regarding the dispute,

this Court analyzed the applicable law:

the review and use of the medical records of the
patients at issue in this case must comply with
HIPAA and article I, section 6 of the Hawai`i
State Constitution.  However, this Court notes

_____

    [5] This Court will refer to the 132 patients identified on
the List as "the List Patients."  The nineteen Patient
Intervenors are all among the List Patients, and they were all
among the group of 133 patients whose records Mr. Talavera
reviewed.  [Patient Intervenors' Mem. at 1-2.]  This Court will
refer to those 133 patients as "the Review Patients."

that:

> Once health information has been
> de-identified, it is no longer protected by
> HIPAA.  Further, because HIPAA allows "more
> stringent" state law to preempt federal law
> only when it relates to the privacy of
> "individually identifiable health
> information," 45 C.F.R. § 160.203(b), this
> leads to the conclusion that state law also
> does not protect de-identified information.
> Nw. Mem'l Hosp. [v. Ashcroft], 362 F.3d
> [923,] 926 [(7th Cir. 2004)].

> [Cohan v. Ayabe, 132 Hawai`i 408,] 417, 322 P.3d
> [948,] 957 [(2014)].

Id. at *13 (some alterations in 9/18/14 TRO Order).

On September 22, 2014, Plaintiffs and Defendants submitted their letter briefs to the magistrate judge regarding the pending issues in light of the 9/18/14 TRO Order.[6]  [Dkt. nos. 417, 418.[7]]  The magistrate judge held a status conference on September 26, 2014, [dkt. no. 355 (Minutes),] and issued the 10/7/14 Discovery Order after consideration of counsel's arguments, the letter briefs, and the record in this case.  In the 10/7/14 Discovery Order, the magistrate judge, inter alia, found that the List Patients' medical records ("the List Patients' Records") will be discoverable if they are de-

_____

[6] Plaintiffs submitted a second letter brief dated September 22, 2014, but it addressed a matter unrelated to the instant Discovery Appeal.  [Dkt. no. 419.]

[7] Docket numbers 417 and 418 are not available to the public.  Plaintiffs attached their letter brief to the Discovery Appeal as Exhibit A to the Declaration of Clare E. Connors.

identified.  He ordered the parties to de-identify the List
Patients' Records and to produce the de-identified records.
[10/7/14 Discovery Order at 5.]

In the instant Discovery Appeal, Plaintiffs argue that
the magistrate judge erred in: 1) "denying Plaintiffs' motion to
enjoin Defendants from making any further disclosure and use in
this litigation of the protected health information of 133 of
Plaintiffs' patients identified by QMC through a review of its
medical records[;]" and 2) compelling the de-identification and
production of the List Patients' Records "without the opportunity
for briefing or hearing."  [Discovery Appeal at 1-2.]

The Patient Intervenors emphasize that neither they nor
the Review Patients "have themselves put their medical
conditions, or treatment, or medical care at issue in this case."
[Patient Intervenors' Mem. at 6.]  They argue that this Court
must therefore apply the stringent restrictions on their medical
information that the Hawai`i Supreme Court set forth in Naipo v.
Border, 125 Hawai`i 31, 251 P.3d 594 (2011) (per curiam), and
Cohan.  The Patient Intervenors also argue that, even if this
Court concludes that their de-identified medical records are
discoverable, de-identification would not be effective in this
case because "Defendants and numerous parties already have the
full, unedited, and completely identified history and physicals
in their possession."  [Patient Intervenors' Mem. at 7.]  The

6

Patient Intervenors urge this Court to require Defendants to obtain the information they seek through means other than the production of the List Patients' Records.

**STANDARD**

This Court has previously described the standards that it applies when considering an appeal of a magistrate judge's pretrial order.

> Any party may appeal a magistrate judge's nondispositive pretrial order.  D. Haw. L. Civ. R. 74.1. . . .
>
> The district judge shall consider the appeal and shall not set aside any portion of the magistrate judge's order unless it is clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Haw. L. Civ. R. 74.1; McKeever v. Block, 932 F.2d 795, 799 (9th Cir. 1991).  The district judge may also reconsider sua sponte any matter determined by a magistrate judge.  See D. Haw. L. Civ. R. 74.1.

> **A.   Clearly Erroneous**
>
> The clearly erroneous standard applies to factual findings.  United States v. McConney, 728 F.2d 1195, 1200 (9th Cir. 1984) (overruled on other grounds); Tierney v. Torikawa, 2012 WL 2359960 *1 (D. Haw. 2012) (internal quotation omitted).  After reviewing the entire record, the district judge must accept the magistrate judge's ruling unless the district judge is "left with a definite and firm conviction that a mistake has been committed."  Burdick v. Comm'r Internal Revenue Serv., 979 F.2d 1369, 1370 (9th Cir. 1992).  This standard is "significantly deferential" to the magistrate judge's judgment.  See Hernandez v. Tanninen, 604 F.3d 1095, 1100 (9th Cir. 2010) (internal citation omitted).

## B.    Contrary to Law

The contrary to law standard applies to legal conclusions and allows for de novo review. McConney, 728 F.2d at 1200; see also Schwarzer et al., Fed. Civ. P. Before Trial § 16:278 (2013).  A decision is contrary to law if it applies the wrong legal standard or neglects to consider all elements of the applicable standard.  See Hunt v. National Broadcasting Co., 872 F.2d 289, 292 (9th Cir. 1989); Na Pali Haweo Cmty. Ass'n v. Grande, 252 F.R.D. 672, 674 (D. Haw. 2008).

[Order Denying Defs.' Written Statement of Appeal from Magistrate

Judge's Order Denying Defs.' Motion for Leave to File Dispositive

Motions, filed 8/7/14 (dkt. no. 275) ("8/7/14 Magistrate Appeal

Order"),[8] at 4-5 (some citations omitted).]

## DISCUSSION

## I.    Further Use and Disclosure of the Review Patients' Protected Health Information

Plaintiffs first ask this Court to set aside the

10/7/14 Discovery Order because the magistrate judge failed to

rule on their "motion to enjoin Defendants from making any

further disclosure and use in this litigation" of the Review

Patients's health information.  [Discovery Appeal at 1.]

Plaintiffs interpret this Court's 9/18/14 TRO Order as referring

to the magistrate judge all matters in Plaintiffs' TRO Motion

that this Court did not specifically address in the 9/18/14 TRO

Order.  [Id. at 4-5.]  Plaintiffs, however, have misconstrued the

---

[8] The 8/7/14 Magistrate Appeal Order is also *available at* 2014 WL 1370329.

9/18/14 TRO Order.

          This Court disposed of the TRO Motion in its entirety;
this Court **did not** refer unresolved issues in the motion to the
magistrate judge.  See 9/18/14 TRO Order, 2014 WL 4682688, at *13
(granting the TRO Motion, insofar as this Court found that
Defendants' counsel violated the Amended Stipulated Protective
Order, [filed 11/8/13 (dkt. no. 134),] and that sanctions were
warranted; and denying the TRO Motion "in all other respects").
This Court merely ruled that the parties must use "the normal
discovery process" to litigate issues including: 1) the relevance
of patient health information; and 2) whether such information
can be obtained and/or used in a manner that complies with HIPAA
and/or the Hawai`i State Constitution.  See id. at *11.  Although
this Court ordered the parties to contact the magistrate judge to
schedule a discovery conference regarding such issues, this Court
did not order the magistrate judge to rule upon any specific
issue based on that discovery conference.  It was within the
magistrate judge's discretion to determine which issues could be
addressed through letter briefs and a discovery conference and
which issues required the filing of further motions.  In his
discretion, the magistrate judge declined to use the 10/7/14
Discovery Order to address Plaintiffs' request "to enjoin
Defendants from making any further disclosure and use in this
litigation of the protected health information of 133 of

Plaintiffs' patients identified by QMC through a review of its medical records." That issue requires the filing of a formal motion for discovery sanctions.

In addition, this Court notes that Plaintiffs filed an appeal from the 9/18/14 TRO Order. [Notice of Preliminary Injunction Appeal, filed 10/17/14 (dkt. no. 378).] Plaintiffs have represented to this Court that: "The issue on appeal is whether the defense should be ordered to retrieve and destroy the confidential medical records of 133 patients whose records Queen's accessed, copied, and distributed in violation of HIPAA and the Hawai`i constitution." [Pltfs.' Position Statement on Ninth Circuit Appeal Filed Pursuant to Court Order [Dkt. 384], filed 10/28/14 (dkt. no. 397), at 2.] Plaintiffs' current argument that the magistrate judge should have ruled on their request in the TRO Motion for an order enjoining Defendants from any further use and disclosure of the Review Patients' health information appears to be related to the issue on appeal before the Ninth Circuit. The magistrate judge may lack jurisdiction to rule on that request. See, e.g., Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) (per curiam) ("The filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."), *superseded by rule on other grounds as stated in*, Leader Nat'l Ins. Co. v. Indus.

10

Indem. Ins. Co., 19 F.3d 444, 444-45 (9th Cir. 1994).

For these reasons, Plaintiffs' Discovery Appeal is DENIED as to their argument that the magistrate judge should have enjoined Defendants from making further use or disclosure of the Review Patients' health information.

## II. <u>Discovery of the List Patients' Medical Records</u>

Plaintiffs ask this Court to set aside the magistrate judge's rulings that: the List Patients' medical records are relevant; and de-identified versions of their records must be produced.

### A. <u>Relevance</u>

This Court agrees with the magistrate judge that the List Patients' medical records are relevant to the claims and defenses in this case. Although the List Patients' Records are arguably irrelevant to Plaintiffs' claims alleging that Defendants wrongfully terminated the PRO Physicians' clinical privileges at Queen's, the records are relevant to Defendants' defenses. Defendants contend that they were justified in terminating the PRO Physicians' privileges because of concerns that the PRO Physicians were improperly diverting patients they saw at Queen's to TCCH facilities. The List Patients' Records are also relevant to the remaining portion of Counterclaim Count II, which alleges that the PRO Member Physicians' self-referral practices were an unfair method of competition ("UMOC"), in

violation of Haw. Rev. Stat. § 480-2. The List Patients' Records
will establish what procedures the patients could have received
at Queen's, but for the allegedly deceptive referrals.

The magistrate judge's finding that the List Patients'
Records are relevant was not clearly erroneous, and this Court
affirms the magistrate judge's finding.

**B.** **Production**

Plaintiffs next challenge the magistrate judge's ruling
that de-identified versions of the List Patients' Records must be
produced. Plaintiffs contend that it was procedurally improper
for the magistrate judge to order production of the de-identified
medical records because that was the subject of Defendants'
Motion to Compel Discovery ("Motion to Compel"), filed July 28,
2014, which was still pending at the time the magistrate judge
issued the 10/7/14 Discovery Order. [Dkt. no. 256.] The
magistrate judge ruled on the Motion to Compel in an order filed
on December 11, 2014 ("12/11/14 Discovery Order").[9] [Dkt. no.
449.]

First, the 9/18/14 TRO Order expressly stated that the
relevance of patient information, and the production and use of
such information, were among the issues for the magistrate judge

---

[9] Plaintiffs filed an appeal of the 12/11/14 Discovery Order
on December 22, 2014, and The Cancer Center of Hawaii, LLC filed
its appeal on December 24, 2014. [Dkt. nos. 460, 463.] The
appeals are currently pending before this Court.

to address "through the normal discovery process."  2014 WL

4682688, at *11.  Defendants' letter brief to the magistrate

judge regarding "issues to be addressed regarding discovery"

stated that "Defendants do not seek patient identifying

information - only the underlying medical records and

accompanying disclosure forms . . . ."  [Dkt. no. 417 at 2.]  As

stated, *supra* section I, it was within the magistrate judge's

discretion to determine how to address the various discovery-

related issues in this case.  The magistrate judge chose to

address the relevance and general production of the List

Patients' Records in the 10/7/14 Discovery Order, and he

addressed specific issues, *i.e.* whether Plaintiffs or TCCH are

responsible for production and whether patient-specific billing

information had to be produced, in the 12/11/14 Discovery Order.

This Court therefore rejects Plaintiffs' argument that it was

procedurally improper for the magistrate judge to address the

production of the List Patients' Records in the 10/7/14 Discovery

Order.

        Aside from Plaintiffs' procedural argument, there are

two components to their challenge to the magistrate judge's

ruling that the parties must produce de-identified versions of

the List Patients' Records: 1) whether the discovery and use of

the de-identified records would violate the Hawai`i State

Constitution; and 2) if the production of de-identified records

would be constitutional, whether de-identification is possible in this case in light of Defendants' previous use of the Review Patients' medical records and defense counsel's improper public disclosure of the List. This Court will address the second issue before addressing the constitutional issue.

### 1. **De-identification**

The HIPAA regulations define de-identified health information as "[h]ealth information that does not identify an individual and with respect to which there is no reasonable basis to believe that the information can be used to identify an individual is not individually identifiable health information." 45 C.F.R. § 164.514(a). As this Court noted in the 9/18/14 TRO Order, de-identified health information is not protected by HIPAA or state law. 2014 WL 4682688, at *13 (quoting Cohan, 132 Hawai`i at 417, 322 P.3d at 957).

The Patient Intervenors argue that de-identification is not possible in this case because of the extensive disclosure of their health information that has already occurred in this case. They state that their histories and physicals, which identify them by name and medical number: "were accessed and copied by Queen's . . . , and then distributed to the law firms of Alston Hunt Floyd & Ing and Horty, Springer & Mattern[;]" and "were subsequently sent to a consultant in Washington, D.C., by the name of David Argue, who loaded the history and physicals onto

14

his company server, which is accessible by 60 people." [Patient Intervenors' Mem. at 1.] The Patient Intervenors argue that the typical de-identification process would be ineffective under these circumstances, as illustrated by the following example:

> if a history and physical identifies the patient as a 40-year-old woman with left-sided breast cancer from Kailua (notwithstanding the fact Defendants already have her name), any subsequent records which would in any way indicate the zip code or area of residence of a woman that would fit that description clearly could be identified or narrowed down to one of a few people.

[Id. at 7.]

This Court agrees that the extensive, prior disclosure and use of patient medical information that the Patient Intervenors describe could render it impossible to redact the patients' records so that they are not identifiable by the parties, although they would not be identifiable to the general public. Defendants, however, have asserted that the prior disclosure and use were not as extensive as the Patient Intervenors fear. First, Defendants state that the information on the List was provided to Defendants' counsel by Mr. Talavera, and "defense counsel (including their staff and paralegals) have never seen - much less 'reviewed' - [the Patient] Intervenors' medical records." [Defs.' Response to Patient Intervenors' Mem. ("Defendants' Response") at 5.[10]]

---

[10] The Court notes that Defendants did not provide a
(continued...)

This Court has already ruled that defense counsel's inadvertent public disclosure of the List "was an egregious violation of the patients' confidentiality." 9/18/14 TRO Order, 2014 WL 4682688, at *10. While not excusing counsel's error, this Court notes that the List, which was attached to the Return of Service, was publicly available for only a brief period. According to the district court's Notices of Electronic Filing ("NEF"), the Return of Service was publicly filed at 4:08 p.m. on Thursday, July 10, 2014, and was restricted from public view by

---

[10](...continued)
declaration or affidavit by counsel, signed under penalty of perjury, confirming this information. Instead, Defendants' counsel, Claire Wong Black, Esq., signed Defendants' response to the Patient Intervenors' memorandum on behalf of Paul Alston, Esq., William S. Hunt, Esq., Clyde J. Wadsworth, Esq., and herself. [Defs.' Response at 15.] Fed. R. Civ. P. 11(b) states, in pertinent part:

> By presenting to the court a pleading, written motion, or other paper - whether by signing, filing, submitting, or later advocating it - an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . . .
>
> (3) the factual contentions have evidentiary support . . . ; and
>
> (4) the denials of factual contentions are warranted on the evidence . . . .

Although the better course of action would have been to submit a declaration or affidavit, this Court will accept counsel's representations in the response for purposes of the instant Discovery Appeal only.

8:32 a.m. on Monday, July 14, 2014.  Defendants submit a
Declaration of Paul Alston, with supporting exhibits, stating
that: the district court's electronic filing system was
unavailable from Friday, July 11, 2014, at 11:00 p.m. until late
the next day due to a power outage; the only access of the List
through the Public Access to Court Electronic Records ("PACER")
system was by Mr. Alston and Ms. Black; and, although the List
could have been viewed at a public terminal in the courthouse
from 8:30 a.m. to 4:00 p.m. on Friday, July 11, 2014, Mr. Alston
believes that it is unlikely such access occurred.  [Defs.'
Response, Decl. of Claire Wong Black ("Black Decl."), Exh. B
(Defs.' Submission of Suppl. Exhs. in Opp. to [240] Pltfs.' TRO
Motion ("Supplemental Exhibits")) at Exh. U ("Alston Decl."),[11]
¶¶ 3, 9-12.]  This Court agrees that access to the List from the
public terminals on July 11, 2014 is unlikely because, based on
the limited information about the Return of Service that is
available on the docket sheet, someone who was unfamiliar with
the case would not consider it a significant filing.

Defendants acknowledge that PACER's records do not
reflect access to documents through district court NEFs.  In

---

[11] Defendants originally filed the Supplemental Exhibits on
August 1, 2014.  [Dkt. no. 272.]  Although this Court struck the
Supplemental Exhibits and did not consider them in ruling on the
TRO Motion, [Entering Order, filed 8/7/14 (dkt. no 276),] this
Court will consider the Alston Declaration to the extent that it
is relevant to the instant Discovery Appeal.

addition to Plaintiffs' counsel and Defendants' counsel,
Eric Seitz, Esq. - counsel for a John Doe who filed a motion to
intervene in 2012 - also received an NEF for the Return of
Service.[12]  Mr. Seitz informed Mr. Alston that he did not access
the List through the NEF.  [Alston Decl. at ¶ 10.]

Further, the List does not include type of cancer each
patient has nor the area where he or she lives.  Using the
example described in the Patient Intervenors' Memorandum, if a
hypothetical de-identified history and physical refers to a
patient as "a 40-year-old woman with left-sided breast cancer
from Kailua," even a person who has seen the List would not be
able to "narrow[] down" the patient's identity "to one of a few
people."  See Patient Intervenors' Mem. at 7.  While this Court
in no way condones the unnecessary disclosure of the List, this
Court finds that it does not render the de-identification process
impossible in this case.

Defendants acknowledge that Dr. David A. Argue, Queen's
Fed. R. Civ. P. 30(b)(6) designee, reviewed the history and
physicals as part of his preparation for his deposition.[13]

---

[12] John Doe filed his motion to intervene on
February 1, 2012, but this Court denied the motion on
February 9, 2014.  [Dkt. nos. 9, 32.]

[13] Defendants argue that, because Dr. Argue was designated
as Queen's Rule 30(b)(6) witness, he "was required to familiarize
himself with all evidence in QMC's possession relating to its
claim that Plaintiffs deceptively induced patients to receive
(continued...)

18

[Defs.' Response at 6.]  During his deposition, Dr. Argue acknowledged that the history and physicals are stored on his company's server, but he testified that only he and his assistant reviewed them.  [Black Decl., Exh. D (Excerpts of 5/16/14 Depo. of David A. Argue) at 20, 22; Defs.' Response at 6 (identifying the person named during Dr. Argue's deposition as his assistant).]

Based on their prior review of the complete history and physicals, Dr. Argue and his assistant will likely be able to identify individual patients from other medical records, even after the removal of personal identifiers - such as names, patient numbers, and addresses.  This Court therefore finds that it is not possible to de-identify patient records for review by Dr. Argue and his assistant.  That finding, however, does not automatically render the List Patients' de-identified medical records exempt from discovery.  While it continues to be troubled by the prior disclosure of patient records in this case, this Court finds that it is possible to establish appropriate terms for the de-identification and subsequent discovery of the List

_____

[13](...continued)
treatment at TCCH," and his review "was the equivalent of QMC reviewing its own records."  [Defs.' Response at 6.]  This Court disagrees.  Dr. Argue is a consultant who was designated as Queen's representative for purposes of this litigation only. There is no indication that he has any involvement in patient treatment, or even hospital management, at Queen's apart from this litigation.

Patients' Records.  For example, if the Hawai`i Supreme Court holds that disclosing the List Patients' de-identified medical records in discovery would not violate the Hawai`i State Constitution, this Court will, *inter alia*: 1) fashion a de-identification procedure which includes participation by counsel for the Patient Intervenors; 2) require Queen's to designate another representative to review and analyze the de-identified records; and 3) prohibit Defendants from disclosing the de-identified records, as well as any information from or any analysis of the records, to Dr. Argue or any person employed by his company.

Having found that the de-identification process is still possible, in spite of the prior disclosure and use of the List Patients' history and physicals, this Court affirms the 10/7/14 Discovery Order, to the extent that it concluded that the List Patients' de-identified medical records are discoverable under HIPAA and corresponding state law.

This Court next turns to the issue of whether discovery of those records - even after de-identification - would violate the Hawai`i State Constitution.  Compare Cohan, 132 Hawai`i at 417, 322 P.3d at 957 (noting that neither HIPAA nor "state law" protects de-identified information), with id. at 419, 322 P.3d at 959 (stating that the Hawai`i State Constitution "by precluding the disclosure of private health information outside of the

underlying litigation," obviates the complex de-identification process).

## 2.   <u>Constitutional Right to Privacy</u>

Hawai`i is unique because it is "one of ten states that expressly recognize a right to privacy in their constitutions."[14] <u>Id.</u> at 415, 322 P.3d at 955 (footnote omitted).  There is very little Hawai`i case law addressing the constitutional right to privacy in medical records and the protection of that right when medical records are sought during litigation.

In <u>Brende v. Hara</u>, the Hawai`i Supreme Court held that article I, section 6 "protects the disclosure **outside of the underlying litigation** of petitioners' health information produced in discovery."  113 Hawai`i 424, 430, 153 P.3d 1109, 1115 (2007) (per curiam) (emphasis added) (footnote omitted).  The petitioners in that proceeding were plaintiffs in a motor vehicle tort case who sought a writ of mandamus directing the state court judge "to revise a medical information protective order to prohibit any person or entity from disclosing, for purposes outside the underlying litigation and without petitioners' consent, petitioners' health information produced in discovery." <u>Id.</u> at 426, 153 P.3d at 1111.

_____

[14] Article I, section 6 of the Hawai`i Constitution states, in pertinent part, "[t]he right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest."

Naipo involved a petition for a writ of mandamus by a non-party to a civil action in which the plaintiff sought the non-party's medical records. 125 Hawai`i at 32-33, 251 P.3d at 595-96. The plaintiff in the underlying action, Eshell Mitchell, sued the Albert Yuen family for injuries she suffered when she was bitten by the Yuens' dog, "Braddah," at the Yuens' home. Mitchell attempted to subpoena Jennifer Naipo's medical records to resolve conflicting deposition testimony about whether Braddah, or another one of the Yuens' dogs, had bitten Naipo several months before Mitchell was bitten. Id. at 33, 251 P.3d at 596. The Hawai`i Supreme Court held that Naipo's medical records were protected by her constitutional right to privacy. It therefore granted the petition and vacated the order directing the production of Naipo's medical records to the circuit court for in camera review. Id. at 37, 251 P.3d at 600.

In the most recent Hawai`i Supreme Court case that is relevant to the instant Discovery Appeal, Richard Cohan was the plaintiff in a civil action arising from his fall into a resort koi pond. During arbitration, the defendant sought Cohan's authorizations for it to obtain his medical records, and a dispute arose regarding the terms of the protective order that would govern the disclosures. Cohan sought a writ of mandamus to challenge the circuit court's decision affirming the arbitrator's order which required him to sign both the authorizations and the

form stipulated qualified protective order ("SQPO") that the
arbitrator chose.  132 Hawai`i at 410-13, 322 P.3d at 950-53.
The Hawai`i Supreme Court held that:

> application of the Hawai`i Constitution
> establishes that the six contested provisions of
> the SQPO are not in compliance with state law.
> The six provisions — paragraph 1(b)(2) (internal
> review); paragraph 1(b)(3) (external review);
> paragraph 1(b)(7) (de-identification); paragraph
> 1(b)(8) (record keeping requirements); paragraph
> 1(b)(8) (preventing Cohan from unreasonably
> withholding consent); and paragraph 5 (time
> deadline for returning health information) — all
> allow Cohan's health information to be used **for
> purposes outside the underlying litigation** without
> any showing of a compelling state interest. . . .

Id. at 422, 322 P.3d at 962 (emphasis added).  The supreme court
therefore: granted the petition for writ of mandamus; vacated the
circuit court's decision affirming the arbitrator's order; and
ordered the revision of the SQPO and the authorizations
consistent with its opinion.  Id. at 423, 322 P.3d at 963.

        In the 9/18/14 TRO Order, this Court recognized that
the legal analysis in Brende, Naipo, and Cohan is relevant to the
issue of how article I, section 6 applies to the parties'
discovery disputes in this case.  2014 WL 4682688, at *12.
However, all three cases have significant factual differences
from the instant case.  Unlike the mandamus petitioners in Brende
and Cohan, the patients whose medical records are at issue in the
present case are not parties to the litigation.  In that respect,
the instant case is like Naipo, but there are other significant

differences between the instant case and <u>Naipo</u>.  In <u>Naipo</u>, the patient herself and other witnesses gave deposition testimony regarding the subject matter that Mitchell sought to confirm through the medical records - the circumstances of Naipo's dog bite injury.  Thus, in <u>Naipo</u>, the parties to the litigation arguably had minimal need for the medical records themselves.  In contrast, in the instant case, the List Patients' Records are directly relevant to the claims and defenses.  <u>See</u> <i>supra</i> Section II.A.  Further, unlike the party who sought the medical records in <u>Naipo</u>, Defendants cannot obtain the relevant information in the List Patients' Records from another source.

Perhaps the most significant distinctions between the instant case and the available Hawai`i case law are that: 1) Defendants already have access - apart from the context of this litigation - to some of the medical records that they seek to use in the case; and 2) Defendants' arguably have compelling interests in using the de-identified medical records to protect the integrity of the medical treatment at Queen's.  The discovery dispute in this case involves the List Patients' records at both Queen's and TCCH.  Defendants seek to de-identify and use records in Queen's possession, and they seek to obtain records regarding the List Patients' care at TCCH facilities, in which most Plaintiffs have an ownership interest.  These medical records were created with the List Patients' knowledge and consent, and

the List Patients granted Queen's and TCCH access to those records, for the purpose their medical treatment. However, in doing so, the List Patients did not contemplate that their records would be used in litigation not involving themselves. The fact that some of the disputed medical records in this case are records that Queen's staff created raises a question of whether Queen's has a greater right to use de-identified versions of those records than the parties who sought discovery of medical records in Brende, Naipo, and Cohan.

Further, Defendants arguably have a compelling interest using the List Patients' de-identified medical records in their defense against Plaintiffs' claims and in the prosecution of the UMOC claim in the Counterclaim. Defendants argue that the PRO Member Physicians engaged in deceptive self-referral practices and deprived patients of the opportunity to make a meaningful choice about where to receive their treatment. Defendants have also asserted that one of the reasons justifying their decision to transition the Queen's radiation oncology department to a closed-department model was concerns that the PRO Physicians were referring patients they initially saw at Queen's to TCCH facilities because the PRO Physicians benefitted financially from such referrals. This may also distinguish the instant case from Brende, Naipo, and Cohan.

In _Cohan_, the Hawai`i Supreme Court recognized that,
"the de-identifying process itself is extremely complex and
problematic" and "[a]part from [the] technical considerations,
there is the very complicated issue as to whether a patient has a
legitimate basis for being concerned about what happens to their
personal health information once it is de-identified."  _Cohan_,
132 Hawai`i at 417-18, 322 P.3d at 957-58 (footnote omitted).
The supreme court acknowledged that, even where medical
information has been de-identified, there may still be an
invasion of the patient's privacy.  _Id._ at 418, 322 P.3d at 958
(quoting _Nw. Mem'l Hosp._, 362 F.3d at 929).  Ultimately, the
supreme court held:

> Hawai`i's Constitution, by precluding the
> disclosure of private health information **outside
> of the underlying litigation**, obviates application
> of an inordinately complex law [regarding de-
> identification] that may result in expensive
> discovery disputes, appeals, and litigation delays
> to resolve such disagreements.  The very purpose
> of disclosing Cohan's health information in
> discovery is to resolve the underlying dispute.
> To allow this information to be used **outside the
> litigation**, regardless of whether it is
> de-identified or not, would reach beyond what the
> Hawai`i Constitution permits in the absence of a
> showing of a compelling state interest.

_Id._ at 419, 322 P.3d at 959 (emphases added).

_Cohan_ is not directly applicable to the instant case
because the dispute involved whether Cohan's de-identified
medical information could be used outside of the litigation, and
the dispute before this Court involves the use of medical

26

information that is directly relevant to this action.  In <u>Cohan</u>,
the supreme court assumed that medical information would be
disclosed in discovery and would be used to resolve the dispute
in the underlying action.  This arguably supports Defendants'
position in the instant case that they are entitled to use the
List Patients' de-identified medical records.  However, as noted
*supra*, unlike Cohan, the List Patients are not parties to this
litigation.  While Cohan put his medical condition at issue in
the litigation, the same is not true of the List Patients.

Ultimately, this Court must decide whether, under the
circumstances of this case, the List Patients' right to privacy
under article I, section 6 of the Hawai`i State Constitution
trumps Defendants' need for the List Patients' Records, even
after de-identification.  There is no Hawai`i case law squarely
addressing this issue.  This Court previously stated:

> When interpreting state law, a federal court is
> bound by the decisions of a state's highest court.
> <u>Trishan Air, Inc. v. Fed. Ins. Co.</u>, 635 F.3d 422,
> 427 (9th Cir. 2011).  In the absence of a
> governing state decision, a federal court attempts
> to predict how the highest state court would
> decide the issue, using intermediate appellate
> court decisions, decisions from other
> jurisdictions, statutes, treatises, and
> restatements as guidance.  <u>Id.</u>; <u>see also</u>
> <u>Burlington Ins. Co. v. Oceanic Design & Constr.,</u>
> <u>Inc.</u>, 383 F.3d 940, 944 (9th Cir. 2004) ("To the
> extent this case raises issues of first
> impression, our court, sitting in diversity, must
> use its best judgment to predict how the Hawai`i
> Supreme Court would decide the issue." (quotation
> and brackets omitted)).

[Order Granting in Part & Denying in Part Pltfs.' Motion for Summary Judgment on the Counterclaim Filed February 25, 2014 [Dkt. 175-1], filed 11/30/14 (dkt. no. 431) ("11/30/14 Summary Judgment Order"),[15] at 22 (citation omitted).]

        Because the case law regarding patients' right to privacy in medical records that are at issue in litigation is not well developed, this Court must predict how the Hawai`i Supreme Court would rule on the issue before this Court in the Discovery Appeal.  This Court, however, cannot predict how the Hawai`i Supreme Court would rule in this case.  The issue is so unique to Hawaii law that this Court cannot consult other jurisdictions or treatises to base any prediction.

**III.** **Certification of the Question to the Hawai`i Supreme Court**

        "This court may certify a question to the Hawai`i Supreme Court when it concerns 'law of Hawai`i that is determinative of the cause and . . . there is no clear controlling precedent in the Hawai`i judicial decisions . . . .[']" <u>Saiki v. LaSalle Bank Nat'l Ass'n as Tr. for Structured Asset Inv. Loan Trust Series 2003-BC2</u>, Civil No. 10-00085 JMS/LEK, 2011 WL 601139, at *6 (D. Hawai`i Feb. 10, 2011) (quoting Haw. R. App. P. 13(a)).  The court, however, should not certify questions when the answer is reasonably clear and the court can, using its best judgment, predict how the Hawai`i Supreme Court would decide the issue.  <u>See</u> <u>id.</u> (citing <u>Helfand v. Gerson</u>, 105 F.3d 530, 537 (9th Cir. 1997); <u>Pai`Ohana v. United States</u>, 875 F. Supp. 680, 700 (D. Haw. 1995)). . . .

_____

        [15] The 11/30/14 Summary Judgment Order is also available at 2014 WL 6749117.

<u>Roe v. Ram</u>, Civil No. 14-00027 LEK-RLP, 2014 WL 4276647, at *8 (D. Hawai`i Aug. 29, 2014) (some alterations in <u>Roe</u>).

As noted *supra* Section II.B.2, there is no controlling Hawai`i case law on the current issue, and this Court cannot, using its best judgment, predict how the Hawai`i Supreme Court would rule. Further, this Court finds that the issue of whether the List Patients' de-identified medical records are discoverable is a determinative issue because the defense against Plaintiffs' claims and the prosecution of the UMOC claim in the Counterclaim will be severely impaired if the de-identified medical records are not discoverable. This Court therefore CONCLUDES that it is appropriate to certify to the Hawai`i Supreme Court the question of whether a non-party patient's de-identified medical records are discoverable in a civil action between the patient's physician and the facility where the patient had a consultation and/or treatment.

The Court will issue an order allowing the parties, including the Patient Intervenors, to comment upon the precise language of this certified question and whether the Court should certify any other questions.

## CONCLUSION

On the basis of the foregoing, the Court will RESERVE RULING on Plaintiffs' Appeal from Magistrate Judge's Order Regarding Discovery Issues [Dkt. 363], filed October 17, 2014, in

light of the Court's decision to certify the central question in the Discovery Appeal to the Hawai`i Supreme Court.  After the supreme court responds to the certified question(s), this Court will issue a schedule for limited briefing to address the supreme court's response to the certified question(s).

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII,



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**PACIFIC RADIATION ONCOLOGY, LLC, ET AL. VS. THE QUEEN'S MEDICAL CENTER, ET AL**; CIVIL 12-00064 LEK-KSC; ORDER RESERVING RULING ON PLAINTIFFS' APPEAL FROM MAGISTRATE JUDGE'S ORDER REGARDING DISCOVERY ISSUES [DKT. 363]